IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
AUG 2 0 2008
Aug 20, 2008
JUDGE AMY ST. EVE
United States District Court

| | |
|---|---|
| Pamela Eckhaus, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 08-CV-4720 |
| vs. ) | |
| ) | Honorable Amy St. Eve |
| ) | |
| Nature's Pillows, et al. ) | Magistrate Judge Keys |
| ) | |
| Defendants. ) | |
| ) | |

### EMERGENCY MOTION TO ENFORCE JUDGMENT AND FOR OTHER RELIEF

Brian C. Witter ("Witter"), for his Emergency Motion to Enforce Judgment and for Other Relief, states as follows:

#### 1. NATURE OF THE ACTION

1.  This is an action to enforce a final Federal Court Judgment entered in the United States District Court for the Eastern District of New York on June 24, 2008 by the Honorable Frederic Block in the matter of *Eckhaus v. Nature's Pillows, et al., 06-CV-985.*

2.  The Eckhaus final judgment, for $298,000 in attorneys' fees, awards Witter, a co-judgment creditor, $149,000; the other co-judgment creditor, the Oakbrook Terrace law firm of DiTommaso Lubin, PC ("D & L"), is entitled equally to $149,000.

3.  A certified copy of the New York judgment was registered with the Clerk of the United States District Court for the Northern District of Illinois on August 19, 2008 pursuant to 28 U.S.C. § 1963 and may now be given the same force and effect by this Court as the original judgment and enforced accordingly. (A copy of the certified judgment is attached hereto as Exhibit A.)



## 2. JURISDICTION AND VENUE

4.      This court has jurisdiction over this action pursuant to 28 U.S.C. § 1367, as the matter falls within the Court's supplemental jurisdiction. ***Kokkonen v. Guardian Life Insurance Co.***, 511 US 375, 379 (1994) (ancillary jurisdiction permits district court, *inter alia*, "to vindicate its authority and effectuate its decrees"); ***Yang v. City of Chicago***, 137 F3d 522, 525 (7th Cir 1998) (citing to extensive authority).

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and § 1391(b)(2), as the judgment in question is registered in this district, and the property in dispute is located in this district.

6.      Movant and judgment creditor Brian C. Witter, a citizen and resident of Chicago, Illinois, has been a member in good standing of this Court's General Bar since 1988 and its Trial Bar since 1991.

7.      Judgment creditor DiTommaso Lubin, PC, is an Illinois professional corporation engaged in the practice of law, with its principal place of business in Oakbrook Terrace, Illinois.

## 3. ENFORCING THE FINAL JUDGMENT AND EQUALLY DISTRIBUTING THE SETTLEMENT PROCEEDS.

8.      The June 24, 2008 Final Approval Order entered in the Eckhaus case awarded equal discretion over the distribution of $298,000 in attorneys' fees to Witter and D & L.

9.      On July 7, 2008, defendants' counsel in the Eckhaus matter, Richard P. McElroy, sent a check drawn by his client for $298,000 made out jointly to Witter and D & L in satisfaction of the June 24, 2008 judgment. (A copy of the check made jointly payable to Witter and D & L is attached hereto as Exhibit B; and Mr. McElroy's letter transmitting the check is attached hereto as Exhibit C.) The check payable in satisfaction of the judgment, on information and belief, is in the possession of counsel for D & L, Joseph M. Laraia, Esq., a practitioner

located in Wheaton, Illinois. D & L, through Mr. Laraia, has consistently refused to allow the check to be negotiated since it imagines that it should be entitled to a greater share of the judgment proceeds, irrespective of what the New York final and appealable order plainly states *and despite its failure to seek either to amend, alter, reconsider or appeal the judgment in the proper federal forum.*

10. An Article III Court entered a final and appealable order in the New York case. D & L, however—although distressed by Judge Block's ruling—and despite myriad available remedies, failed to seek post-judgment relief in either the trial court or in the Second Circuit Court of Appeals, allowing the judgment to become final. ("[A] federal judgment becomes final for appellate review and claim preclusion purposes when the district court disassociates itself from the case, leaving nothing to be done at the court of first instance save the execution of the judgment." *Clay v. United States*, 537 U.S. 522, 526 (2003).[1]

11. Instead, thirty-five days after the New York Judgment became final on the merits for appellate and claim preclusion purposes, and five days after any opportunity for appellate review had elapsed, D & L filed an injunction petition in an Illinois Court seeking to collaterally attack the final judgment.

12. D & L, due to its eschewal of the rules and plain mandates of post-judgment federal practice, now finds itself with no remedy whatsoever. Certainly its proposal to an Illinois State Court to sit as an Appellate Court to review a final federal court judgment is a nonstarter

---

[1] The finality rule under 28 U.S.C. § 1291 has been stated by the United States Supreme Court as follows: "the general rule is that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated." *Digital Equipment Corp. v. Desktop Direct Corp.*, 511 US 563, 568 (1994). Accordingly, a decision is considered final and appealable under § 1291 only if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 US 229, 233 (1945).

3

and should not be countenanced by any federal court with jurisdiction over the identical subject matter.

13. The settlement check is currently non-negotiable. D & L's state court Petition for a Preliminary Injunction is currently pending in the Eighteenth Judicial Circuit, DuPage County, Wheaton, Illinois, Case Number, 08-CH-2378. Witter has moved to dismiss the Petition pursuant to 735 ILCS § 5/2-619(a)(4) on jurisdictional and *res judicata* grounds as barred by a prior federal court judgment since D & L argued for a greater share of the judgment proceeds on the basis of a purported contractual relationship between it and Witter at the Eckhaus Final Approval Hearing.[2]

14. The state court injunction petition simply rehashes the same arguments made at the Eckhaus Final Approval hearing that Judge Block found unpersuasive and which are now barred jurisdictionally and by the doctrine of *res judicata*.[3]

---

[2] D & L's failure to seek post-judgment relief in the New York Court bars relitigation of the claims in Illinois because it raised and vigorously argued these precise contract claims before Judge Block at the June 23, 2008 fairness hearing in Brooklyn, New York. Indeed, D & L not only argued these claims in the New York case, it attached the DuPage County complaint to a Federal Court pleading setting forth the identical contract claims that it now asks an Illinois State Court Judge to review *See* Eckhaus case, *06-CV-985*, EDNY Docket # 76, filed June 23, 2008; Docket Text: *Letter to Judge Block in Response to Brian Witter's Motion re: Final Approval and Entry of Amended Final Approval Order* (Attachments: # (1) Exhibit [DuPage County] Complaint.)

[3] Indeed, it is difficult to accord good faith to D & L's contract claim, which relies on an abrogated and moribund instrument that: (a) was terminated three months before the judgment at issue here was entered, (b) has the wrong party as signatory—Witter's PC and not Witter individually; and (c) contained no "survival of terms clause." Essentially an "at will" collaboration agreement, the contract moreover had mutual termination provisions so the "at will" nature of the agreement could not be clearer and the need for an explicit survival of terms clause any more obvious or essential. Given the jurisdictional and *res judicata* bars to D & L's contract claims, the Court needn't concern itself with the substance of the claims: the issue is merely academic. (Academic, that is, if one is willing to leave aside the questions of the claims' good faith assertion and the requirements of thorough prefiling investigation mandated by Federal Rule 11 and its Illinois counterpart, Supreme Court Rule 137.)

## 4. ENJOINING THE STATE COURT CASE.

15.     Once an Article III Court has entered a final and appealable order—a Rule 54(a) judgment—while there are a variety of ways to seek post-judgment relief in the District Court or on appeal, the federal judgment automatically precludes subsequent state court litigation due to the Supremacy Clause of Article VI of the United States Constitution. This is basic federalism.

16.     Indeed, according to one of the leading scholars of federal jurisdiction, "the suggestion that state courts should be free to disregard the judgments of federal courts is so unthinkable that the rule rejecting any such suggestion has been stated in an unbroken line of cases..." *Wright, Law of Federal Courts, 4th Ed., (1983), p. 694.* D & L's Petition invites a state court judge to do just that: disregard and overrule a final federal court judgment.[4]

17.     D & L let pass every federal post-judgment procedural deadline under both the Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure. Instead, it filed a state court proceeding to overturn a final federal judgment.

---

[4] It is not as if D & L was lacking for resources had it wanted post-judgment relief on its purported contract claim. The Federal Rules provide ample instance to alter, amend or reconsider a final and appealable judgment. For example, D & L could have availed itself of a Rule 59(e) motion to alter or amend the June 24, 2008 judgment within ten days of its entry. D & L failed to so move. D & L might also have filed a motion to reconsider Judge Block's ruling specifying that the fee award check should be issued jointly to Witter and D & L. Such a motion could have been made up to thirty days after the entry of judgment. Yet it filed no such motion. Further, D & L could have taken advantage of the local rules of the Eastern District of New York which afford litigants a relatively rare opportunity to have the fee matter sent to its Mandatory ADR program. (It is one of only ten United States District Courts in the country to have such a program.) Or, using again the local rules of Court, D & L might have asked for a special master to adjudicate its contract claims and attack the judgment in the federal court where the judgment was entered. Finally, of course, D & L could have appealed the judgment to the United States Court of Appeals for the Second Circuit, either opting for a conventional appeal or moving in the reviewing court for some species of arbitration or court-annexed mediation. None of these many opportunities were taken up by D & L. So now it turns to an Illinois state court to overturn a federal judgment.

18   D & L's attempt to have a state tribunal overturn a final federal court judgment may be reduced metaphorically as follows: A car, already critically low on fuel, sets out from Brooklyn on a journey. There are five service stations nearby along the car's route; and one in lower Manhattan across the Brooklyn Bridge. The driver, however, cruises blithely by these convenient fueling points and instead tries to speed the 800 miles to Wheaton, Illinois, to refuel, only to stall out in Hoboken, NJ. The car, like the case, should never have left New York.

19.   This Court should now enforce the judgment and, accordingly, enjoin D & L's Petition for a Preliminary Injunction in the Illinois state court. 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, *or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments"*) (emphasis supplied).

### 5. PAYMENT OF THE JUDGMENT PROCEEDS INTO THE REGISTRY OF THE COURT PURSUANT TO FEDERAL RULE 67 AND THE EQUAL DISTRIBUTION THEREOF.

20.   Federal Rule 67(a) allows the Court to accept deposits of money where such assets are in dispute in a case.

21.   Witter, as a joint payee on the $298,000 check, is a holder of the asset for purposes of the Rule.

22.   The check should be paid into the registry of the court and then distributed equally to Witter and D & L as the judgment provides.

**WHEREFORE**, Witter requests the following relief: (a) that this Court enforce the final June 24, 2008 judgment; (b) that it enjoin the state court proceedings attempting to collaterally attack and overturn the final federal court judgment; (c) that an order be entered paying the settlement funds into the registry of court pursuant to Federal Rule 67(a); (d) that the judgment

proceeds then be immediately equally distributed to the judgment creditors, The Law Offices of Brian C. Witter, PC, and The Law Offices of DiTommaso Lubin, PC, pursuant to the court's inherent powers to effectuate its own judgments; and (e) for such other and further relief as the Court may deem necessary and just.

**BRIAN C. WITTER**

**By:** /s/ Brian C. Witter

**Dated: August 20, 2008**

Brian C. Witter, *PC*
**Law Offices of Brian C. Witter,** *PC*
111 West Jackson Boulevard
Suite 1100
Chicago, IL 60604
(312) 961-4942 (T)
(312) 386-9759 (F)
*briancwitterpc@gmail.com*
Attorney No. 6198156

FILED FINAL
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 25 2008 ★
C I M
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PAMELA ECKHAUS, individually and )
on behalf of all others similarly situated, )
) 06 CV 00985
Plaintiff, )
) Judge Block
-vs- )
) Magistrate Matsumoto
NATURE's PILLOWS, INC., BILL McALLISTER )
BRAD SPECTER and STEVE SILBIGER, )
)
Defendants. )

## FINAL APPROVAL ORDER

**IT IS HEREBY ORDERED:**

1. On March 14, 2008 this Court preliminarily approved the Class Settlement Agreement ("Agreement") reached between Pamela Eckhaus ("Plaintiff") and the class of persons as defined in the Agreement ("Class"); and Defendants Nature's Pillows, Inc., Bill McAllister, Brad Specter, and Steve Silbiger ("Defendants").

2. The notice given to the members of the class—publication in the USA Today Weekend Edition on April 11 and 18, 2008—was reasonably calculated under the circumstances to apprise them of the pendency of this action, all material elements of the proposed settlement, their opportunity to exclude themselves from, to object to, or to comment on the settlement and to appear at the settlement hearing. The notice was reasonable and the best notice practicable under the circumstances; was due, adequate and sufficient notice to all class members; and complied fully with the laws of the United States and the Federal Rules of Civil Procedure, due process and any other applicable rules of court. A full opportunity has been afforded to the members of the class to participate in the hearing, and all members of the class and other persons wishing to be

of the attorney time and out-of-pocket costs incurred by Class Counsel. Defendants shall transmit to DiTommaso & Lubin within fourteen (14) days of the Effective Date as defined in the Settlement Agreement: (1) a check in the amount of $298,000 made out to ~~jointly to~~ Vincent L. DiTommaso, Peter S. Lubin & Brian C. Witter; ~~DiTommaso & Lubin, which DiTommaso & Lubin will distribute among Class Counsel;~~ and (2) a check in the amount of $2000 made out to Pamela Eckhaus, which DiTommaso & Lubin will transmit to Mrs. Eckhaus.

9. **Release of UrineGone™ Claims**: Plaintiff and each member of the Settlement Class, their spouses and former spouses, as well as the present, former, and future respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns of Plaintiff and each Settlement Class member, pursuant to the Settlement Agreement and Amendment thereto approved by this final order, have discharged Defendants, as well as all of their present, former, and future direct and indirect parent companies, affiliates, subsidiaries, divisions, agents, franchisees, successors, predecessors-in-interest; and all of the aforementioneds' respective present, former, and future officers, directors, employees, shareholders, attorneys, agents, vendors, couriers, independent contractors, and assigns, from any and all rights, duties, obligations, claims, actions, causes of action, or liabilities, whether arising under local, state, or federal law, whether by statute, contract, common law, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated that, as of the date that this Order is entered: (1) arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, or occurrences that were directly or indirectly alleged, asserted, described, set forth, or referred to in the case captioned *Eckhaus v.*

*Nature's Pillows, et al.*, Case No. 06-CV-985, currently pending in the United States District Court for the Eastern District Court of New York before the Honorable Fredrick Block ("the UrineGone™ Litigation"); (2) are, were, or could have arisen out of or been related in any way to the UrineGone™ Litigation.

10. Nothing contained in the release agreed to by the parties and set forth in Paragraph 9 herein shall be construed to prevent or impede Settlement Class members, including the Class Representative, from (1) individually seeking product refunds for Urine Gone kits purchased from defendant Nature's Pillows, Inc.; or (2) individually bringing tort claims for property damage or personal injury arising from UrineGone™ products.

11. Plaintiff and each member of the Settling Class is hereby fully and finally enjoined from prosecuting all claims released by the release agreed to in the Settlement Agreement and Amendment thereto, as set forth in Paragraph 9 herein.

12. As provided for in the Settlement Agreement, Defendants have agreed to change the original television advertising spots for Urine Gone™, whether broadcast via television, radio, internet, print, or other means.

13. The claims of Plaintiff and the class set forth in the Second Amended Complaint are dismissed with prejudice pursuant to the parties' settlement.

DATE June 23, 2008

Entered: _____
The Honorable Frederic Block
United States District Judge

**Check 1:**

Natures Pillows
2607 Interplex Drive
Trevose, PA 19053-6946
215-___-____
Urine Gone

SUN NATIONAL BANK
42/312

Date: 6/24/2008

PAY TO THE ORDER OF: DiTommaso & Lubin P.C. and Brian Witter

$ **298,000.00

Two Hundred Ninety-Eight Thousand and 00/100************************************************************** DOLLARS

DiTommaso & Lubin P.C. and Brian Witter
17 W. 220 2nd Street
Suit 200
Oakbrook Terrace, IL 60181

Check #: 000733    Routing: 031206420    Account: 4750718457

**Check 2:**

Natures Pillows, Inc.
2607 Interplex Drive
Trevose, PA 19053-6946
215-6__-____
Urine Gone

SUN NATIONAL BANK
55-642-312

Date: 6/24/2008

PAY TO THE ORDER OF: Pamela Eckhaus

$ **2,000.00

Two Thousand and 00/100********************************************************************** DOLLARS

Pamela Eckhaus
1204 Caffrey Ave.
Far Rockaway, NY 11691

Check #: 000731    Routing: 031206420    Account: 4750718457

## McELROY & ASSOCIATES LLP
### ATTORNEYS AT LAW

202A NORTH MONROE STREET
MEDIA, PA 19063
610.566.8301 • FAX 610.566.8305

RICHARD P. McELROY
JEFFREY C. McELROY

DIRECT DIAL: 610.566.8302

July 7, 2008

*Via Federal Express*

Vincent DiTommaso, Esquire
DiTommaso, Lubin P.C.
17 W. 220 2nd Street
Suite 200
Oakbrook Terrace, IL 60181

Re:   <u>Pamela Eckhaus v. Nature's Pillows, et al.</u>

Dear Vince:

Enclosed are two checks; the first in the amount of $298,000.00 payable to your firm and Brian Witter; the second in the amount of $2,000.00 payable to Ms. Eckhaus. This concludes the matter from defendants' viewpoint.

Very truly yours,

Richard P. McElroy

RPM:mes
Enclosures

Cc:   Matthew H. Adler, Esquire (no enclosure)
Bradley Specter (no enclosure)
Steven Silbiger (no enclosure)