IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| PAMELA ECKHAUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 08 CV 4720 |
| -vs- | ) | |
| | ) | Honorable Amy St. Eve |
| | ) | |
| NATURE'S PILLOWS, ET AL. | ) | Magistrate Judge Keys |
| | ) | |
| Defendants. | ) | |

## DITOMMASO-LUBIN'S MOTION TO REASSIGN CASES AS RELATED

Pursuant to Local Rule ("LR") 40.1 of this Court, Plaintiff's Counsel DiTommaso-Lubin PC (Plaintiff's Counsel) respectfully moves the Court to reassign and consolidate *DiTommaso-Lubin PC v. Brian C. Witter et al*, No. 1:08-cv-04825 (Judge Pallmeyer), with this case.   In support of this motion, Plaintiff's Counsel states:

1.      On August 20, 2008, Brian C. Witter and the Law Office's of Brian C. Witter PC ("Witter") filed an action before this Court purportedly pursuant to Rule 67 of the Federal Rules of Civil Procedure to enforce an alleged money judgment and fee award to Witter in the amount of $149,000 supposedly contained in the final approval order in this case.

2.      In this case, Witter also sought to enjoin injunction proceedings in the state court case of *DiTommaso-Lubin PC v. Brian C. Witter et al*., pending in the Circuit Court of DuPage County Illinois.  The injunction proceedings in state court sought a court order allowing for the fee award proceeds in this case to be deposited.   The state court defendants had moved to dismiss the injunction motion on *res judicata* grounds, and the parties were briefing that issue.

3.      On August 21, 2008 this Court required briefing on the issue of whether it had jurisdiction over this case. This Court stated it would not hear Witter's request for an injunction from this Court enjoining the state court proceedings until it decided the jurisdictional issue.

4.      On Sunday August 24, 2008, Witter filed a notice of removal in the state court case. A copy of that notice of removal is attached as Exhibit A. The removed state court case now pending before Judge Pallmeyer, is captioned *DiTommaso-Lubin PC v. Brian C. Witter et al*., No. 1:08-cv-04825, and is referred to hereinafter to as "the removed state court case".

5.      DiTommaso-Lubin, through its counsel, will be filing the attached motion to remand the removed state court case. A copy of that motion is attached hereto as Exhibit B and will be noticed before this Court if it is reassigned. The motion sets forth why removal was untimely and improvident including stating why there is no federal subject matter jurisdiction over the state court case, and under Supreme Court precedence, a *res judicata* defense can never be a proper basis for removal. The factual and legal issues raised in the motion to remand overlap with the jurisdictional issue in this case on which this Court already requested briefing.

6.      Cases may be related for purposes of reassignment if they "involve some of the same issues of fact or law." *See* LR 40.4(a)(2).

7.      This case and the removed state court case are "related" under this criterion as a review of the pleadings in both cases demonstrates, in that they involve similar issues of law and fact and involve the same parties. LR 40.4(b) contains conditions for the reassignment of the cases as related. These conditions are that 1) both cases are pending in this court; 2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; 3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and 4) the cases

are susceptible of disposition in a single proceeding. *See* LR 40.4(b)1-4. These factors are also satisfied in this case, as demonstrated below.

8.      Both this case and the removed state court are currently pending in the United States District Court for the Northern District of Illinois.

9.      The handling of the cases by this Court will result in a substantial saving of judicial time and effort, in the reassignment will prevent another judge from addressing overlapping legal and factual issues.

10.     This case has not progressed to the point where designating the removed state court case as related would be likely to delay the proceedings in the earlier case substantially. Both cases are in nascent stages.

11.     The cases are susceptible of disposition in a single proceeding, in that they involve over lapping legal and factual issues including lack of federal subject matter jurisdiction and the scope of the Eckhaus final approval order as explained in the transcript of proceedings. As such, all of the prerequisites for the reassignment of cases as related under LR 40.4 have been satisfied.

WHEREFORE, Plaintiff's Counsel DiTommaso-Lubin PC respectfully requests that this Court enter an order reassigning *DiTommaso-Lubin PC v. Brian C. Witter et al*, No. 1:08-cv-04825 (Judge Pallmeyer), pursuant to LR 40.4.

PAMELA ECKHAUS

/s/   Vincent L. DiTommaso
        One of her Attorneys

Vincent L. DiTommaso
DiTommaso ♦ Lubin
17W 220 22nd Street, Suite 200
Oakbrook Terrace, IL 60181
(603) 333-0000

Joseph M. Laraia
LARAIA & HUBBARD PC
1761 S. Naperville Road, Suite 203
Wheaton, Illinois 60187
(630) 690-6800

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DiTommaso Lubin, PC, | ) | |
| | ) | FILED: AUGUST 24, 2008 |
| **Plaintiff,** | ) | 08CV4825 |
| | ) | **Case No.** |
| v. | ) | JUDGE PALLMEYER |
| | ) | MAGISTRATE JUDGE VALDEZ |
| **Brian C. Witter and Law Offices of** | ) | |
| **Brian C. Witter, PC,** | ) | CEM |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### NOTICE OF REMOVAL

Defendants, pursuant to 28 U.S.C. § 1441, *et seq.*, hereby give notice of their desire to

exercise their rights to remove the above-entitled action from the Court of the Eighteenth Judicial

Circuit, DuPage County, Wheaton, Illinois, Case No. 08-CH-2378. In support of their Notice of

Removal, defendants state as follows:

### 1. Original Jurisdiction in the District Courts.

1.     This is an action that stems from a final federal court judgment entered in the

United States District Court for the Eastern District of New York on June 24, 2008 by the

Honorable Frederic Block in the matter of *Eckhaus v. Nature's Pillows, et al., 06-CV-985.*

2.     The New York federal court explicitly retained jurisdiction to enforce the

settlement and the June 24, 2008 judgment; original jurisdiction in the federal courts therefore

not only exists but is ongoing. *See, e.g., City of Chicago v. International College of Surgeons,*

*522 US 156, 163 (1997) ("the propriety of removal depends on whether the case could have*

*been originally filed in a federal court.")*

3.    The Eckhaus matter, a Rule 23 consumer class action, was brought pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. 1332(d), and so is also expressly governed by federal statutory law.

4.    On August 19, 2008, pursuant to 28 U.S.C. § 1963, a certified copy of the New York judgment was registered with the Clerk of the United States District Court for the Northern District of Illinois. The registered judgment may now be given the same force and effect as the original judgment and enforced accordingly in the Northern District of Illinois. ("A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.") 28 U.S.C. § 1963.

5.    The parties in the state court action are judgment creditors with respect to the June 24, 2008 New York judgment; and both reside in this District. The property in dispute, a $298,000 check for attorneys' fees, is also located within the boundaries of this District.

6.    The Registration Action is currently pending before the Honorable Amy J. St. Eve, Case. No.08-CV-4720. Judge St. Eve has "taken jurisdiction to determine jurisdiction" and requested briefing on the issues of: (1) the scope of the court's ancillary jurisdiction; and (2) the effect of the New York court's retention of jurisdiction to enforce the terms of the June 24, 2008 judgment.

### 2. Important Issues of Federal and Constitutional Law.

7.    The state court proceeding—in the form of a Petition for Preliminary Injunction—attempts to collaterally attack a final federal court judgment. The action was filed on July 28, 2008, thirty-four days after the New York judgment became final on the merits for appellate and claim preclusion purposes, and four days after any opportunity for appellate review had elapsed.

2

8.    An Article III Court entered a final and appealable Rule 54(a) judgment. The state court plaintiff then failed to seek post-judgment relief in the District Court or on appeal. Therefore, the federal judgment automatically precludes subsequent state court litigation due to the Supremacy Clause of Article VI of the United States Constitution.

9.    State courts are barred constitutionally from disregarding the judgments of federal courts. The state court action, on its face, invites an Illinois trial court to do just that: disregard and overrule a final federal court judgment by making a determination with respect to the distribution of the judgment proceeds. (A final judgment over which both the court of first instance in New York—and, it is submitted, an Illinois federal court—already have original jurisdiction.)

10.    Nor was there any express reservation of any claim—state court or otherwise—in the June 24, 2008 judgment which would allow plaintiff a good faith basis *to file any action* trying to alter, amend, modify, reconsider or appeal the New York judgment in any event. (*See* ***Restatement (Second) Judgments, § 26(1)(b); Wright, Miller, and Cooper, Federal Practice and Procedure, §4413.)***

11.    The state court case, by collaterally attacking a final federal judgment, implicates the core of Article III judicial power and attempts to impede a federal tribunal from effectuating and enforcing a final decree. ***Kokkonen v. Guardian Life Insurance Co.,*** 511 US 375, 379 (1994) (ancillary jurisdiction permits district court, *inter alia,* "to vindicate its authority and effectuate its decrees.")

### 3. "After Acquired" Removal Jurisdiction.

12.    Plaintiff originally filed this action on June 23, 2008, raising strictly state court claims.

3

13.     On July 24, 2008, the thirty day appeal period on the New York judgment elapsed.

14.     On July 28, 2008, the state court plaintiff, having disregarded every relevant federal post-judgment procedural deadline, filed its injunction petition trying to appeal the federal judgment in a state court.

15.     The thirty day period for removal of this action therefore began to run when defendants had notice on July 28th that the collateral attack on the federal judgment was underway. The Notice of Removal is therefore timely. *Knudsen v. Liberty Mutual Life Insurance Company*, 411 F3d 805, 807 (7th Cir 2005): ("[A]n amendment to the pleadings that adds a claim under federal law...opens a new window of removal.")

### 4. The Pleadings.

16.     The relevant state court pleadings, as required, are annexed hereto as exhibits: (A) *Petition for Preliminary Injunction;* (B) *Defendants' § 2-619(a)(4) Motion to Dismiss as Barred by a Prior Federal Court Judgment, and for Other Relief.*

17.     Also attached as Exhibit C is the *Emergency Motion to Enforce Judgment and for Other Relief,* filed August 20, 2008 in the Registration Action pending before Judge St. Eve. (Attached as Exhibits D, E, and F are, respectively: a copy of the certified June 24, 2008 New York judgment; a copy of the $298,000 check made jointly and equally payable to the parties to the state court action; and the transmittal letter for the check made equally payable in satisfaction of the judgment proceeds.)

18.     Defendants are in accord that the state court action should be removed and so the rule of unanimity is satisfied.

4

19.     Defendants, as required, will immediately file this Notice of Removal with the

Clerk of the Court of the Eighteenth Judicial Circuit, DuPage County, Wheaton, Illinois, so that

the state court will cease all further proceedings in Case No. 08-CH-2378.

**WHEREFORE**, defendants request the following relief: (a) that the above-entitled

action be removed from the Illinois State Court to the United States District Court for the

Northern District of Illinois, Eastern Division; (b) that this case be consolidated as a related

action with Case No. 08-CV-4720 before the Honorable Amy J. St. Eve; and (c) for such other

and further relief as this Court may deem necessary and just.

**BRIAN C. WITTER**

**By:     /s/ Brian C. Witter**

**Dated: August 23, 2008**

Brian C. Witter,
**Law Offices of Brian C. Witter,**
111 West Jackson Boulevard
Suite 1100
Chicago, IL 60604
(312) 961-4942 (T)
(312) 386-9759 (F)

Attorney No. 6198156

5

Case 1:08-cv-04825    Document 1-2    Filed 08/24/2008    Page 1 of 4

08CV4825
JUDGE PALLMEYER
MAGISTRATE JUDGE VALDEZ
CEM

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
## DU PAGE COUNTY, ILLINOIS

DiTOMMASO-LUBIN, P.C.,        )
                             )
                Plaintiff,    )
                             )
        vs.                   )        Case No. 2008 CH 2378
                             )
LAW OFFICE OF                 )
BRIAN C. WITTER, P.C. and     )
BRIAN C. WITTER, individually, )
                             )
                Defendant.    )

*Chris Kachiraubas*
****Electronically Filed****
Transaction Id: 1276575
2008CH002378
07/28/2008
KIM FRANCO

### PETITION FOR PRELIMINARY INJUNCTION

NOW COMES the Plaintiff, DiTOMMASO-LUBIN, P.C. ("DiTommaso"), by and through its attorneys, LARAIA & HUBBARD, P.C., and respectfully moves the Court for entry of an Order for Preliminary Injunction directing the Defendants, Brian C. Witter, individually and as Brian C. Witter, P.C. ("Witter"), to endorse a check that was submitted to DiTommaso pursuant to a settlement of one of the cases in which DiTommaso represented the plaintiffs therein, and in support thereof, states as follows :

    1.    The entitled case involves an action for Declaratory Judgment and Injunctive Relief and pertains to the rights of DiTommaso and Witter under two independent contractor's agreements entered into between said parties and the business relationship arising therefrom. Said independent contractor's agreements and business relationship pertain to the hiring of Witter by DiTommaso to perform legal services for, and on behalf of, DiTommaso, which services pertained primarily to class action suits.

2.    DiTommaso terminated the independent contractor's agreement and business relationship with Witter, after which Witter filed Notices of Attorney's Lien in certain class action, and other, cases which Witter claimed he had performed services therein.

3.    One of said cases is General Case No.06-CV-00985, entitled *Pamela Eckaus, et al., v. Nature's Pillows, Inc., et al.,* filed in the United States District Court for the Eastern District of New York (the "Eckaus Case").

4.    The class action plaintiffs in the Eckaus Case were clients that were procured by DiTommaso through other counsel, and were the clients of DiTommaso.

5.    The Eckaus Case has been settled and a draft in payment of the attorneys' fees was issued on or about June 24, 2008 in the amount of $298,000.  The subject check was issued to DiTommaso and Witter because Witter had filed a Notice of Attorney's Lien in the Eckhaus Case (Exhibit "A") and the Court in said case stated that Witter's lien issues should be resolved in this case, which was already pending at that time.

6.    As set forth above, the plaintiffs in the Eckaus Case were DiTommaso's clients and never were the clients of Witter.  Witter only worked on the case as an independent contractor of DiTommaso and was paid by DiTommaso for all of the work which Witter performed as an independent contractor.

7.    Witter has no right, or claim, to attorneys' fees in the Eckaus Case.

8.    DiTommaso and Witter have been involved in settlement negotiations concerning the matters involved in the entitled litigation, including matters that could have been included in therein.  Pursuant to said settlement negotiations, the parties have tentatively agreed that DiTommaso would pay Witter a sum in settlement of Witter's claims, which claims DiTommaso denies.

9.    DiTommaso has requested that Witter endorse the settlement draft for attorneys' fees so that DiTommaso could distribute the proceeds thereof to DiTommaso and the three other co-counsel law firms who have an interest therein, or that Witter authorize DiTommaso to negotiate the draft on Witter's behalf so that DiTommaso could make said distributions; however, Witter has failed to provide said consent.

10.    Since the settlement draft was issued on June 24, 2008, it is essential that it be negotiated promptly so that it will not be refused upon presentment because of delay.

WHEREFORE, the Plaintiff, DiTOMMASO-LUBIN, P.C., respectfully prays the Court to enter an order directing Brian C. Witter to endorse the settlement draft and/or to authorize DiTommaso to endorse the settlement draft on Witter's behalf so that the proceeds of said settlement check can be distributed and for DiTommaso to retain the amount tentatively agreed upon by the parties as a settlement of Witter's claims for later distribution pursuant to the settlement and/or order of this Court

DiTOMMASO- LUBIN, P.C.

BY: _____
Vincent DiTommas

---

STATE OF ILLINOIS          )
                           ) SS
COUNTY OF DU PAGE          )

VINCENT DiTOMMASO, being first duly sworn on oath deposes and states that he is one of the principals of DiTOMMASO-LUBIN, P.C., which is the Plaintiff in the above-entitled

matter, that he has read the above and foregoing Motion for Preliminary Injunction, by him subscribed, and that the facts contained therein are true and correct.

DiTOMMASO-LUBIN, P.C.

By: _____
Vincent DiTommaso

SUBSCRIBED AND SWORN to before me this _2d_ day of July, 2008.

_____
NOTARY PUBLIC

OFFICIAL SEAL
SANDRA A OBOS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/20/12

## CERTIFICATE OF ATTORNEY

I certify as attorney of record in this cause, that I have read the above pleading and that to the best of my knowledge, information and belief, formed after reasonable inquiry of my client, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the statements contained herein concerning the lack of knowledge, if any, are true and are not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

_____
As Attorney and Not Personally

LARAIA & HUBBARD, P.C.
Attorney No. 007
1761 South Naperville Road, Suite 203
Wheaton, Illinois 60187
(630) 690-6800

Case 1:08-cv-04825    Document 1-3    Filed 08/24/2008    Page 1 of 6

08CV4825

JUDGE PALLMEYER

MAGISTRATE JUDGE VALDEZ

CEM

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICAL CIRCUIT
## DUPAGE COUNTY, WHEATON, ILLINOIS

DiTommaso Lubin, PC,

Plaintiff,

v.

Brian C. Witter, et al,

Defendants.

Case No. 08-CH-2378

**FILED**

08 AUG -1 AM 11: 04

CLERK OF THE
18TH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS

## DEFENDANTS' 2-619(A)(4) MOTION TO DISMISS PLAINTIFF'S
## PETITION FOR PRELIMINARY INJUNCTION AS BARRED BY A
## PRIOR FEDERAL COURT JUDGMENT, AND FOR OTHER RELIEF

Defendants, by their undersigned counsel, hereby move pursuant to 735 ILCS 5/2-619(a)(4) to dismiss plaintiff's Petition for a Preliminary Injunction on the basis of the doctrine of *res judicata.*

1.    *Res judicata* precludes plaintiff's claims because the cause of action asserted is barred by a final Federal Court Judgment entered in the United States District Court for the Eastern District of New York on June 24, 2008 by the Honorable Frederic Block in the matter of *Eckhaus v. Nature's Pillows, et al., 06-CV-985.* All of the requirements for claim preclusion exist in this case; *i.e.,* (1) there are identical claims arising out of the same transaction and occurrence; (2) there are identical parties to the dispute; and (3) there is a final judgment on the merits. *See Baicker-Mckee, Janssen & Corr, Federal Civil Rules Handbook, § 2.20, pp. 137-142 (2008).*

2.    There can be no dispute in this case, for purposes of *res judicata* analysis, that prongs one and two—identical claims and parties—are satisfied. Plaintiff argued its contract

claims in writing and at oral argument before Judge Block in New York; and the fee dispute that

has now found its way to DuPage County, Illinois, involved the identical competing claimants.

(The June 24, 2008 Final Judgment is attached hereto as Exhibit A.) [1]

3.      But, for *res judicata* purposes, was the final judgment one on the merits? Both the

United States Supreme Court and the relevant Federal Rule of Civil Procedure, Fed. R. Civ. P.

54(a), answer this question emphatically and in the affirmative. It is well settled that when a trial

judge enters judgment, so that the parties are in a position to either enforce or appeal the

judgment, sufficient finality has been achieved for purposes of *res judicata*. *See, e.g., Clay v.*

*United States, 537 U.S. 522, 526 (2003).* ("[A] federal judgment becomes final for appellate

review and claim preclusion purposes when the district court disassociates itself from the case,

leaving nothing to be done at the court of first instance save the execution of the judgment." The

plain language of Federal Rule 54 states that a judgment is any appealable decree or order.

4.      Plaintiff's failure to seek post-judgment relief in that Court bars relitigation of the

claims in Illinois because plaintiff raised and vigorously argued these precise contract claims

before Judge Block at the June 23, 2008 fairness hearing in Brooklyn, New York. Indeed,

plaintiff not only argued these claims in the New York case, it attached the complaint in this

cause to a Federal Court pleading setting forth the identical contract claims that it now asks an

Illinois State Court Judge to review.[2]

5.      The June 24, 2008 Final Approval Order entered in the Eckhaus case awarded

equal discretion over the distribution of $298,000 in attorneys' fees to Brian C. Witter ("Witter")

---

[1]      The transcript of proceedings of the fairness hearing in the Eckhaus matter, written by
Mr. Henry Shapiro, an official court reporter in the EDNY, is attached hereto as Exhibit B.

[2]      *See* Eckhaus case, *06-CV-985*, EDNY Docket # 76, filed June 23, 2008: Docket Text:
*Letter to Judge Block in Response to Brian Witter's Motion re: Final Approval and Entry of
Amended Final Approval Order* (Attachments: # (1) Exhibit [DuPage County] Complaint.)

and DiTommaso Lubin ("D & L"). Accordingly, on July 7, 2008, defendants' counsel, Richard

P. McElroy, sent a check drawn by his client for $298,000 made out jointly to Witter and D & L

in satisfaction of the June 24, 2008 judgment.[3] This settlement check is currently non-negotiable

due to this dispute. (Mr. McElroy's letter transmitting the check is attached hereto as Exhibit C.)

6.    This Court must now enforce the New York Federal Court order and, accordingly,

dismiss plaintiff's Petition for a Preliminary Injunction. This Court should then order that the

$298,000 check be paid into the Clerk of the Court of the Eighteenth Judicial Circuit, DuPage

County, Wheaton, Illinois, and distributed equally to Witter and D & L as the New York

judgment requires and the Supremacy Clause of Article VI of the United States Constitution

demands. *U.S.Const. Art. VI § 2.*

7.    An Article III Court entered a final and appealable order in the New York case.

Plaintiff, inexplicably, let pass every federal post-judgment procedural deadline under both the

Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure. Plaintiff, due to

its eschewal of the rules and plain mandates of post-judgment federal practice, now finds itself

with no remedy whatsoever. Certainly its proposal to this Court to sit as an Appellate Court to

review a Federal Court judgment is a nonstarter.

8.    As one treatise writer has put it: "The suggestion that state courts should be free

to disregard the judgments of federal courts is so unthinkable that the rule rejecting any such

suggestion has been stated in an unbroken line of cases..." *Wright, Law of Federal Courts, 4ᵗʰ*

---

[3]    810 ILCS 5/3-110(a) controls the issue of identification of the person to whom the
instrument is payable by looking to the intention of the issuer. In this case, following the
instruction of the federal judgment to pay Witter and D & L "jointly," the payment on the
$298,000 check can only be made with signatures of both parties. The express provision in the
judgment that these monies are to be paid jointly—and the check itself having joint payess—thus
requires that the funds be split evenly between Witter and D & L.

3

I
M
A
G
E
D

2
0
0
8
0
8
2
8
0
4

*Ed., (1983), p. 694.* Plaintiff's Petition invites a state court judge to do just that: disregard and overrule a final federal court judgment.[4]

9.    Federal judgments are immune to such collateral attacks by state courts. This is basic Federalism. In short, once an Article III Court has entered a final and appealable order—a judgment for purposes of Fed. R. Civ. P. 54(a)—while there are a variety of ways to seek post-judgment relief in the District Court or on appeal, the federal judgment will automatically preclude subsequent state court litigation since the Supremacy Clause of Article VI "mandates that those preclusive effects are binding on state courts." *18 Wright, Miller & Cooper § 4468, pp. 649-650.[5]*

10.    Illinois law, too, recognizes that the doctrine of *res judicata* "applies whether the antecedent case was determined by another Illinois Court, an administrative agency, a federal court, or a court of a sister state to which Illinois courts must give full faith and credit. Judgments rendered by these tribunals may not be subjected to a collateral attack except one which attacks the judgment as void rather than voidable." *Michael, Illinois Practice, Vol. IV, Civil Procedure Before Trial, § 41.5, pp. 310-311 (1989); 2007-08 Pocket Part, n. 3-8, and the numerous Illinois and federal court cases cited therein affirming the above basic principles..*

---

[4]    Although, given the bar of *res judicata,* the Court needn't concern itself with the substance of plaintiff's contract claim, it should be noted that plaintiff's claim is spurious in any case since the contract is with the wrong party—Brian C. Witter, PC, an Illinois professional Corporation, and not signed by Brian C. Witter individually. The New York judgment and the check in satisfaction thereof relate only to Mr. Witter individually. Further, the contract was terminated by plaintiff more than ninety days before the entry of the New York judgment and so can have no effect on this proceeding even if the bar of *res judicata* did not doom plaintiff's Petition for Preliminary Injunction in the first instance

[5]    *Restatement Second of Judgments, § 87,* puts the matter even more bluntly: "Federal law determines the effects under the rules of *res judicata* of a judgment of a federal court."

11.    It is not as if plaintiff was lacking for resources had it wanted post-judgment relief on its purported contract claim. The Federal Rules provide ample instance to alter, amend or reconsider a final and appealable judgment. For example, plaintiff could have availed itself of a Rule 59(e) motion to alter or amend the June 24, 2008 judgment within ten days of its entry. Plaintiff failed to so move. Plaintiff might also have filed a motion to reconsider Judge Block's ruling specifying that the fee award check should be issued jointly to Witter and D & L. Such a motion could have been made up to thirty days after the entry of judgment. Yet plaintiff filed no such motion. Further, plaintiff could have taken advantage of the local rules of the Eastern District of New York which afford litigants a relatively rare opportunity to have the fee matter sent to its Mandatory ADR program. (It is one of only ten United States District Courts in the country to have such a program.) Or, using again the local rules of Court, plaintiff might have asked for a special master to adjudicate its contract claims and attack the judgment in the federal court where the judgment was entered. Finally, of course, plaintiff could have appealed the judgment to the United States Court of Appeals for the Second Circuit, either opting for a straight appeal or moving in the reviewing court for some species of arbitration or court-annexed mediation. None of these many opportunities were taken up by plaintiff. So now it turns to an Illinois state court to overturn a federal judgment.

12.    "It is difficult to evoke sympathy for a plaintiff if the present claim is one which he could have presented in the prior case. Accordingly, if the claim could have been presented in the earlier case, few considerations weigh against the application of the doctrine [of res judicata]." *Ibid. at 314.*[6]

---

[6]    Plaintiff's attempt to have a state tribunal overturn a final federal court judgment may be reduced metaphorically as follows: A car, already critically low on fuel, sets out from Brooklyn on a journey. There are five service stations nearby along the car's route; and one in lower

5

I
M
A
G
E
D

2
0
0
8
0
8
0
8
0
4

13.    Plaintiff's Petition for Preliminary Injunction, which seeks to appeal a federal judgment in an Illinois trial court, should accordingly be dismissed pursuant to 735 ILCS 5/2-619(a)(4) on the basis of the doctrine of *res judicata.*

**WHEREFORE,** defendants pray that their 2-619(a)(4) motion to dismiss be granted; that plaintiff's Petition for Preliminary Injunction be dismissed with prejudice as barred by the doctrine of *res judicata*; and that this Court enter an order requiring the Eckhaus attorneys' fees check in the amount of $298,000 to be paid into the Clerk of the Court of the Eighteenth Judicial Circuit, DuPage County, Wheaton, Illinois, and distributed equally to Witter and D & L as the New York judgment and applicable federal law requires.

Brian C. Witter, et al.

By: _____
One of his Attorneys

**Thomas G. Gardiner
Gardiner Koch & Weisberg
53 W. Jackson Blvd., Suite 950
Chicago, IL 60604-3849
(312) 362-0000
Attorney No. 29975**

---

Manhattan across the Brooklyn Bridge. The driver, however, drives blithely by these convenient fueling points and instead tries to drive the 800 miles to Wheaton, Illinois, to refuel, only to stall out in Hoboken, NJ. The car, like the case, should never have left New York.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Pamela Eckhaus, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Case No. 08-CV-4720** |
| vs. | ) | |
| | ) | **Honorable Amy St. Eve** |
| | ) | |
| Nature's Pillows, et al. | ) | **Magistrate Judge Keys** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## EMERGENCY MOTION TO ENFORCE JUDGMENT AND FOR OTHER RELIEF

Brian C. Witter ("Witter"), for his Emergency Motion to Enforce Judgment and for Other Relief, states as follows:

### 1. NATURE OF THE ACTION

1.     This is an action to enforce a final Federal Court Judgment entered in the United States District Court for the Eastern District of New York on June 24, 2008 by the Honorable Frederic Block in the matter of *Eckhaus v. Nature's Pillows, et al., 06-CV-985.*

2.     The Eckhaus final judgment, for $298,000 in attorneys' fees, awards Witter, a co-judgment creditor, $149,000; the other co-judgment creditor, the Oakbrook Terrace law firm of DiTommaso Lubin, PC ("D & L"), is entitled equally to $149,000.

3.     A certified copy of the New York judgment was registered with the Clerk of the United States District Court for the Northern District of Illinois on August 19, 2008 pursuant to 28 U.S.C. § 1963 and may now be given the same force and effect by this Court as the original judgment and enforced accordingly. (A copy of the certified judgment is attached hereto as Exhibit A.)

## 2. JURISDICTION AND VENUE

4.      This court has jurisdiction over this action pursuant to 28 U.S.C. § 1367, as the matter falls within the Court's supplemental jurisdiction. *Kokkonen v. Guardian Life Insurance Co.,* 511 US 375, 379 (1994) (ancillary jurisdiction permits district court, *inter alia,* "to vindicate its authority and effectuate its decrees"); *Yang v. City of Chicago,* 137 F3d 522, 525 (7th Cir 1998) (citing to extensive authority).

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and § 1391(b)(2), as the judgment in question is registered in this district, and the property in dispute is located in this district.

6.      Movant and judgment creditor Brian C. Witter, a citizen and resident of Chicago, Illinois, has been a member in good standing of this Court's General Bar since 1988 and its Trial Bar since 1991.

7.      Judgment creditor DiTommaso Lubin, PC, is an Illinois professional corporation engaged in the practice of law, with its principal place of business in Oakbrook Terrace, Illinois.

## 3. ENFORCING THE FINAL JUDGMENT AND EQUALLY DISTRIBUTING THE SETTLEMENT PROCEEDS.

8.      The June 24, 2008 Final Approval Order entered in the Eckhaus case awarded equal discretion over the distribution of $298,000 in attorneys' fees to Witter and D & L.

9.      On July 7, 2008, defendants' counsel in the Eckhaus matter, Richard P. McElroy, sent a check drawn by his client for $298,000 made out jointly to Witter and D & L in satisfaction of the June 24, 2008 judgment. (A copy of the check made jointly payable to Witter and D & L is attached hereto as Exhibit B; and Mr. McElroy's letter transmitting the check is attached hereto as Exhibit C.) The check payable in satisfaction of the judgment, on information and belief, is in the possession of counsel for D & L, Joseph M. Laraia, Esq., a practitioner

2

located in Wheaton, Illinois. D & L, through Mr. Laraia, has consistently refused to allow the

check to be negotiated since it imagines that it should be entitled to a greater share of the

judgment proceeds, irrespective of what the New York final and appealable order plainly states

*and despite its failure to seek either to amend, alter, reconsider or appeal the judgment in the*

*proper federal forum.*

      10.    An Article III Court entered a final and appealable order in the New York case.  D

& L, however—although distressed by Judge Block's ruling—and despite myriad available

remedies, failed to seek post-judgment relief in either the trial court or in the Second Circuit

Court of Appeals, allowing the judgment to become final. ("[A] federal judgment becomes final

for appellate review and claim preclusion purposes when the district court disassociates itself

from the case, leaving nothing to be done at the court of first instance save the execution of the

judgment." *Clay v. United States, 537 U.S. 522, 526 (2003).* [1]

      11.    Instead, thirty-five days after the New York Judgment became final on the merits

for appellate and claim preclusion purposes, and five days after any opportunity for appellate

review had elapsed, D & L filed an injunction petition in an Illinois Court seeking to collaterally

attack the final judgment.

      12.    D & L, due to its eschewal of the rules and plain mandates of post-judgment

federal practice, now finds itself with no remedy whatsoever. Certainly its proposal to an Illinois

State Court to sit as an Appellate Court to review a final federal court judgment is a nonstarter

---

[1]    The finality rule under 28 U.S.C. § 1291 has been stated by the United States Supreme
Court as follows: "the general rule is that a party is entitled to a single appeal, to be deferred until
final judgment has been entered, in which claims of district court error at any stage of the
litigation may be ventilated." *Digital Equipment Corp. v. Desktop Direct Corp., 511 US 563,
568 (1994).* Accordingly, a decision is considered final and appealable under § 1291 only if it
"ends the litigation on the merits and leaves nothing for the court to do but execute the
judgment." *Catlin v. United States, 324 US 229, 233 (1945).*

and should not be countenanced by any federal court with jurisdiction over the identical subject matter.

13.    The settlement check is currently non-negotiable. D & L's state court Petition for a Preliminary Injunction is currently pending in the Eighteenth Judicial Circuit, DuPage County, Wheaton, Illinois, Case Number, 08-CH-2378. Witter has moved to dismiss the Petition pursuant to 735 ILCS § 5/2-619(a)(4 ) on jurisdictional and *res judicata* grounds as barred by a prior federal court judgment since D & L argued for a greater share or the judgment proceeds on the basis of a purported contractual relationship between it and Witter at the Eckhaus Final Approval Hearing.[2]

14    The state court injunction petition simply rehashes the same arguments made at the Eckhaus Final Approval hearing that Judge Block found unpersuasive and which are now barred jurisdictionally and by the doctrine of *res judicata.* [3]

---

[2]    D & L's failure to seek post-judgment relief in the New York Court bars relitigation of the claims in Illinois because it raised and vigorously argued these precise contract claims before Judge Block at the June 23, 2008 fairness hearing in Brooklyn, New York. Indeed, D & L not only argued these claims in the New York case, it attached the DuPage County complaint to a Federal Court pleading setting forth the identical contract claims that it now asks an Illinois State Court Judge to review *See* Eckhaus case, *06-CV-985,* EDNY Docket # 76, filed June 23, 2008: Docket Text: *Letter to Judge Block in Response to Brian Witter's Motion re: Final Approval and Entry of Amended Final Approval Order* (Attachments: # (1) Exhibit [DuPage County] Complaint.)

[3]    Indeed, it is difficult to accord good faith to D & L's contract claim, which relies on an abrogated and moribund instrument that: (a) was terminated three months before the judgment at issue here was entered, (b) has the wrong party as signatory—Witter's PC and not Witter individually; and (c) contained no "survival of terms clause." Essentially an "at will" collaboration agreement, the contract moreover had mutual termination provisions so the "at will" nature of the agreement could not be clearer and the need for an explicit survival of terms clause any more obvious or essential. Given the jurisdictional and *res judicata* bars to D & L's contract claims, the Court needn't concern itself with the substance of the claims: the issue is merely academic. (Academic, that is, if one is willing to leave aside the questions of the claims' good faith assertion and the requirements of thorough prefiling investigation mandated by Federal Rule 11 and its Illinois counterpart, Supreme Court Rule 137.)

## 4. ENJOINING THE STATE COURT CASE.

15.     Once an Article III Court has entered a final and appealable order—a Rule 54(a)

judgment—while there are a variety of ways to seek post-judgment relief in the District Court or

on appeal, the federal judgment automatically precludes subsequent state court litigation due to

the Supremacy Clause of Article VI of the United States Constitution. This is basic federalism.

16.     Indeed, according to one of the leading scholars of federal jurisdiction, "the

suggestion that state courts should be free to disregard the judgments of federal courts is so

unthinkable that the rule rejecting any such suggestion has been stated in an unbroken line of

cases..." *Wright, Law of Federal Courts, 4th Ed., (1983), p. 694.* D & L's Petition invites a state

court judge to do just that: disregard and overrule a final federal court judgment. [4]

17.     D & L let pass every federal post-judgment procedural deadline under both the

Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure. Instead, it filed a

state court proceeding to overturn a final federal judgment.

---

[4]     It is not as if D & L was lacking for resources had it wanted post-judgment relief on its
purported contract claim. The Federal Rules provide ample instance to alter, amend or reconsider
a final and appealable judgment. For example, D & L could have availed itself of a Rule 59(e)
motion to alter or amend the June 24, 2008 judgment within ten days of its entry. D & L failed to
so move. D & L might also have filed a motion to reconsider Judge Block's ruling specifying
that the fee award check should be issued jointly to Witter and D & L. Such a motion could have
been made up to thirty days after the entry of judgment. Yet it filed no such motion. Further, D &
L could have taken advantage of the local rules of the Eastern District of New York which afford
litigants a relatively rare opportunity to have the fee matter sent to its Mandatory ADR program.
(It is one of only ten United States District Courts in the country to have such a program.) Or,
using again the local rules of Court, D & L might have asked for a special master to adjudicate
its contract claims and attack the judgment in the federal court where the judgment was entered.
Finally, of course, D & L could have appealed the judgment to the United States Court of
Appeals for the Second Circuit, either opting for a conventional appeal or moving in the
reviewing court for some species of arbitration or court-annexed mediation. None of these many
opportunities were taken up by D & L. So now it turns to an Illinois state court to overturn a
federal judgment.

18    D & L's attempt to have a state tribunal overturn a final federal court judgment

may be reduced metaphorically as follows: A car, already critically low on fuel, sets out from

Brooklyn on a journey. There are five service stations nearby along the car's route; and one in

lower Manhattan across the Brooklyn Bridge. The driver, however, cruises blithely by these

convenient fueling points and instead tries to speed the 800 miles to Wheaton, Illinois, to refuel,

only to stall out in Hoboken, NJ. The car, like the case, should never have left New York.

19.    This Court should now enforce the judgment and, accordingly, enjoin D & L's

Petition for a Preliminary Injunction in the Illinois state court. 28 U.S.C. § 2283 ("A court of the

United States may not grant an injunction to stay proceedings in a State court except as expressly

authorized by Act of Congress, *or where necessary in aid of its jurisdiction, or to protect or

effectuate its judgments")* (emphasis supplied).

### 5. PAYMENT OF THE JUDGMENT PROCEEDS INTO THE REGISTRY OF THE COURT PURSUANT TO FEDERAL RULE 67 AND THE EQUAL DISTRIBUTION THEREOF.

20.    Federal Rule 67(a) allows the Court to accept deposits of money where such

assets are in dispute in a case.

21.    Witter, as a joint payee on the $298,000 check, is a holder of the asset for

purposes of the Rule.

22.    The check should be paid into the registry of the court and then distributed

equally to Witter and D & L as the judgment provides.

**WHEREFORE,** Witter requests the following relief: (a) that this Court enforce the final

June 24, 2008 judgment; (b) that it enjoin the state court proceedings attempting to collaterally

attack and overturn the final federal court judgment; (c) that an order be entered paying the

settlement funds into the registry of court pursuant to Federal Rule 67(a); (d) that the judgment

proceeds then be immediately equally distributed to the judgment creditors, The Law Offices of

Brian C. Witter, PC, and The Law Offices of DiTommaso Lubin, PC, pursuant to the court's

inherent powers to effectuate its own judgments; and (e) for such other and further relief as the

Court may deem necessary and just.


### BRIAN C. WITTER


By:    /s/ Brian C. Witter


**Dated: August 20, 2008**


Brian C. Witter,
**Law Offices of Brian C. Witter,**
111 West Jackson Boulevard
Suite 1100
Chicago, IL 60604
(312) 961-4942 (T)
(312) 386-9759 (F)

Attorney No. 6198156

7

JUDGE PALLMEYER

MAGISTRATE JUDGE VALDEZ



CEM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PAMELA ECKHAUS, individually and )
on behalf of all others similarly situated, )
)
      Plaintiff, )     06 CV 00985
)
      -vs- )     Judge Block
)
       )     Magistrate Matsumoto
NATURE's PILLOWS, INC., BILL McALLISTER )
BRAD SPECTER and STEVE SILBIGER, )
)
      Defendants. )

## FINAL APPROVAL ORDER

### IT IS HEREBY ORDERED:

1.    On March 14, 2008 this Court preliminarily approved the Class Settlement

Agreement ("Agreement") reached between Pamela Eckhaus ("Plaintiff") and the class of

persons as defined in the Agreement ("Class"); and Defendants Nature's Pillows, Inc.,

Bill McAllister, Brad Specter, and Steve Silbiger ("Defendants").

2.    The notice given to the members of the class—publication in the USA Today

Weekend Edition on April 11 and 18, 2008—was reasonably calculated under the

circumstances to apprise them of the pendency of this action, all material elements of the

proposed settlement, their opportunity to exclude themselves from, to object to, or to

comment on the settlement and to appear at the settlement hearing. The notice was

reasonable and the best notice practicable under the circumstances; was due, adequate

and sufficient notice to all class members; and complied fully with the laws of the United

States and the Federal Rules of Civil Procedure, due process and any other applicable

rules of court. A full opportunity has been afforded to the members of the class to

participate in the hearing, and all members of the class and other persons wishing to be

AUG-19-2008 13:30
Case 1:08-cv-04720    Document 13-2    Filed 08/28/2008    Page 25 of 29
Case 1:08-cv-04825    Document 1-5    Filed 08/24/2008    Page 2 of 3    P.003

of the attorney time and out-of-pocket costs incurred by Class Counsel. Defendants shall transmit to DiTommaso & Lubin within fourteen (14) days of the Effective Date as defined in the Settlement Agreement: (1) a check in the amount of $298,000 made out to *jointly to Vincent L. DiTommaso, Peter S. Lubin & Brian C. Witter;* ~~DiTommaso & Lubin, which DiTommaso & Lubin will distribute among Class Counsel;~~ and (2) a check in the amount of $2000 made out to Pamela Eckhaus, which DiTommaso & Lubin will transmit to Mrs. Eckhaus.

9.    <u>Release of UrineGone™ Claims</u>: Plaintiff and each member of the Settlement Class, their spouses and former spouses, as well as the present, former, and future respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns of Plaintiff and each Settlement Class member, pursuant to the Settlement Agreement and Amendment thereto approved by this final order, have discharged Defendants, as well as all of their present, former, and future direct and indirect parent companies, affiliates, subsidiaries, divisions, agents, franchisees, successors, predecessors-in-interest; and all of the aforementioneds' respective present, former, and future officers, directors, employees, shareholders, attorneys, agents, vendors, couriers, independent contractors, and assigns, from any and all rights, duties, obligations, claims, actions, causes of action, or liabilities, whether arising under local, state, or federal law, whether by statute, contract, common law, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated that, as of the date that this Order is entered: (1) arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, or occurrences that were directly or indirectly alleged, asserted, described, set forth, or referred to in the case captioned *Eckhaus v.*

*Nature's Pillows, et al.*, Case No. 06-CV-985, currently pending in the United States District Court for the Eastern District Court of New York before the Honorable Fredrick Block ("the UrineGone™ Litigation"); (2) are, were, or could have arisen out of or been related in any way to the UrineGone™ Litigation.

10.    Nothing contained in the release agreed to by the parties and set forth in Paragraph 9 herein shall be construed to prevent or impede Settlement Class members, including the Class Representative, from (1) individually seeking product refunds for Urine Gone kits purchased from defendant Nature's Pillows, Inc.; or (2) individually bringing tort claims for property damage or personal injury arising from UrineGone™ products.

11.    Plaintiff and each member of the Settling Class is hereby fully and finally enjoined from prosecuting all claims released by the release agreed to in the Settlement Agreement and Amendment thereto, as set forth in Paragraph 9 herein.

12.    As provided for in the Settlement Agreement, Defendants have agreed to change the original television advertising spots for Urine Gone™, whether broadcast via television, radio, internet, print, or other means.

13.    The claims of Plaintiff and the class set forth in the Second Amended Complaint are dismissed with prejudice pursuant to the parties' settlement.

DATE *June 23, 2008*                    Entered: _____
                                                The Honorable Frederic Block
                                                United States District Judge

## McElroy & Associates LLP
### ATTORNEYS AT LAW

202A NORTH MONROE STREET
MEDIA, PA 19063
610.566.8301  •  FAX 610.566.8305

CEM

RICHARD P. McELROY
JEFFREY C. McELROY

DIRECT DIAL: 610.566.8302

July 7, 2008

*Via Federal Express*

Vincent DiTommaso, Esquire
DiTommaso, Lubin P.C.
17 W. 220 2ⁿᵈ Street
Suite 200
Oakbrook Terrace, IL 60181

Re:    <u>Pamela Eckhaus v. Nature's Pillows, et al.</u>

Dear Vince:

Enclosed are two checks; the first in the amount of $298,000.00 payable to your firm and Brian Witter; the second in the amount of $2,000.00 payable to Ms. Eckhaus. This concludes the matter from defendants' viewpoint.

Very truly yours,

Richard P. McElroy

RPM:mes
Enclosures

Cc:    Matthew H. Adler, Esquire (no enclosure)
        Bradley Specter (no enclosure)
        Steven Silbiger (no enclosure)

Case 1:08-cv-04720    Document 13-2    Filed 08/28/2008    Page 28 of 29
Case 1:08-cv-04825    Document 1-6    Filed 06/24/2008    Page 2 of 2
3033

Natures Pillows,
2607 Interplex Drive
Trevose, PA 19053-6946
215-633-9801
Urine Gone

42/312

6/24/2008

PAY TO THE
ORDER OF    DiTommaso & Lubin P.C. and Brian Witter

$ **298,000.00

Two Hundred Ninety-Eight Thousand and 00/100************************************************************ DOLLARS

DiTommaso & Lubin P.C. and Brian Witter
17 W. 220 2nd Street
Suit 200
Oakbrook Terrace, IL  60181

MEMO

⑈003033⑈ ⑆031206420⑆ ⑈4750718457⑈

Natures Pillows, Inc.
2607 Interplex Drive
Trevose, PA 19053-6946
215-633-9801
Urine Gone

SUN NATIONAL BANK
55-642/312

3031

6/24/2008

PAY TO THE
ORDER OF    Pamela Eckhaus

$ **2,000.00

Two Thousand and 00/100************************************************************************************* DOLLARS

Pamela Eckhaus
1204 Caffrey Ave.
Far Rockaway, NY  11691

MEMO

⑈003031⑈ ⑆031206420⑆ ⑈4750718457⑈

MCELROY & ASSOCIATES LLP

ATTORNEYS AT LAW

202A NORTH MONROE STREET
MEDIA, PA 19063
610.566.8301 • FAX 610.566.8305

JUDGE PALLMEYER
MAGISTRATE JUDGE VALDEZ

CEM

RICHARD P. MCELROY
JEFFREY C. MCELROY

DIRECT DIAL: 610.566.8302

July 7, 2008

*Via Federal Express*

Vincent DiTommaso, Esquire
DiTommaso, Lubin P.C.
17 W. 220 2nd Street
Suite 200
Oakbrook Terrace, IL 60181

Re:    <u>Pamela Eckhaus v. Nature's Pillows, et al.</u>

Dear Vince:

Enclosed are two checks; the first in the amount of $298,000.00 payable to your firm and Brian Witter; the second in the amount of $2,000.00 payable to Ms. Eckhaus. This concludes the matter from defendants' viewpoint.

Very truly yours,

Richard P. McElroy

RPM:mes
Enclosures

Cc:    Matthew H. Adler, Esquire (no enclosure)
       Bradley Specter (no enclosure)
       Steven Silbiger (no enclosure)

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DITOMMASO-LUBIN PC | ) | |
| | ) | |
| Plaintiff, | ) | 08-CV-4720 |
| | ) | |
| -vs- | ) | Honorable Amy St. Eve |
| | ) | |
| LAW OFFICES OF BRIAN C. | ) | Magistrate Judge Keys |
| WITTER PC, and BRIAN C.WITTER | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION TO REMAND

Plaintiff, DiTommaso-Lubin PC ("Plaintiff"), by its undersigned attorneys, respectfully requests that this Court remand this action to the Circuit Court of DuPage County pursuant to 28 U.S.C. § 1447 due to Defendants, Brian C. Witter's and the Law Office of Brian C. Witter PC's ( herein collectively "Defendants") failure to comply with 28 U.S.C. § 1446. In support of its motion, Plaintiff states:

## I.    FACTUAL BACKGROUND

1.    Defendants were employed by Plaintiff pursuant to written independent contractor agreements with Defendant, Brian C. Witter, P.C and its sole employee/owner, Defendant, Brian C. Witter. Plaintiff terminated Defendants for cause in early April, 2008.

2.    On June 20, 2008, Plaintiff filed suit against Defendants in the Circuit Court of DuPage County, Illinois ("state court action"). That lawsuit seeks relief with respect to Defendants' liens and attempts to receive monies directly from Plaintiff's clients and cases. Plaintiff had already compensated Defendants for the same work pursuant to the written independent contractor agreements between the parties. A copy of the Complaint in the state

court action is attached as Exhibit 1. On June 27, 2008 Plaintiff served Defendants with the

Complaint. Exhibit 2. That Complaint seeks:

A. A declaratory judgment that Defendants are in material breach of contract for seeking compensation contrary to the terms of the parties' independent contractor agreements in the cases that Defendants worked on while they were employed by Plaintiff, including the class action case entitled, *Pamela C. Eckhaus, et al. v Natures Pillows, Inc., et al.*, 2006 CV 00985 (E.D.N.Y.) (hereafter referred to as "*Eckhaus*").

B. A declaratory judgment that Defendants' compensation, if any, for the cases Defendants worked on while employed by Plaintiff, including *Eckhaus*, must be determined pursuant to the terms of the parties' independent contractor agreement, and that Defendants cannot claim additional compensation in those cases based on Defendants' alleged market hourly rates because, among other reasons, Defendants never had any agreement with Plaintiff's clients to receive such compensation; Defendants' compensation agreement was with Plaintiff and the written agreements do not provide for compensation based on market rates.

C. Injunctive relief to preclude Defendants from asserting attorneys liens in certain of Plaintiff's class action and contingency cases, including *Eckhaus*, even though Defendants never had an attorney client relationship with any of the clients, and only worked on the cases as an independent contractor of Plaintiff pursuant to the terms of the parties' independent contractor agreements.[1]

3. On June 24, 2008, the *Eckhaus* Court entered a final approval order on the class

action settlement. At that *Eckhaus* final approval hearing, Defendants asked the *Eckhaus* Court

to award Defendants $105,000 of the $298,000 attorney fee award based on Defendants' alleged

hourly market rates. Exhibits 3-4. There, Defendants submitted a proposed amended final

approval order purporting to award Defendants $105,000 in fees with the remaining $193,000 to

be paid to Plaintiff for distribution to Plaintiff and the other class counsel in *Eckhaus*.[2] Exhibit 3.

In response to Defendants' fee affidavit and proposed amended final approval order, Plaintiff

---

[1] Defendants have since withdrawn their purported attorneys' liens rather than litigate their lack of validity.

[2] Defendants now claim the *Eckhaus* Court somehow awarded them $44,000 more in fees than his own attorneys lien and fee affidavit claimed.

filed with the *Eckhaus* Court a copy of the pending state court action Complaint seeking

enforcement of the parties' written independent contractor agreements.  Exhibit 5.

      4.     The *Eckhaus* Court expressly abstained from assuming jurisdiction over the fee

dispute between Plaintiff and Defendants which dispute was pending in the state court action.

*See*, Transcript of Proceedings attached hereto as Exhibit 6.  That Court specifically declined to

hear or determine the merits of Defendants' fee allocation request.  *Id.*  It stated that the names of

Peter Lubin, Vincent DiTommaso and Brian Witter were to appear on the attorneys' fee award

check with the fee dispute to be resolved in "Illinois" (in the state court action).  *Id.*

      5.   The *Eckhaus* Court stated that the allocation of the attorneys' fees between

Defendants and the other class attorneys was not a matter it would decide.  (See transcript page

7, lines 2-5 of Exhibit 6).  The Court inquired of counsel as to why the Court could not order the

fee award check made out to DiTommaso, Lubin and Witter, and let the parties fight over the

distribution and allocation of the fees in Illinois state court. (See transcript, page 7, lines 21-23,

Exhibit 6)  The Court stated it would not get involved in deciding how much of the fee award

Defendants would receive, and did not feel it was appropriate for the Court to make such a

decision. (See transcript, page 8, lines 20-23, Exhibit 6)  The *Eckhaus* Court stated it would

order the settlement check to be made out to DiTommaso, Lubin and Witter until further

resolution of the fee dispute in the state court action in "Illinois". (See transcript page 9, lines 13-

17 and page 10, lines 16-19 of Exhibit 6).

      6.     A copy of the June 24, 2008 final approval Order is attached as Exhibit 7.

Paragraph 8 of the Order does not order any amount of money to be allocated to Defendants.  At

that time, Defendants were seeking $105,000 in fees according to their fee affidavit and proposed

amended final approval order.  Exhibits 3-4.  The June 24, 2008 final approval order (Exhibit 7)

follows the Court's statement in the transcript of proceedings that it would order the entire fee

award draft of $298,000 to be written in the names of Vincent DiTommaso, Peter Lubin and

Brian Witter.[3]

       7.     The Eckhaus Court stated in pertinent part:

> **It's not for me to decide how the money should be attributed. That is a separate fight the two of you are fighting and be my guest. Legally, the money goes to DiTommaso-Lubin. (See transcript page 7, lines 2-5 of Exhibit 6) Whoever has been designated as lead counsel,that seems to be the right way to do it. I will not get involved in deciding whether you, Mr. Witter, is to get $105,000 or $100,000. It does not seem appropriate to me. (See transcript page 8, lines 20-23 of Exhibit 6) Lead counsel apparently, my clerk tells me, as of March 12[th], is DiTommaso, Lubin and Witter. We'll have the check made out collectively. It might be a problem to do special, account pending the ultimate determination in Illinois. (See transcript page 9, lines 13-17 of Exhibit 6) It's unfortunate. I will sign neither of these [proposed final approval orders]. I will put in DiTommaso, Lubin and Witter. It won't be negotiable until you decide to sign your names to it into a special account. What else can I do? (See transcript page 10, lines 16-19 of Exhibit 6)**

       8.     On July 28, 2008, Plaintiff filed a motion for entry of an injunction in the state

court action seeking to deposit the *Eckhaus* check when Defendants declined to sign that check.

Exhibit 8.

       9.     On July 28, 2008, Thomas Gardiner of the law firm of Gardiner Koch &

Weisberg filed an appearance on behalf of Defendants in the state court action. On August 1,

2008, through Gardiner, Defendants moved to dismiss Plaintiff's motion for an injunction

claiming that the June 24, 2008 Eckhaus final approval order was *res judicata*. Exhibit 9. A

briefing schedule was set by court order on the motion to dismiss. Exhibit 10. Plaintiff filed its

---

[3]     Although the final approval order states the check should have three names on it, Defendants now claim that it is the equivalent of a money judgment in their favor for 50% of the $298,000. Defendants do not explain the legal or factual basis for this argument or how the Court's statements that it was requiring 3 names on the check somehow creates a final judgment in Defendants' favor for $149,000.

response to the motion to dismiss explaining why *res judicata* was not applicable. Exhibit 11.

Pursuant to the scheduling order, Defendants' reply brief is due on September 2, 2008. Exhibit

10.

      10.     On August 19, 2008, Defendants registered the *Eckhaus* final approval order in

the United States District Court for the Northern District of Illinois. Exhibit 12. On August 20,

2008, Defendants filed an "emergency motion" under Fed. Rule. Civ. P. 67. That "emergency

motion" indicated that it was attempting to enforce the *Eckhaus* final approval order and was

asking Judge St. Eve to order the deposit of the *Eckhaus* $298,000 fee award check with the

Court. That "emergency motion" also sought "50/50 division" of those funds between Plaintiff

and Defendants.[4] Exhibit 13. Defendants did not attach the transcript of the final approval

proceedings in *Eckhaus* to this new federal court action.[5]

---

[4]     Rule 67 is for enforcement of actions in which part of the relief sought is a judgment for a sum of money. The Court can direct deposit of disputed monies with the Court in such actions. Defendants have no such independent action pending seeking a sum of money and therefore Rule 67 is inapplicable by its express language. In any event, even if it were applicable, as Rule 82 states, Rule 67 cannot confer federal subject matter jurisdiction. *See, National Westminster Bank U.S.A. v. Cheng*, 751 F.Supp. 1158, 1161 (S.D.N.Y. 1990); *Georgia Central Credit Union v. Martin G.M.C. Trucks, Inc.*, 622 F.2d 137, 139 (C.A.La. 1980). Rule 82 states: "These rules do not extend … the jurisdiction of the district courts or the venue of actions in those courts." Nor as explained *infra* at pp. 9-11 can the Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379 (1994), confer federal jurisdiction beyond that expressly undertaken by the *Eckhaus* Court in its final approval order (in which the Court expressly declined to hear or resolve the parties' fee allocation dispute). As such, the Eckhaus final approval order does not confer any federal jurisdiction for Witter to seek payment of $149,000 or any sum certain in any federal court. That "fight", as the *Eckhaus* Court noted, would proceed in state court in "Illinois".

[5]     *Res judicata* is not applicable when transcript of proceedings proves a court declined to rule on or decide a matter. *People v. Carroccia*, 352 IllApp3d 1114, 1124 (2nd Dist. 2004); *Equal Employment Opportunity Commission v. Sears, Roebuck & Co.*, 504 F.Supp. 241, 274 (N.D. Ill. 1980) ("The comments of Judge Hanson further reveal that he did not intend his Brennan and Usery decisions to absolutely bar any future monetary and injunctive equal pay claims against Sears anywhere in the country …"); see also *Perroncello v. Donahue*, 835 N.E.2d 256, 261 (Mass.App.Ct., 2005).

11.     Pursuant to that "emergency motion," Defendants also moved in this new federal action to enjoin the state court action, including hearing on Defendants' own motion to dismiss seeking resolution of the *res judicata* issue that Defendants raise again in this action.  Exhibit 13. On August 21, 2008, this Court, *sua sponte,* ordered briefing on the issue of whether the Court has subject matter jurisdiction, and stated the Court would not entertain the motion to enjoin the state court proceedings until it determined that it had jurisdiction.

12.     On Sunday August 24, 2008, Defendants filed their notice of removal of the state court action.  Defendants did not attach the Complaint to the notice of removal; nor did they attach the transcript of proceedings in *Eckhaus* where that Court abstained from resolving the fee allocation dispute.  Defendants appeared *pro se* in this action.  Defendants' attorney in the state court action, Thomas Gardiner, did appear on the notice of removal.  He did not sign the notice of removal attesting that he believed that the pleading conformed to the requirements of Rule 11.

13.     As a result of the notice of removal, Defendants have obtained an automatic stay on the state court proceedings temporarily gaining essentially the same relief that Judge St. Eve declined to allow when the Court indicated it would not entertain Defendants' emergency motion to enjoin the state court action until the Court first decided the issue of federal jurisdiction.

## II.    DEFENDANTS' REMOVAL IS UNTIMELY .

14.     28 U.S.C. § 1446(b) requires that a notice of removal be filed within thirty days after the Defendants receive the Complaint.  Defendants were served with the Complaint on June 27, 2008.  Thus, the time for removal expired well before the filing of the removal petition on August 25, 2008.

15.     The complaint in Plaintiff's state court action against Defendants (which was not attached to the Defendants' notice of removal) specifically seeks a declaration that Defendants

6

are not entitled to any additional compensation for work they performed (and were paid for) before being terminated by Plaintiff's firm.   That state court action seeks the determination that Defendants' entitlement to fees, if any, is governed by the parties' independent contractor agreements. The Complaint also seeks a declaration that Defendants are in material breach of contract of the independent contractor agreements for seeking payment directly from Plaintiff's clients based on Defendants' alleged market rates (which was the basis for Defendants' fee petition in *Eckhaus* which the *Eckhaus* Court expressly declined to hear).   That Complaint squarely places before the state court the question of whether the allocation of the *Eckhaus* attorney fee and cost monies is governed by the parties' independent contractor agreements.

16.     Plaintiff's state court motion for entry of an injunction allowing for the deposit of the *Eckhaus* fee award check did not modify or amend the Complaint as Defendants now claim. Plaintiff sought the same ultimate relief in the Complaint-- a declaration that Defendants' compensation in *Eckhaus* was governed by the independent contractor agreements. For that reason, service of the injunction did not start the "clock ticking" for removal. The date Defendants were served with the state court complaint, June 27, 2008, is the correct date when the 30 day removal time clock commenced.

17.     Because Defendants did not file a notice of removal within 30 days of June 27, 2008, removal is untimely.  This case should therefore be remanded to the state court-the Circuit Court of DuPage County.

## II.     EVEN IF REMOVAL WERE TIMELY, IT IS IMPROPER AS DEFENDANTS' *RES JUDICATA* DEFENSE IS NOT A BASIS FOR REMOVAL.

18.     Even if Defendants had timely removed this matter, Defendant's *res judicata* defense does not create federal jurisdiction and is not a basis for removal as Defendants incorrectly assert.

19.     Federal district courts should interpret the removal statute narrowly, and presume that the plaintiff may choose his or her forum. *Doe v. Allied-Signal, Inc*, 985 F.2d 908, 911 (7th Cir. 1993). Any doubt regarding jurisdiction should be resolved in favor of the states and the burden of establishing federal jurisdiction falls on the party seeking removal. *Id.*

20.     In their notice of removal, Defendants claim that the basis for federal subject matter jurisdiction is to allegedly prevent Plaintiff from collaterally attacking a final judgment in *Eckhaus* in the state court action. Defendants assert that Plaintiff in the state court action is seeking to "disregard and overrule a final federal judgment," and that "the federal judgment [in *Eckhaus*] automatically precludes subsequent state court litigation." This is the same *res judicata* defense that Defendants raised in state court seeking to dismiss the injunction motion. (Exhibit 9)

21.     Through the filing of the notice of removal, Defendants have now obtained a stay on the state court proceedings and on resolution of their own *res judicata* defense by automatic operation of the removal statute.

22.     "A district court may not remove an action from a state court merely because of the preclusive effect of its earlier judgment." *Russell v. Legal Aid Soc. of New York*, 200 Fed.Appx. 37, 38 (2nd Cir.2006); *Metheny v. Becker*, 352 F.3d 458, 460 (1st Cir. 2003) (same).

8

23.    As the Supreme Court in *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 478

(1998) holds, *res judicata* or claim preclusion:

> by *reason of a prior federal judgment* is a defensive plea that provides no b*asis for*
> *removal* under § 1441(b).  Such a defense is properly made in the state proceedings, and
> the state courts' disposition of it is subject to this Court's ultimate review.

24.    Accordingly, Defendants have improperly removed this case based on their *res*

*judicata* defense.  This case should therefore be remanded to the state court-the Circuit Court of

DuPage County- where that court can resolve the *res judicata* defense as Defendants originally

requested it to do.

**III.    EVEN IF REMOVAL WERE TIMELY AND *RES JUDICATA* PROVIDED A BASIS FOR**
**REMOVAL, THERE IS NO FEDERAL SUBJECT MATTER JURISDICTION CONFERRED OVER THE**
**STATE COURT PROCEEDINGS BY THE ECKHAUS FINAL APPROVAL ORDER.**

25.    Even if Defendants had timely removed this case and *res judicata* provided a

basis for removal, there would be no federal subject matter jurisdiction over the declaratory

judgment proceedings filed in the state court action regarding the subject written independent

contractor agreements.  The *Eckhaus* Court expressly abstained from asserting jurisdiction to

hear the fee issues raised by the independent contractor agreements and left that "fight" for the

Illinois state court to determine.  As such, there is no federal subject matter jurisdiction

conferred by an *Eckhaus* final approval order where the *Eckhaus* Court declined to resolve the

fee allocation dispute being litigated in the state court action.

26.    That order has no claim preclusion effect nor does it confer federal jurisdiction to

hear a dispute the *Eckhaus* Court declined to hear or resolve.  "Under a generally accepted

exception to the *res judicata* doctrine, a litigant's claims are not precluded if the court in an

earlier action expressly reserves the litigant's right to bring those claims in a later action."

*Central States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d

624, 629 (7th Cir. 2002); accord: *People v. Carroccia*, 352 IllApp3d 1114, 1124 (2nd Dist. 2004)

("*res judicata* does not bar a subsequent action where the court in the earlier action expressly

reserved the litigant's right to assert its claim at a later time. ... [E]ven though the trial court

entered its order with prejudice, it appears from the judge's comments that he may have intended

to allow defendant a chance to refile or relitigate his petition.  Under these circumstances, *res*

*judicata* would not apply even though the trial court's judgment was on the merits and the

dismissal was therefore with prejudice"); *Cabrera v. First Nat. Bank of Wheaton*, 324 Ill.App.3d

85, 92 (2nd Dist. 2001), citing *D & K Properties Crystal Lake v. Mutual Life Insurance Co.,* 112

F.3d 257, 259 (7th Cir. 1997) ("one exception is that *res judicata* will not bar a subsequent action

where the court in the earlier action expressly reserved the litigant's right to assert its claim at a

later time.")

27.      As the 7th Circuit held in *Shapo v. Engle*, 463 F.3d 641, 644 -645 (7th Cir. 2006):

The purpose of the ancillary jurisdiction of the federal courts ... is to enable a federal
court to render a judgment that resolves the entire case before it and to effectuate its
judgment once it has been rendered. (citation omitted); *Kokkonen v. Guardian Life Ins.*
*Co. of America, supra,* 511 U.S. at 379-80 (citations omitted)  It is not to enable a federal
court to encroach on the jurisdiction reserved to the states merely because the parties
would prefer to have a federal court resolve their future disputes ...

28.      Defendants misstate that the *Eckaus* final approval order awards them $149,000

and omit to disclose that the *Eckhaus* Court abstained from taking jurisdiction over the matters

covered in the already pending state court action and did not rule on the disputed fee issues.

Based on these misstatements and omissions of the record in *Eckhaus*, Defendants claim that this

Court has federal subject matter jurisdiction to resolve the state court action under the decision in

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379 (1994).  However, that case, under the

factual circumstances presented here, requires rejecting Witters' claim of federal jurisdiction.

29.    In *Kokkonen*, the Supreme Court held that the district court erred in finding federal subject matter jurisdiction. The Supreme Court found the doctrine of ancillary jurisdiction not applicable because the facts regarding the alleged breach of the settlement agreement were separate from the facts to be determined in the underlying suit. 511 U.S. at 379. It held there was no federal subject matter jurisdiction because the requested relief was not needed "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.*

30.    As a review of the final judgment order and transcript of proceedings in *Eckhaus*, demonstrates the *Eckhaus* Court did not determine whether Defendants were owed any fees in *Eckhaus* pursuant to the parties' independent contractor agreements as raised in the Complaint in this case. The *Eckhaus* Court declined to decide or hear that issue, and simply ordered that Lubin, DiTommaso and Witter's names appear on the fee award check so that the parties could "fight" the fee allocation issue in the state court action. Thus, there is no final judgment allocating any fees to Defendants. Absent such an order, this Court lacks jurisdiction to compel payment of any money to Defendants from the Eckhaus fee award check through post-judgment enforcement rules, or to make any decision on the allocation of the Eckhaus fee award. The question of whether Defendants are entitled to any money is properly pending in the state court action.

31.    The relief requested by Defendants in this case-- allocation of the disputed fees-- was not covered by *the Eckhaus* June 24, 2008 final approval Order. Here, federal jurisdiction is not required  to vindicate or effectuate the *Eckhaus* final approval Order. *Kokkonen*, 511 U.S. at 379. Therefore, that final approval order cannot form a basis for federal subject matter jurisdiction or removal under any authority, even if *res judicata* were a proper basis for removal.

## III.  CONCLUSION

32.    In sum, because Defendants' notice of removal was untimely and improvident, this case must be remanded.  In addition, as the notice of removal is baseless, and its filing improperly delayed and interfered with the state court proceedings, an award of fees and costs against Defendants is appropriate under 28 U.S.C. § 1447(c).

WHEREFORE, Plaintiff DiTommaso-Lubin PC respectfully requests that this Court grant its Motion to Remand, and award fees and costs incurred in bringing this motion pursuant to 28 U.S.C. § 1447(c).

DITOMMASO-LUBIN PC

/s/ Joseph M. Laraia
One of its Attorneys

Joseph M. Laraia
LARAIA & HUBBARD PC
1761 S. Naperville Road, Suite 203
Wheaton, Illinois 60187
(630) 690-6800

# EXHIBIT 1

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
DU PAGE COUNTY, ILLINOIS

DiTOMMASO-LUBIN, P.C.          )
                              )
            Plaintiff,        )
                              )
      vs.                     )
                              )
LAW OFFICE OF                 )
BRIAN C. WITTER, P.C. AND     )
BRIAN C. WITTER individually  )
                              )
            Defendant.        )

*Chris Kachiroubas*
****Electronically Filed****
Transaction Id: 1223059
2008CH2378
06/20/2008
KM FRANCO
status 10/17/08 2007 9:05
************************

### COMPLAINT FOR DECLARATORY
### JUDGMENT AND INJUNCTIVE RELIEF

NOW COMES the Plaintiff, DiTOMMASO-LUBIN, P.C. ("DiTOMMASO") by its attorneys, LARAIA AND HUBBARD, P.C., and for its Complaint for Declaratory Judgment and Injunctive Relief, pursuant to 735 ILCS §§ 5/2-701 and 5/11-101, et seq. of the Illinois Code of Civil Procedure, against Defendants, LAW OFFICE OF BRIAN C. WITTER, P.C. AND BRIAN C. WITTER individually, (hereinafter collectively referred to as "WITTER") and alleges as follows:

### INTRODUCTION

1.    This is an action seeking a declaratory judgment and injunctive relief with respect to numerous purported Notices of Attorney's Lien served by Witter upon defendants in lawsuits brought on behalf of certain of DiTommaso's hourly and contingency fee clients following Witter's termination and disengagement from DiTommaso for cause. Witter never had any agreement with any of DiTommaso's client's against whom Witter purports to assert attorney's liens for the payment of attorney's fees. Witter's sole agreement for compensation was with

DiTommaso, which DiTommaso has honored. Notwithstanding having no right to turn to DiTommaso's clients for payment of attorney's fees, or to file fee petitions with courts in class action cases, having already been compensated for his work by DiTommaso according to two independent contractor agreements, and having been discharged from DiTommaso for cause after causing it harm due to his poor performance and inefficiency, Witter has engaged in an wrongful acts, and in derogation of client rights of asserting fraudulent and bogus liens against the recoveries of DiTommaso's clients and from class-action fee awards.

## PARTIES

2.    DiTommaso is a law firm with its principle place of business at 17W 220 22nd Street, Oak Brook Terrace, Illinois.

3.    Law Office of Brian C. Witter is an Illinois professional corporation ostensibly engaged in the practice of law with its principle place of business at 111 West Jackson Boulevard, Chicago, Illinois. Law Office of Brian C. Witter does business in both Cook and Du Page Counties, Illinois.

4.    Defendant, Brian C. Witter is an individual attorney who resides at 1449 N. North Park Chicago Illinois, 60610, and who, on information and belief, is the sole officer and shareholder, and principle attorney of the Law Office of Brian C. Witter.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this action pursuant to 735 ILCS § 5/2-701, and there exists a justiciable controversy capable of resolution by this Court.

6.    Venue is proper in Du Page County because the transaction out of which this cause    of    action    arose    occurred    in    Du    Page    County.

## DECLARATORY JUDGMENT

7.    DiTommaso and Defendant Brian C. Witter entered into an Agreement for Professional Services (the "Agreement") on or about December 19, 2005, a copy of which is attached as Exhibit "A".

8.    The Agreement provides that Brian C. Witter was engaged by DiTommaso as an independent contractor to provide legal services to DiTommaso for a specified period of time.

9.    The Agreement further provides that Brian C. Witter, would be compensated at the rate of $1,000.00 a week for work he performed for DiTommaso.

10.    Pursuant to the Agreement, Witter worked on various hourly paying, and contingency fee matters for DiTommaso, and received his guaranteed weekly compensation in return for working on all these cases.

11.    In or about the Spring of 2007, the parties orally modified the Agreement to increase the amount of Witter's set non-discretionary compensation for working on all hourly paying and contingency cases of DiTommaso on which Witter, as an independent contractor, chose to work.

12.    In addition to his set agreed upon compensation for services rendered to DiTommaso between December 2005 and April 2006, DiTommaso paid Witter a discretionary bonus in April 2007 for that same work.

13.    Witter was fully paid for the services he rendered to DiTommaso on all contingency and hourly paying cases for the period December 2005 until February 1, 2008 under the terms of the parties' Agreement.

3

14.    In early 2008, Witter requested payment of a discretionary bonus stating that he needed the money to help rectify serious new financial problems he was facing, and long standing past financial problems. He said he needed more money to pay his 2007 income tax liability for which he failed to set aside sufficient funds, and to pay other obligations including his student loan and prior IRS tax lien obligations totaling on information and belief well in excess of $300,000. DiTommaso declined to provide the requested discretionary bonus.

15.    Also in early 2008, DiTommaso informed Witter that he had failed to address and rectify numerous performance and judgment issues which had repeatedly come up, and which DiTommaso and certain co-counsel in contingency cases had asked him to correct and which he had failed to correct. DiTommaso stated to Witter that due to his poor performance and lack of efficiency and profitability, DiTommaso was no longer willing to provide Witter guaranteed weekly compensation as an independent contractor working on hourly paying and contingency cases. DiTommaso stated that if Witter wished to continue working as an independent contractor the parties would need to agree upon a new independent contractor arrangement which would encourage Witter to work in a more efficient and profitable manner, and that Witter would also have to rectify the many performance and judgment issues.

16.    The Agreement was superseded by a subsequent Independent Contractor Agreement For Professional Services ('Independent Contractor Agreement') which is dated February 1, 2008. A copy of the Independent Contractor Agreement is attached as Exhibit "B"

17.    The Independent Contractor Agreement sets forth a specific compensation arrangement for work performed by Brian C. Witter, P.C. for DiTommaso that does not include any set base compensation.

4

18. The Independent Contractor Agreement refers to Brian C. Witter, P.C. as an independent contractor.

19. The Independent Contractor Agreement sets forth the term of the Independent Contractor Agreement between DiTommaso and Brian C. Witter, P.C., as beginning February 1, 2008 and ending July 31, 2008.

20. Pursuant to the Independent Contractor Agreement, Brian C. Witter, P.C. was to provide legal services to DiTommaso on a variety of matters, as agreed to between the parties.

21. As to past services rendered by Witter to DiTommaso before February 1, 2008, the Independent Contractor Agreement states in the recitals: "The Firm at its sole discretion, in April 2007, paid Witter a discretionary bonus and has paid, from time to time additional monies to Witter on time Witter has previously expended on a variety of matters for the Firm between December 19, 2005 and January 31, 2008."

22. The Independent Contractor Agreement at paragraph 3(b)(x) states that "on contingency cases where Witter has performed work prior to the date of this Agreement, Witter shall be paid at the sole discretion of the firm." This provision mirrored the parties' preexisting agreement that for work Witter performed prior to January 31, 2008, in addition to his base compensation, he could also receive bonuses subject to the sole discretion of the Firm.

23. Pursuant to the Independent Contractor Agreement, either party could terminate the Independent Contractor Agreement at any time, for any reason, prior to the expiration of the six month term.

24. Witter's already poor work performance and poor judgment increased at an accelerated pace after the execution of the Independent Contractor Agreement. In addition, DiTommaso learned of a serious past act of malpractice by Witter in a New York class action

Document received on 06/20/2008 14:10:46  Document accepted on 06/20/2008 15:51:46 # 1223059/8343

case, which through significant time, and effort DiTommaso was able to completely rectify in an amendment to the class action settlement.

25.    DiTommaso terminated Brian C. Witter, P.C. pursuant to the Independent Contractor Agreement on April 7, 2008.  See termination notice which is attached as Exhibit "C."

26.    Although no cause was required for termination, DiTommaso terminated the Independent Contractor Agreement for cause.  DiTommaso told Witter before his termination of many of the reasons for the termination.

27.    After Brian C. Witter, P.C's termination, Brian C. Witter, P.C. sent Notices of Attorney's Lien ("Lien Notices") to various parties purportedly pursuant to 770 ILCS § 5/1, and for one New York class-action case purportedly pursuant to 770 ILCS § 5/1 and New York Judiciary Law § 475.

28.    The Lien Notices purport to assert attorney's liens against the recoveries of potential funds from various contingency, unpaid hourly, and class action lawsuits filed by DiTommaso on behalf of its clients.  See Lien Notices attached as Exhibit "D."

29.    Witter's compensation for his work on these contingency and unpaid hourly cases is governed by the terms of the Independent Contractor Agreement which only allows him to receive an entirely discretionary bonus payment on the contingency cases, in addition to the weekly compensation and bonus he already received for that work.

30.    Witter is not entitled to seek payment from DiTommaso's clients, or the courts at his reasonable hourly rate because he had no agreement for payment of fees with any of DiTommaso's clients, and he was already compensated for his work through his set agreed upon contractual compensation, and a April 2007 discretionary bonus payment, and had agreed in

6

writing that any future compensation for such work was at the sole discretion of DiTommaso.

31.     However, in Witter's Lien Notices, Witter claims the right to be paid directly from the proceeds of DiTommaso's clients or through fee awards from class action settlements at his hourly market rate, as opposed to the under the terms of his Independent Contractor Agreement.

32.     Although the various Lien Notices are dated April 15, 2008, their Certificates of Service are all dated June 9, 2008.

33.     Neither Brian C. Witter, P.C. nor Brian C. Witter entered into any agreement for payment of attorney's fees directly with any of DiTommaso's clients to whom Witter sent Lien Notices.

34.     Witter has also filed a fee petition in one class action case pending in New York seeking fees for himself in direct violation of the Independent Contract Agreement's requirement that he look solely to DiTommaso for any compensation in that case. DiTommaso has a right to award any additional compensation to Witter at its sole discretion because was already paid for this work.

35.     All of the clients against whom Witter asserts purported attorney's liens are clients of DiTommaso, not Witter.

36.     Witter misrepresents under penalty of perjury in each of the Lien Notices that DiTommaso's client retained him and that he had a reasonable expectation of being paid his hourly rate, as opposed to pursuant to the compensation terms he agreed upon in his independent contractor agreements with DiTommaso.

37.     Contrary to Witter's misstatements, Witter worked on DiTommaso client matters solely as an independent contractor and neither Brian C. Witter nor the Law Office of Brian C.

7

Witter, PC was ever directly engaged by any of DiTommaso's clients against whom Witter asserted these attorney's liens.

38.    Witter was not hired by any of the clients referenced in its Lien Notices and agreed to be compensated by DiTommaso and not DiTommaso's clients; therefore, Witter has no lien rights and its purported Lien Notices are invalid.

39.    Even assuming that Witter did have an agreement with DiTommaso's clients regarding payment of attorney's fees, which he did not, Witter's Lien Notices are defective because Witter did not serve its Lien Notices during the existence of any attorney/client relationship, as Witter was terminated for cause on April 7, 2008 and its Lien Notices were served via certified mail on June 9, 2008.

40.    DiTommaso has performed all of its obligations to Witter under the terms of the parties' independent contractor agreements.

41.    Witter has materially breached the parties' contract by seeking compensation in violation of the terms of the Independent Contractor Agreement from DiTommaso's clients and not from DiTommaso itself, to the extent Witter has any such claim.

42.    Witter's breach of contract is interfering with DiTommaso's attorney/client and co-counsel relationships, harming its reputation, and causing DiTommaso ongoing actual and irreparable injury and damages for which there is no adequate remedy at law. This ongoing irreparable injury can only be cured through declaratory and injunctive relief. Specifically, without adjudication in favor of DiTommaso and its clients, Witter's Lien Notices would require block defendants in cases in which DiTommaso represents its clients from paying DiTommaso, DiTommaso's clients, and DiTommaso's co-counsel in certain matters. These notices interfere

8

with timely payment of monies to DiTommaso clients and to co-counsel and constitute a wrongful and willful interference by Witter with DiTommaso business and client relations.

43.    An actual controversy exists between the Plaintiff and Defendants as to: (1) Defendants alleged right to assert Attorney's Liens against DiTommaso's clients' settlement funds or Judgments; (2) Defendants' right to claim compensation contrary to and in materially breach of the express terms of the parties' written contract.

WHEREFORE, the Plaintiff, DiTOMMASO-LUBIN, P.C., prays that this Court declare that: (1) the Defendants have no statutory Attorney Lien rights; that Defendants did not enter into contracts with any of DiTommaso's clients referenced in Defendants' Lien Notices; and that Defendants' Lien Notices are invalid because Defendants were terminated before the date of service of Defendants' Lien Notices, and the Notices are contrary to the terms of Defendants' contract with DiTommaso; (2) under the terms the parties' independent contractor agreement neither DiTommaso nor its clients owe Defendants the monies sought by Defendants' Lien Notices and Witter is not entitled to petition for fees in any class action in violation of the terms of the parties' written agreement; (3) Defendants' are in material breach of contract for seeking compensation contrary to the terms of the parties' contract.

DiTOMMASO-LUBIN, P.C. further prays that this Court temporarily, preliminarily and permanently enjoin Defendants from: (1) seeking to enforce the invalid Attorney Liens, (2) interfering with, and irreparably damaging DiTommaso' client and co-counsel relationships through the fraudulent assertion of the invalid Attorney Liens; (3) seeking compensation contrary

9

to the terms of the parties' contract, whether by asserting purported Attorney's Liens or otherwise.

LARAIA & HUBBARD, P.C.

By _____

## CERTIFICATE OF ATTORNEY

I certify as attorney of record in this cause, that I have read the above pleading and that to the best of my knowledge, information and belief, formed after reasonable inquiry of my client, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the statements contained herein concerning the lack of knowledge, if any, are true and are not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

As Attorney and Not Personally

LARAIA & HUBBARD, P.C.
Attorney No. 007
1761 S. Naperville Road, Suite 203
Wheaton, Illinois  60187
(630) 690-6800

10

# EXHIBIT 2

STATE OF ILLINOIS        UNITED STATES OF AMERICA        COUNTY OF DUPAGE
IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT

DITOMASO-LUBIN, P.C.                    )
                                        )
            PLAINTIFFS                  )
                                        )
    vs.                                 )    CASE 2008 CH 2378
                                        )
LAW OFFICE OF BRIAN C. WITTER, P.C.     )
AND BRIAN C. WITTER, INDIVIDUALLY       )
                                        )
            DEFENDANTS                  )

*Chris Kachiroubas*
****Electronically Filed****
Transaction Id: 1239727
2008CH002378
07/01/2008.
KIM FRANCO
****************

### AFFIDAVIT

I, KEVIN M. READ, being first duly sworn, depose and state that I served copies of a Summons
and Complaint for Declaratory Judgment and Injunctive Relief on Brian Witter, personally, at
212 South Halsted Street, Chicago, Illinois on Friday, June 27, 2008 at 3:08 PM.



SPECIAL PROCESS SERVER
EDWARD R. KIRBY & ASSOCIATES, INC.
783 NORTH YORK ROAD, ELMHURST, IL 60126

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 30TH DAY OF JUNE 2008

NOTARY PUBLIC

OFFICIAL SEAL
ANGELA M DURAVA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:09/02/12

# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAMELA ECKHAUS, individually and on behalf of all others similarly situated,  Plaintiff,<br><br> - v s -<br><br>NATURE's PILLOWS, INC., BILL McALLISTER BRAD SPECTER and STEVE SILBIGER,  Defendants. | 06 CV 00985<br><br>Judge Block<br><br>Mag. Matsumoto |

## AMENDED FINAL APPROVAL ORDER

### IT IS HEREBY ORDERED:

1.      On March 14, 2008 this Court preliminarily approved the Class Settlement

Agreement ("Agreement") reached between Pamela Eckhaus ("Plaintiff") and the class of

persons as defined in the Agreement ("Class"); and Defendants Nature's Pillows, Inc.,

Bill McAllister, Brad Specter, and Steve Silbiger ("Defendants").

2.      The notice given to the members of the class—publication in the USA Today

Weekend Edition on April 11 and 18, 2008—was reasonably calculated under the

circumstances to apprise them of the pendency of this action, all material elements of the

proposed settlement, their opportunity to exclude themselves from, to object to, or to

comment on the settlement and to appear at the settlement hearing. The notice was

reasonable and the best notice practicable under the circumstances; was due, adequate

and sufficient notice to all class members; and complied fully with the laws of the United

States and the Federal Rules of Civil Procedure, due process and any other applicable

rules of court. A full opportunity has been afforded to the members of the class to

participate in the hearing, and all members of the class and other persons wishing to be

heard have been heard. Accordingly, the Court determines that all members of the class who have not excluded themselves from this litigation, are bound by this Judgment, Final Order and Decree.

3.      On June 23, 2008, the Court held a fairness hearing to which Class members, including any objectors, were invited. The Court, being fully advised in the premises, hereby orders:

4.      The Court finds that the Class is appropriate under FED. R. CIV. P. 23.

5.      The Court finds that the provisions for notice to the class satisfy the requirements of FED. R. CIV. P. 23 and due process.

6.      The Court finds that Defendant has complied with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. §1715(b).

7.      This Court hereby grants final approval to the Settlement Agreement and Amendment thereto and finds that it is fair, reasonable and adequate, and in the best interests of the class. The Settlement Agreement and A     dment thereto is the product of arm's–length, serious, informed and non-collusive negotiations between Class Counsel and Defendants.

8.      The Court finds that the Settlement Agreement and amen ment thereto is fair and reasonable, and hereby approves the **CLASS SETTLEMENT AGREEMENT** and the **FIRST AMENDMENT TO SETTLEMENT AGREEMENT AND RELEASE** submitted by the parties. The Court approves payment by Defendants of $2,000 to Plaintiff Pamela Eckhaus as an incentive award for her services as Class representative. The Court further approves payment by Defendants of $298,000 to Class Counsel for attorney's fees and costs. The Court finds the attorneys fees and costs reasonable in light

2

of the attorney time and out-of-pocket costs incurred by Class Counsel. Defendants shall

transmit to Brian C. Witter, PC and DiTommaso & Lubin within fourteen (14) days of the

Effective Date as defined in the Settlement Agreement: (1) a check in the amount of

$105,000 made out to Brian C. Witter, PC; (2) a check in the amount of $193,000 made out

to DiTommaso & Lubin, which DiTommaso & Lubin will distribute among Class Counsel;

and (3) a check in the amount of $2000 made out to Pamela Eckhaus, which DiTommaso

& Lubin will transmit to Mrs. Eckhaus.

9.      **Release of UrineGone™ Claims**: Plaintiff and each member of the Settlement

Class, their spouses and former spouses, as well as the present, former, and future

respective heirs, executors, administrators, representatives, agents, attorneys, partners,

successors, predecessors-in-interest, and assigns of Plaintiff and each Settlement Class

member, pursuant to the Settlement Agreement and Amendment thereto approved by this

final order, have discharged Defendants, as well as all of their present, former, and future

direct and indirect parent companies, affiliates, subsidiaries, divisions, agents,

franchisees, successors, predecessors-in-interest; and all of the aforementioneds'

respective present, former, and future officers, directors, employees, shareholders,

attorneys, agents, vendors, couriers, independent contractors, and assigns, from any and

all rights, duties, obligations, claims, actions, causes of action, or liabilities, whether

arising under local, state, or federal law, whether by statute, contract, common law, or

equity, whether known or unknown, suspected or unsuspected, asserted or unasserted,

foreseen or unforeseen, actual or contingent, liquidated or unliquidated that, as of the date

that this Order is entered: (1) arise out of or are related in any way to any or all of the

acts, omissions, facts, matters, transactions, or occurrences that were directly or indirectly

alleged, asserted, described, set forth, or referred to in the case captioned *Eckhaus v.*

*Nature's Pillows, et al.*, Case No. 06-CV-985, currently pending in the United States
District Court for the Eastern District Court of New York before the Honorable Fredrick
Block ("the UrineGone™ Litigation"); (2) are, were, or could have arisen out of or been
related in any way to the UrineGone™ Litigation.

10. Nothing contained in the release agreed to by the part es and set forth in
Paragraph 9 herein shall be construed to prevent or impede Settlement Class members,
including the Class Representative, from (1) individually seeking product refunds for
Urine Gone kits purchased from defendant Nature's Pillows, Inc.; or (2) individually
bringing tort claims for property damage or personal injury arising from UrineGone™
products.

11. Plaintiff and each member of the Settling Class is her      fully and finally
enjoined from prosecuting all claims released by the release agreed to in the Settlement
Agreement and Amendment thereto, as set forth in Paragraph 9 herein.

12. As provided for in the Settlement Agreement, Defendants have agreed to change
the original television advertising spots for Urine Gone™, whether broadcast via
television, radio, internet, print, or other means.

13. The claims of Plaintiff and the class set forth in the   econd Amended Complaint
are dismissed with prejudice pursuant to the parties' settlement.

DATE:_____        Entered:_____
                                      The Honorable Frederic Block
                                      United States District Judge

# EXHIBIT 4

# Law Offices of Brian C. Witter, *PC*

Brian C. Witter, *PC*
111 West Jackson Blvd.
Suite 1100
Chicago, IL, 60604

(312) 961-4942 (T)
(312) 386-9759 (F)
*briancwitterpc@gmail.com*

June 18, 2008

**VIA OVERNIGHT MAIL**
The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Eckhaus v. Nature's Pillows, Inc. et al, 06-CV-985 (FB/KM)*
    *Letter Motion re: Final Approval and Entry of Amended Final Approval Order*

Dear Judge Block:

I am submitting this brief letter and *Amended Final Approval Order* in connection with the motion (Docket # 74) of plaintiff for final approval of the Settlement of the above-referenced class action which your Honor approved preliminarily on March 14, 2008. In addition to the attached proposed *Amended Final Approval Order,* and in support thereof, I have submitted *The Affirmation of Brian C. Witter in Support of Motion for Final Approval and Entry of Amended Final Approval Order*, together with several supporting exhibits. The final approval hearing is currently scheduled before your Honor on June 23, 2008 at 10:00 a.m.

Sincerely yours,

___/s/Brian C. Witter___

cc: Richard P. McElroy, Esq. (via email)
    Matthew H. Adler, Esq.   (via email)

    Attachments

    All Counsel of Record (via ECF)

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PAMELA ECKHAUS, individually and on behalf of all others similarly situated,<br>　　　　Plaintiff, | )<br>)<br>)<br>)<br>) | 06 CV 00985<br><br>Judge Block |
| - v s - | )<br>) | Mag. Matsumoto |
| NATURE's PILLOWS, INC., BILL McALLISTER BRAD SPECTER and STEVE SILBIGER,<br>　　　　Defendants. | )<br>)<br>)<br>)<br>) | |

### AMENDED FINAL APPROVAL ORDER

### IT IS HEREBY ORDERED:

1.　　On March 14, 2008 this Court preliminarily approved the Class Settlement Agreement ("Agreement") reached between Pamela Eckhaus ("Plaintiff") and the class of persons as defined in the Agreement ("Class"); and Defendants Nature's Pillows, Inc., Bill McAllister, Brad Specter, and Steve Silbiger ("Defendants").

2.　　The notice given to the members of the class—publication in the USA Today Weekend Edition on April 11 and 18, 2008—was reasonably calculated under the circumstances to apprise them of the pendency of this action, all material elements of the proposed settlement, their opportunity to exclude themselves from, to object to, or to comment on the settlement and to appear at the settlement hearing. The notice was reasonable and the best notice practicable under the circumstances; was due, adequate and sufficient notice to all class members; and complied fully with the laws of the United States and the Federal Rules of Civil Procedure, due process and any other applicable rules of court. A full opportunity has been afforded to the members of the class to participate in the hearing, and all members of the class and other persons wishing to be

heard have been heard. Accordingly, the Court determines that all members of the class who have not excluded themselves from this litigation, are bound by this Judgment, Final Order and Decree.

3.     On June 23, 2008, the Court held a fairness hearing to which Class members, including any objectors, were invited. The Court, being fully advised in the premises, hereby orders:

4.     The Court finds that the Class is appropriate under FED. R. CIV. P. 23.

5.     The Court finds that the provisions for notice to the class satisfy the requirements of FED. R. CIV. P. 23 and due process.

6.     The Court finds that Defendant has complied with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. §1715(b).

7.     This Court hereby grants final approval to the Settlement Agreement and Amendment thereto and finds that it is fair, reasonable and adequate, and in the best interests of the class. The Settlement Agreement and A     dment thereto is the product of arm's–length, serious, informed and non-collusive negotiations between Class Counsel and Defendants.

8.     The Court finds that the Settlement Agreement and amen ment thereto is fair and reasonable, and hereby approves the **CLASS SETTLEMENT AGREEMENT** and the **FIRST AMENDMENT TO SETTLEMENT AGREEMENT AND RELEASE** submitted by the parties. The Court approves payment by Defendants of $2,000 to Plaintiff Pamela Eckhaus as an incentive award for her services as Class representative. The Court further approves payment by Defendants of $298,000 to Class Counsel for attorney's fees and costs. The Court finds the attorneys fees and costs reasonable in light

2

of the attorney time and out-of-pocket costs incurred by Class Counsel. Defendants shall

transmit to Brian C. Witter, PC and DiTommaso & Lubin within fourteen (14) days of the

Effective Date as defined in the Settlement Agreement: (1) a check in the amount of

$105,000 made out to Brian C. Witter, PC; (2) a check in the amount of $193,000 made out

to DiTommaso & Lubin, which DiTommaso & Lubin will distribute among Class Counsel;

and (3) a check in the amount of $2000 made out to Pamela Eckhaus, which DiTommaso

& Lubin will transmit to Mrs. Eckhaus.

9.    **Release of UrineGone™ Claims**: Plaintiff and each member of the Settlement

Class, their spouses and former spouses, as well as the present, former, and future

respective heirs, executors, administrators, representatives, agents, attorneys, partners,

successors, predecessors-in-interest, and assigns of Plaintiff and each Settlement Class

member, pursuant to the Settlement Agreement and Amendment thereto approved by this

final order, have discharged Defendants, as well as all of their present, former, and future

direct and indirect parent companies, affiliates, subsidiaries, divisions, agents,

franchisees, successors, predecessors-in-interest; and all of the aforementioneds'

respective present, former, and future officers, directors, employees, shareholders,

attorneys, agents, vendors, couriers, independent contractors, and assigns, from any and

all rights, duties, obligations, claims, actions, causes of action, or liabilities, whether

arising under local, state, or federal law, whether by statute, contract, common law, or

equity, whether known or unknown, suspected or unsuspected, asserted or unasserted,

foreseen or unforeseen, actual or contingent, liquidated or unliquidated that, as of the date

that this Order is entered: (1) arise out of or are related in any way to any or all of the

acts, omissions, facts, matters, transactions, or occurrences that were directly or indirectly

alleged, asserted, described, set forth, or referred to in the case captioned *Eckhaus v.*

*Nature's Pillows, et al.*, Case No. 06-CV-985, currently pending in the United States

District Court for the Eastern District Court of New York before the Honorable Fredrick

Block ("the UrineGone™ Litigation"); (2) are, were, or could have arisen out of or been

related in any way to the UrineGone™ Litigation.

10. Nothing contained in the release agreed to by the part es and set forth in

Paragraph 9 herein shall be construed to prevent or impede Settlement Class members,

including the Class Representative, from (1) individually seeking product refunds for

Urine Gone kits purchased from defendant Nature's Pillows, Inc.; or (2) individually

bringing tort claims for property damage or personal injury arising from UrineGone™

products.

11. Plaintiff and each member of the Settling Class is her     fully and finally

enjoined from prosecuting all claims released by the release agreed to in the Settlement

Agreement and Amendment thereto, as set forth in Paragraph 9 herein.

12. As provided for in the Settlement Agreement, Defendants have agreed to change

the original television advertising spots for Urine Gone™, whether broadcast via

television, radio, internet, print, or other means.

13. The claims of Plaintiff and the class set forth in the   econd Amended Complaint

are dismissed with prejudice pursuant to the parties' settlement.

DATE:_____        Entered:_____

                                                The Honorable Frederic Block
                                                United States District Judge

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Pamela Eckhaus,<br>individually and on behalf of<br>all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br><br>Nature's Pillows, Inc., Bill McAllister,<br>Brad Specter, and Steve Silbiger,<br><br><br><br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 06-CV-00985

Judge Block

Magistrate Matsumoto

Affirmation of Brian C. Witter
in Support of Motion for
Final Approval and Entry of
Amended Final Approval Order

## AFFIDAVIT OF BRIAN C. WITTER

I, Brian C. Witter, being duly sworn under oath, and under penalties of perjury as provided by 28 U.S.C ¶ 1746, hereby depose and state that if called to testify in this matter I would competently testify to the following based on personal knowledge:

1.      I am one the attorneys who is co-lead counsel for the Plaintiff and the Class in the above-captioned case, and was involved in all aspects of the matter, beginning with the investigation of the claims, the drafting of the complaint, the discovery plan and general strategy, motion practice, depositions, the retention of consulting and potential testifying experts, as well as settlement. I have detailed knowledge of the time, and assignments of each of plaintiff's counsel, and have examined their billing records and cost sheets in connection with my preparation of this Affidavit and the Motion for Final Approval and related documents.

2.      I am the owner of the Law Offices of Brian C. Witter, PC, where I concentrate my practice on general civil litigation, including appeals, with an emphasis on business litigation, complex commercial cases, and class actions. I handle business disputes of all types, whether involving individuals, entrepreneurs, small businesses, closely held concerns, municipalities, or large corporations, across a broad spectrum of substantive law, including contract, employment, intellectual property, real estate, commodities and futures, trusts and estates, consumer law, and civil rights, among others. I have extensive trial experience in state and federal courts, and in other fora, including arbitrations and administrative proceedings, before the Illinois Commerce Commission, Illinois Human Rights Commission, and the Attorney Registration and Disciplinary Commission, and other bodies, and have tried many cases to verdict before both juries and judges. My practice also includes sustained sub-specialties in commodities and futures law, trusts and estates litigation, consumer law, intellectual property, and family law, and I have also represented dozens of clients on a *pro bono* basis, including in child custody and guardianship matters, discrimination cases, and lawsuits and appeals involving issues of constitutional law. In addition to trial practice and

commercial and business litigation and class actions, I have significant appellate experience, both in civil and criminal matters, and have litigated and appealed matters involving attorneys' fees issues.

3.    I was educated at Dartmouth College, graduating in 198        e I majored in English Literature and Music, and received honors for academic and artistic achievement, after which I was awarded fellowships for post-graduate study in music composition and literature, al      ing me to pursue a variety of studies over several years in Morocco, Sweden, and the United States. I attended the Loyola University of Chicago School of Law, graduating in 1988, where I studied with the philosopher and constitutional law scholar George Anastaplo, and received American Jurisprudence Awards in Jurisprudence, Constitutional History, and Constitutional law. I have also taught and given lectures to undergraduates on writing, argumentation, and various musical topics. I am currently developing a course for law students on Argumentation, where I will teach the texts and writings of authors ranging from Plato, Milton, and Hume, to Hamilton, Madison, and Lincoln. I will also be doing University and Private School teaching in the Fall of 2008 in both English and Political Philosophy.

4.    I am admitted to the Illinois Bar, 1988, the United States District Court, Northern District of Illinois, 1988, the United States Court of Appeals for the Seventh Circuit, 1990; United States District Court, Northern District of Illinois,   rial Bar, 1991. I am a member of the Chicago Bar Association, the DuPage County Bar Association, the Illinois State Bar Association, the Chicago Board of Trade, the National Futures Association, and the Dartmouth Club of Chicago.

5.    I have a dual career background in law and in the financial industry. As a lawyer, I have significant complex commercial litigation and class action experience in state and federal courts, in matters involving a broad range of industries, across the full spectrum of substantive law, including lawsuits involving contracts, breach of fiduciary duty, securities, commodities and futures, environmental, employment, consumer fraud, among others. I also have significant transactional and financial industry experience and worked for seven years as a legal advisor (Partner and Counsel), trader, and consultant in the commodities futures business. In that position, I gained experience in regulatory, compliance, and intellectual property matters related to the f        l industry and frequently had to draft and review general business contracts, employment, licensing, and other agreements. I have run my own businesses, both as a commodity trader/adviser and as a lawyer over the last ten years.

6.    Not only did I bill many more hours to this case than any single lawyer on the plaintiffs' side, and perform the preponderance of the substantive litigation work, the amount of fees granted to Brian C. Witter, PC set out in the Amended Final Approval Order—$105,000 or 32 percent on a pro rata basis of the final award of attorneys' fees—is actually lower than the true amount of my relative time and represents a contribution to the costs of this action in the amount of approximately $8,000. My hourly rate for paying clients ranges from $250-$400 per hour. In this matter, the grant of attorneys' fees in the amount of $105,000 represents approximately a rate of $176.00 per hour. Annexed hereto is my Professional Resume as well as the Notices of Attorneys' Liens I served and perfected after being shut out of the case by my fellow lead class counsel beginning in April, 2008.

7.    Having surveyed the rates of other comparable attorneys in the Chicago, Washington DC and New York markets by discussing the matter with various attorneys, and reviewing court cases, news articles, and surveys on the subject, it is my opinion that the above rates are consistent with what lawyers of similar experience and expertise charge.

2

8.     Pursuant to 28 U.S.C. § 1746, I, Brian C. Witter do hereby certify under penalties of perjury that the above statements are true and correct to the extent that they reflect my personal knowledge and otherwise are based upon my information and belief.

**Dated: 18 June 2008**

_____/s/  **Brian C. Witter**_____

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Pamela Eckhaus, | ) | |
| individually and on behalf of | ) | |
| all others similarly situated, | ) | |
| | ) | Case No. 06-CV-00985 |
| Plaintiff, | ) | |
| | ) | Judge Block |
| vs. | ) | |
| | ) | Magistrate Matsumoto |
| Nature's Pillows, Inc., Bill McAllister, | ) | |
| Brad Specter, and Steve Silbiger, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF ATTORNEY'S LIEN

### VIA CERTIFIED MAIL

**NATURE'S PILLOWS, INC.,**
**2607 INTERPLEX DRIVE,**
**TREVOSE, PA 19053**

**YOU ARE HEREBY NOTIFIED** that pursuant to New York Judiciary Law § 475 and ILCS 770 § 5/1, as the undersigned attorney for plaintiff Pamela Eckhaus ("Eckhaus") and the class in the above-referenced action, I claim a lien in the amount of $105, 000.00 on the cause of action of Eckhaus and the class for services rendered as their attorney in this cause, which lien shall attach to any verdict, report, determination, decision, judgment, settlement or final order in favor of Eckhaus and the class, and the proceeds thereof in whatever hands they may come. The recovery to which the undersigned's lien attaches may be described as follows: the claim of Brian C. Witter ("Witter") is for reasonable compensation based on actual hours billed to the above action relative to all attorney hours billed to the action by attorneys on behalf of Eckhaus and the class. The lien and claim in the amount of $105,000 represents Witter's pro rata share of the $300,000 in plaintiffs' attorneys' fees preliminary approved by the Honorable Frederic Block on March 15, 2008. The lien and claim in the amount of $105,000 represents 32 percent of all hours billed by plaintiffs' counsel to the action.

**Dated: April 15, 2008**

Brian C. Witter

_____

## DECLARATION OF BRIAN C. WITTER

**Pursuant to 28 U.S.C. § 1746, I hereby declare as follows, under penalties of perjury:**

1.    I am the attorney named above. I have read the attached ***NOTICE OF ATTORNEY'S LIEN*** and am familiar with its contents. At all times relevant to the notice, I was and have been licensed to practice law in the State of Illinois and have admitted to the United States District Court for the Eastern District of New York, for purposes of this action *pro hac vice.* To the best of my knowledge, the contents of the notice are true and correct.

2.    Not only did I bill many more hours to this case than any single lawyer on the plaintiffs' side, and perform the preponderance of the substantive litigation work, the amount of the lien claimed—$105,000 or 32 percent on a pro rata basis of the final award of attorneys' fees—is actually lower than the true amount of my relative time and represents a contribution to the costs of this action in the amount of approximately $8,000.


Brian C. Witter

_____


**Dated: April 15, 2008**


Law Offices of Brian C. Witter,
Brian C. Witter,
111 West Jackson Blvd.
Suite 1100
Chicago, IL 60604
Phone: 312.961.4942
Facsimile: 312.386.9759

2

## CERTIFICATE OF SERVICE

The undersigned attorney, Brian C. Witter, certifies that on Monday June 8, 2008, he served the foregoing *NOTICE OF ATTORNEY'S LIEN* upon the following parties, via Certified Mail:


NATURE'S PILLOWS, INC.,
2607 INTERPLEX DRIVE,
TREVOSE, PA 19053

William McAllister
2607 INTERPLEX DRIVE,
TREVOSE, PA 19053

Bradley Specter
2607 INTERPLEX DRIVE,
TREVOSE, PA 19053

Counsel:     Matthew H. Adler, Esq.
             Pepper Hamilton, LLP
             3000 Two Logan Square
             Eighteenth and Arch Streets
             Philadelphia, PA  19103-2799


Steve Silbiger
H.C.T.V. Inc.
STUMP RD
MONTGOMERYVILLE PA 18936

Counsel:     Richard P. McElroy, Esq.
             McElroy & Associates, LLP
             202-A North Monroe Street
             Media, PA 19063


_____
        Brian C. Witter

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Pamela Eckhaus, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 06-CV-00985 |
| vs. | ) ) ) | Judge Block |
| Nature's Pillows, Inc., Bill McAllister, Brad Specter, and Steve Silbiger, | ) ) ) ) | Magistrate Matsumoto |
| Defendants. | ) | |

## NOTICE OF ATTORNEY'S LIEN

**VIA CERTIFIED MAIL**

**BRADLEY SPECTER
2607 INTERPLEX DRIVE,
TREVOSE, PA 19053**

**YOU ARE HEREBY NOTIFIED** that pursuant to New York Judiciary Law § 475 and ILCS 770 § 5/1, as the undersigned attorney for plaintiff Pamela Eckhaus ("Eckhaus") and the class in the above-referenced action, I claim a lien in the amount of $105, 000.00 on the cause of action of Eckhaus and the class for services rendered as their attorney in this cause, which lien shall attach to any verdict, report, determination, decision, judgment, settlement or final order in favor of Eckhaus and the class, and the proceeds thereof in whatever hands they may come. The recovery to which the undersigned's lien attaches may be described as follows: the claim of Brian C. Witter ("Witter") is for reasonable compensation based on actual hours billed to the above action relative to all attorney hours billed to the action by attorneys on behalf of Eckhaus and the class. The lien and claim in the amount of $105,000 represents Witter's pro rata share of the $300.000 in plaintiffs' attorneys' fees preliminary approved by the Honorable Frederic Block on March 15. 2008. The lien and claim in the amount of $105,000 represents 32 percent of all hours billed by plaintiffs' counsel to the action.

Dated: April 15, 2008

Brian C. Witter

## DECLARATION OF BRIAN C. WITTER

      **Pursuant to 28 U.S.C. § 1746,** I hereby declare as follows, under penalties of perjury:

1.     I am the attorney named above. I have read the attached *NOTICE OF ATTORNEY'S LIEN* and am familiar with its contents. At all times relevant to the notice, I was and have been licensed to practice law in the State of Illinois and have admitted to the United States District Court for the Eastern District of New York, for purposes of this action *pro hac vice*. To the best of my knowledge, the contents of the notice are true and correct.

2.     Not only did I bill many more hours to this case than any single lawyer on the plaintiffs' side, and perform the preponderance of the substantive litigation work, the amount of the lien claimed—$105,000 or 32 percent on a pro rata basis of the final award of attorneys' fees—is actually lower than the true amount of my relative time and represents a contribution to the costs of this action in the amount of approximately $8,000.

Brian C. Witter

**Dated: April 15, 2008**

Law Offices of Brian C. Witter,
Brian C. Witter,
111 West Jackson Blvd.
Suite 1100
Chicago, IL, 60604
Phone: 312.961.4942
Facsimile: 312.386.9759

2

## CERTIFICATE OF SERVICE

The undersigned attorney, Brian C. Witter, certifies that on Monday June 8, 2008, he served the foregoing *NOTICE OF ATTORNEY'S LIEN* upon the following parties, via Certified Mail:


NATURE'S PILLOWS, INC.,
2607 INTERPLEX DRIVE,
TREVOSE, PA 19053

William McAllister
2607 INTERPLEX DRIVE,
TREVOSE, PA 19053

Bradley Specter
2607 INTERPLEX DRIVE,
TREVOSE, PA 19053

    Counsel:     Matthew H. Adler, Esq.
                 Pepper Hamilton, LLP
                 3000 Two Logan Square
                 Eighteenth and Arch Streets
                 Philadelphia, PA  19103-2799


Steve Silbiger
H.C.T.V. Inc.
STUMP RD
MONTGOMERYVILLE PA 18936

    Counsel:     Richard P. McElroy, Esq.
                 McElroy & Associates, LLP
                 202-A North Monroe Street
                 Media, PA 19063

_____
Brian C. Witter

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Pamela Eckhaus, | ) | |
| individually and on behalf of | ) | |
| all others similarly situated, | ) | |
| | ) | Case No. 06-CV-00985 |
| Plaintiff, | ) | |
| | ) | Judge Block |
| vs. | ) | |
| | ) | Magistrate Matsumoto |
| Nature's Pillows, Inc., Bill McAllister, | ) | |
| Brad Specter, and Steve Silbiger, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF ATTORNEY'S LIEN

### VIA CERTIFIED MAIL

**BRADLEY SPECTER**
**2607 INTERPLEX DRIVE,**
**TREVOSE, PA 19053**

**YOU ARE HEREBY NOTIFIED** that pursuant to New York Judiciary Law § 475 and ILCS 770 § 5/1, as the undersigned attorney for plaintiff Pamela Eckhaus ("Eckhaus") and the class in the above-referenced action, I claim a lien in the amount of $105, 000.00 on the cause of action of Eckhaus and the class for services rendered as their attorney in this cause, which lien shall attach to any verdict, report, determination, decision, judgment, settlement or final order in favor of Eckhaus and the class, and the proceeds thereof in whatever hands they may come. The recovery to which the undersigned's lien attaches may be described as follows: the claim of Brian C. Witter ("Witter") is for reasonable compensation based on actual hours billed to the above action relative to all attorney hours billed to the action by attorneys on behalf of Eckhaus and the class. The lien and claim in the amount of $105,000 represents Witter's pro rata share of the $300.000 in plaintiffs' attorneys' fees preliminary approved by the Honorable Frederic Block on March 15, 2008. The lien and claim in the amount of $105,000 represents 32 percent of all hours billed by plaintiffs' counsel to the action.

Dated: April 15, 2008

Brian C. Witter

## DECLARATION OF BRIAN C. WITTER

**Pursuant to 28 U.S.C. § 1746,** I hereby declare as follows, under penalties of perjury:

1.    I am the attorney named above. I have read the attached *NOTICE OF ATTORNEY'S LIEN* and am familiar with its contents. At all times relevant to the notice. I was and have been licensed to practice law in the State of Illinois and have admitted to the United States District Court for the Eastern District of New York, for purposes of this action *pro hac vice*. To the best of my knowledge, the contents of the notice are true and correct.

2.    Not only did I bill many more hours to this case than any single lawyer on the plaintiffs' side, and perform the preponderance of the substantive litigation work, the amount of the lien claimed—$105,000 or 32 percent on a pro rata basis of the final award of attorneys' fees—is actually lower than the true amount of my relative time and represents a contribution to the costs of this action in the amount of approximately $8,000.



Brian C. Witter

**Dated: April 15, 2008**

Law Offices of Brian C. Witter,
Brian C. Witter.
111 West Jackson Blvd.
Suite 1100
Chicago. IL. 60604
Phone: 312.961.4942
Facsimile: 312.386.9759

2

## CERTIFICATE OF SERVICE

The undersigned attorney, Brian C. Witter, certifies that on Monday June 8, 2008, he served the foregoing **NOTICE OF ATTORNEY'S LIEN** upon the following parties. via Certified Mail:

**NATURE'S PILLOWS, INC.,**
**2607 INTERPLEX DRIVE,**
**TREVOSE, PA 19053**

**William McAllister**
**2607 INTERPLEX DRIVE,**
**TREVOSE, PA 19053**

**Bradley Specter**
**2607 INTERPLEX DRIVE,**
**TREVOSE, PA 19053**

    **Counsel:**    **Matthew H. Adler, Esq.**
                      **Pepper Hamilton, LLP**
                      **3000 Two Logan Square**
                      **Eighteenth and Arch Streets**
                      **Philadelphia, PA  19103-2799**

**Steve Silbiger**
**H.C.T.V. Inc.**
**STUMP RD**
**MONTGOMERYVILLE PA 18936**

    **Counsel:**    **Richard P. McElroy, Esq.**
                      **McElroy & Associates, LLP**
                      **202-A North Monroe Street**
                      **Media, PA 19063**

Brian C. Witter

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Pamela Eckhaus, | ) | |
| individually and on behalf of | ) | |
| all others similarly situated, | ) | |
| | ) | **Case No. 06-CV-00985** |
| Plaintiff, | ) | |
| | ) | **Judge Block** |
| vs. | ) | |
| | ) | **Magistrate Matsumoto** |
| Nature's Pillows, Inc., Bill McAllister, | ) | |
| Brad Specter, and Steve Silbiger, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF ATTORNEY'S LIEN

**VIA CERTIFIED MAIL**

STEVE SILBIGER
H.C.T.V. Inc.
STUMP RD
MONTGOMERYVILLE PA 18936

YOU ARE HEREBY NOTIFIED that pursuant to New York Judiciary Law § 475 and ILCS ___ as the undersigned attorney for plaintiff Pamela Eckhaus ("Eckhaus") and the class in the above-referenced action, I claim a lien in the amount of $105, 000.00 on the cause of action of Eckhaus and the class for services rendered as their attorney in this cause, which lien shall attach to any verdict, report, determination, decision, judgment, settlement or final order in favor of Eckhaus and the class, and the proceeds thereof in whatever hands they may come. The recovery to which the undersigned's lien attaches may be described as follows: the claim of Brian C. Witter ("Witter") is for reasonable compensation based on actual hours billed to the above action relative to all attorney hours billed to the action by attorneys on behalf of Eckhaus and the class. The lien and claim in the amount of $105,000 represents Witter's pro rata share of the $325,000 in plaintiffs' attorneys' fees preliminary approved by the Honorable Frederic Block on March 15, 2008. The lien and claim in the amount of $105,000 represents 32 percent of all hours billed by plaintiffs' counsel to the action.

Dated: April 15, 2008

Brian C. Witter

## DECLARATION OF BRIAN C. WITTER

**Pursuant to 28 U.S.C. § 1746,** I hereby declare as follows, under penalties of perjury:

1.      I am the attorney named above. I have read the attached ***NOTICE OF ATTORNEY'S LIEN*** and am familiar with its contents. At all times relevant to the notice, I was and have been licensed to practice law in the State of Illinois and have admitted to the United States District Court for the Eastern District of New York, for purposes of this action *pro hac vice*. To the best of my knowledge, the contents of the notice are true and correct.

2.      Not only did I bill many more hours to this case than any single lawyer on the plaintiffs' side. and perform the preponderance of the substantive litigation work, the amount of the lien claimed—$105.000 or 32 percent on a pro rata basis of the final award of attorneys' fees—is actually lower than the true amount of my relative time and represents a contribution to the costs of this action in the amount of approximately $8,000.

Brian C. Witter

**Dated: April 15, 2008**


Law Offices of Brian C. Witter,
Brian C. Witter,
111 West Jackson Blvd.
Suite 1100
Chicago, IL. 60604
Phone: 312.961.4942
Facsimile: 312.386.9759

2

## CERTIFICATE OF SERVICE

The undersigned attorney, Brian C. Witter, certifies that on Monday June 8, 2008, he served the foregoing **NOTICE OF ATTORNEY'S LIEN** upon the following parties, via Certified Mail:

**NATURE'S PILLOWS, INC.,**
**2607 INTERPLEX DRIVE,**
**TREVOSE, PA 19053**

**William McAllister**
**2607 INTERPLEX DRIVE,**
**TREVOSE, PA 19053**

**Bradley Specter**
**2607 INTERPLEX DRIVE,**
**TREVOSE, PA 19053**

Counsel:      **Matthew H. Adler, Esq.**
                **Pepper Hamilton, LLP**
                **3000 Two Logan Square**
                **Eighteenth and Arch Streets**
                **Philadelphia, PA  19103-2799**

**Steve Silbiger**
**H.C.T.V. Inc.**
**STUMP RD**
**MONTGOMERYVILLE PA 18936**

Counsel:      **Richard P. McElroy, Esq.**
                **McElroy & Associates, LLP**
                **202-A North Monroe Street**
                **Media, PA 19063**

**Brian C. Witter**

3

**BRIAN C. WITTER,** *PC*
**Law Offices of Brian C. Witter,** *PC*
111 West Jackson Blvd., Suite 1100
Chicago, IL 60604
(312) 961-4942
***briancwitterpc@gmail.com***

Admitted to the Illinois Bar, 1988; Admitted to the United States District Court, Northern
District of Illinois, 1988; United States Court of Appeals for the Seventh Circuit, 1990;
United States District Court, Northern District of Ill        Trial Bar, 1991.

## EDUCATION

**Dartmouth College**
(A.B. 1980)

**Majors**: English Literature and Music; Honors Thesis *The Writings of William S.
Burroughs,* supervised by Louis A. Renza.

**Awards and Activities**: Dartmouth Post-Graduate Fellowship for Study Abroad:
Tangier, Morocco (creative writing and ethnomusicology); and Stockholm, Sweden
(music composition with composer and multi-media artist Lars-Gunnar Bodin). ASCAP
award for young composers. Two Marcus Heiman Awards for Excellence in the Creative
Arts for work as a composer and theater composer. Academy of American Poet's Prize.

**Loyola University School of Law**
(J.D. 1988)

**Awards and Activities**: Citations for academic excellence: American Jurisprudence
Awards for top grade in class, in Jurisprudence, Constitutional History, and
Constitutional Law. Dean's List: three semesters. Independent study and essay projects:
*Darrow's Argument in the Sweet Case,* supervised by William T. Braithwaite; *An Essay
on Plato's Laws,* supervised by George Anastaplo.

## PROFESSIONAL AFFILIATIONS

DuPage County and Chicago Bar Associations; Illinois State Bar Association;
Chicago Board of Trade (former member); National Futures Association (former
member); Dartmouth Club of Chicago. Secretary and registered agent for DAW
Trading, LLC, Green Lake Trading, LLC, and Poplar Trading, LLC.

## PROFESSIONAL EXPERIENCE

Brian C. Witter has a dual career background in law and in the financial industry.
As a lawyer, he has significant transactional and complex commercial litigation
and class action experience in matters involving a broad range of industries. In

addition, he worked for seven years as a legal advisor, trader, and consultant in the commodities futures business and has experience in regulatory, compliance, and intellectual property matters related to the financial industry and has frequently drafted and reviewed general business contracts, employment, licensing, technology, and other agreements. His pract             ly concentrated on general complex business litigation, with an emphasis on business disputes of all types, whether involving individuals, entrepreneurs, small businesses, closely held concerns, municipalities, or    rge corporations, across a broad spectrum of substantive law, including contract, employment, intellectual property, real estate, commodities and futures, trusts and estates, consumer law, civil rights, and class actions, among others. Mr. Witter has extensive trial experience in both state and federal courts, before arbitration panels, and in a variety of state administrative agencies, including the Illinois Commerce Commission and the Illinois Human Rights Commission. In addition to trial practice and commercial and business litigation, Mr. W       lso has significant appellate experience, both in civil and criminal matters, has represented both plaintiffs and defendants in class actions, has litigated and appealed matters involving attorneys' fees, and has handled both domestic relations and guardianship matters. His practice also includes sub-specialties in commodities and futures law, trusts and estates litigation, consumer law, intellectual property, and family law. Mr. Witter also has extensive experience drafting general business contracts, employment agreements, and licensing agreements, as well in regulatory, compliance, and intellectual property matters, having represented and advised a series of corporations, LLC's, and off-shore funds in the commodities futures business and in the financial industry general           998 to the present. He has successfully represented clients since the 1980s.

## TRIAL AND LITIGATION EXPERIENCE

Seven first chair jury trials in state and federal courts in matters ranging up to several million dollars at issue. Five bench trials, as well as three arbitrations, and several contested proceedings before state agencies. Over two-hundred depositions taken and defended. Extensive motion practice and appellate experience. Complex commercial litigation and class action practice on behalf of both plaintiffs and defendants.

## COMPLIANCE AND REGULATORY EXPERIENCE

Excellent knowledge of CFTC, NFA, FINRA, SEC and commodity exchange rules and regulations, as well as broad familiarity with relevant federal statutes. Extensive experience dealing with back office in commodities futures and options environment. Drafted and reviewed general business contracts, employment, licensing, technology, consulting, AP, IB, and other agreements and provided general legal counsel to commodity futures industry clients.

2

**TRADING AND FUTURES INDUSTRY EXPERIENCE**

Extensive futures trading experience in treasuries, stock indexes, energies, grains, currencies, softs, and other markets. Execution and back office knowledge and experience. Floor broker experience (CBOT corn pit). Managed and traded small fund for CPO and investors for several years and developed automated trading systems.

**LAW FIRM AND FINANCIAL INDUSTRY POSITIONS**

2004-: **Law Offices of Brian C. Witter, PC** (Chicago): General practice, with an emphasis on civil litigation and general corporate matters, complex commercial litigation, class actions; counsel to commodity trading firms; expertise in trial and appellate practice.

1998-2004: **Poplar Trading, LLC** (Chicago): General Counsel, as well as Partner in and Consultant and General Legal Advisor to Commodities Trading Businesses and Commodities Hedge Funds; broad futures trading experience in over thirty markets; floor broker experience (CBOT: Corn pit).

1988-1997: **Altheimer & Gray** (Chicago): General civil litigation practice, with an emphasis on complex business litigation; counsel to commodity trading firms; expertise in trial and appellate practice.

1985-1987: **Sonnenschein Nath & Rosenthal** (Chicago);:Clerk during Law School and summers.

1983-1985: **Dow Jones & Co., Book Publishing Division, Trade and Textbooks;** Editor, Production Editor, and Manager in charge of proofs, production, copy editing, and electronic text management for major college textbook publisher and financial industry trade books.

# EXHIBIT 5

LAW OFFICES
## DiTommaso ♦ Lubin
A PROFESSIONAL CORPORATION

THE OAKBROOK TERRACE ATRIUM
17W 220 22ND STREET
SUITE 200
OAKBROOK TERRACE, ILLINOIS 60181
TELEPHONE 630.333.0000
FACSIMILE 630.333.0333

OAKBROOK TERRACE
CHICAGO
PHOENIX

VINCENT L. DiTOMMASO
DIRECT LINE 630.333.0003
vdt@ditommasolaw.com

June 20, 2008

## VIA ELECTRONIC CASE FILING

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn NY 11201

Re:    *Eckhaus v. Nature's Pillows, Inc., et al. (EDNY) 06-CV-985(FB/KM)*
       *Response letter to Brian Witter's Motion re: Final Approval and Entry of Amended Final*
       *Approval Order*

Dear Judge Block:

In brief response to Brian Witter's Motion for Final Approval and Entry of Amended Final
Approval Order, attached is a copy of the Complaint against Mr. Witter, which was filed in
Illinois state court on June 20, 2008.

Mr. Witter was not retained by and has no contractual relationship with the Plaintiff in this case.
His "lien" is the subject, in part, of the Illinois litigation. Mr. Witter's relationship is solely with
DiTommaso ♦ Lubin, P.C. All of Mr. Witter's professional services were billed through
DiTommaso ♦ Lubin, P.C.

LAW OFFICES
DiTOMMASO ♦ LUBIN
A PROFESSIONAL CORPORATION

The Honorable Judge Frederic Block
June 20, 2008
Page Two

The Final Approval Order that we previously submitted has been approved by all counsel of record except Mr. Witter.  However, Mr. Witter has not objected to same.

Very truly yours,

DiTOMMASO ♦ LUBIN, P.C.

/s/ Vincent L. DiTommaso

cc:     Richard P. McElroy, Esq. (via email)
        Matthew H. Adler, Esq. (via email)

        Attachments

        All Counsel of Record (via ECF)

*Eckhaus*

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
DU PAGE COUNTY, ILLINOIS

|  |  |  |
|---|---|---|
| DiTOMMASO-LUBIN, P.C. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LAW OFFICE OF | ) | |
| BRIAN C. WITTER, P.C. AND | ) | |
| BRIAN C. WITTER individually | ) | |
| | ) | |
| Defendant. | ) | |

Chris Kachiroubas
****Electronically Filed****
Transaction Id: 1223059
2008CH2378
06/20/2008
KIM FRANCO
status 10/17/08 2007 9:05
***********************

## COMPLAINT FOR DECLARATORY
## JUDGMENT AND INJUNCTIVE RELIEF

NOW COMES the Plaintiff, DiTOMMASO-LUBIN, P.C. ("DiTOMMASO") by its attorneys, LARAIA AND HUBBARD, P.C., and for its Complaint for Declaratory Judgment and Injunctive Relief, pursuant to 735 ILCS §§ 5/2-701 and 5/11-101, et seq. of the Illinois Code of Civil Procedure, against Defendants, LAW OFFICE OF BRIAN C. WITTER, P.C. AND BRIAN C. WITTER individually, (hereinafter collectively referred to as "WITTER") and alleges as follows:

### INTRODUCTION

1.    This is an action seeking a declaratory judgment and injunctive relief with respect to numerous purported Notices of Attorney's Lien served by Witter upon defendants in lawsuits brought on behalf of certain of DiTommaso's hourly and contingency fee clients following Witter's termination and disengagement from DiTommaso for cause. Witter never had any agreement with any of DiTommaso's client's against whom Witter purports to assert attorney's liens for the payment of attorney's fees. Witter's sole agreement for compensation was with

DiTommaso, which DiTommaso has honored. Notwithstanding having no right to turn to DiTommaso's clients for payment of attorney's fees, or to file fee petitions with courts in class action cases, having already been compensated for his work by DiTommaso according to two independent contractor agreements, and having been discharged from DiTommaso for cause after causing it harm due to his poor performance and inefficiency, Witter has engaged in an wrongful acts, and in derogation of client rights of asserting fraudulent and bogus liens against the recoveries of DiTommaso's clients and from class-action fee awards.

## PARTIES

2.    DiTommaso is a law firm with its principle place of business at 17W 220 22nd Street, Oak Brook Terrace, Illinois.

3.    Law Office of Brian C. Witter is an Illinois professional corporation ostensibly engaged in the practice of law with its principle place of business at 111 West Jackson Boulevard, Chicago, Illinois. Law Office of Brian C. Witter does business in both Cook and Du Page Counties, Illinois.

4.    Defendant, Brian C. Witter is an individual attorney who resides at 1449 N. North Park Chicago Illinois, 60610, and who, on information and belief, is the sole officer and shareholder, and principle attorney of the Law Office of Brian C. Witter.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this action pursuant to 735 ILCS § 5/2-701, and there exists a justiciable controversy capable of resolution by this Court.

6.    Venue is proper in Du Page County because the transaction out of which this cause    of    action    arose    occurred    in    Du    Page    County.

2

<u>DECLARATORY JUDGMENT</u>

7.    DiTommaso and Defendant Brian C. Witter entered into an Agreement for Professional Services (the "Agreement") on or about December 19, 2005, a copy of which is attached as Exhibit "A".

8.    The Agreement provides that Brian C. Witter was engaged by DiTommaso as an independent contractor to provide legal services to DiTommaso for a specified period of time.

9.    The Agreement further provides that Brian C. Witter, would be compensated at the rate of $1,000.00 a week for work he performed for DiTommaso.

10.    Pursuant to the Agreement, Witter worked on various hourly paying, and contingency fee matters for DiTommaso, and received his guaranteed weekly compensation in return for working on all these cases.

11.    In or about the Spring of 2007, the parties orally modified the Agreement to increase the amount of Witter's set non-discretionary compensation for working on all hourly paying and contingency cases of DiTommaso on which Witter, as an independent contractor, chose to work.

12.    In addition to his set agreed upon compensation for services rendered to DiTommaso between December 2005 and April 2006, DiTommaso paid Witter a discretionary bonus in April 2007 for that same work.

13.    Witter was fully paid for the services he rendered to DiTommaso on all contingency and hourly paying cases for the period December 2005 until February 1, 2008 under the terms of the parties' Agreement.

14.    In early 2008, Witter requested payment of a discretionary bonus stating that he needed the money to help rectify serious new financial problems he was facing, and long standing past financial problems. He said he needed more money to pay his 2007 income tax liability for which he failed to set aside sufficient funds, and to pay other obligations including his student loan and prior IRS tax lien obligations totaling on information and belief well in excess of $300,000. DiTommaso declined to provide the requested discretionary bonus.

15.    Also in early 2008, DiTommaso informed Witter that he had failed to address and rectify numerous performance and judgment issues which had repeatedly come up, and which DiTommaso and certain co-counsel in contingency cases had asked him to correct and which he had failed to correct. DiTommaso stated to Witter that due to his poor performance and lack of efficiency and profitability, DiTommaso was no longer willing to provide Witter guaranteed weekly compensation as an independent contractor working on hourly paying and contingency cases. DiTommaso stated that if Witter wished to continue working as an independent contractor the parties would need to agree upon a new independent contractor arrangement which would encourage Witter to work in a more efficient and profitable manner, and that Witter would also have to rectify the many performance and judgment issues.

16.    The Agreement was superseded by a subsequent Independent Contractor Agreement For Professional Services ("Independent Contractor Agreement") which is dated February 1, 2008. A copy of the Independent Contractor Agreement is attached as Exhibit "B"

17.    The Independent Contractor Agreement sets forth a specific compensation arrangement for work performed by Brian C. Witter, P.C. for DiTommaso that does not include any set base compensation.

18.   The Independent Contractor Agreement refers to Brian C. Witter, P.C. as an independent contractor.

19.   The Independent Contractor Agreement sets forth the term of the Independent Contractor Agreement between DiTommaso and Brian C. Witter, P.C., as beginning February 1, 2008 and ending July 31, 2008.

20.   Pursuant to the Independent Contractor Agreement, Brian C. Witter, P.C. was to provide legal services to DiTommaso on a variety of matters, as agreed to between the parties.

21.   As to past services rendered by Witter to DiTommaso before February 1, 2008, the Independent Contractor Agreement states in the recitals: "The Firm at its sole discretion, in April 2007, paid Witter a discretionary bonus and has paid, from time to time additional monies to Witter on time Witter has previously expended on a variety of matters for the Firm between December 19, 2005 and January 31, 2008."

22.   The Independent Contractor Agreement at paragraph 3(b)(x) states that "on contingency cases where Witter has performed work prior to the date of this Agreement, Witter shall be paid at the sole discretion of the firm." This provision mirrored the parties' preexisting agreement that for work Witter performed prior to January 31, 2008, in addition to his base compensation, he could also receive bonuses subject to the sole discretion of the Firm.

23.   Pursuant to the Independent Contractor Agreement, either party could terminate the Independent Contractor Agreement at any time, for any reason, prior to the expiration of the six month term.

24.   Witter's already poor work performance and poor judgment increased at an accelerated pace after the execution of the Independent Contractor Agreement. In addition, DiTommaso learned of a serious past act of malpractice by Witter in a New York class action

5

case, which through significant time, and effort DiTommaso was able to completely rectify in an amendment to the class action settlement.

25.     DiTommaso terminated Brian C. Witter, P.C. pursuant to the Independent Contractor Agreement on April 7, 2008.  See termination notice which is attached as Exhibit "C."

26.     Although no cause was required for termination, DiTommaso terminated the Independent Contractor Agreement for cause.  DiTommaso told Witter before his termination of many of the reasons for the termination.

27.     After Brian C. Witter, P.C's termination, Brian C. Witter, P.C. sent Notices of Attorney's Lien ("Lien Notices") to various parties purportedly pursuant to 770 ILCS § 5/1, and for one New York class-action case purportedly pursuant to 770 ILCS § 5/1 and New York Judiciary Law § 475.

28.     The Lien Notices purport to assert attorney's liens against the recoveries of potential funds from various contingency, unpaid hourly, and class action lawsuits filed by DiTommaso on behalf of its clients.  See Lien Notices attached as Exhibit "D."

29.     Witter's compensation for his work on these contingency and unpaid hourly cases is governed by the terms of the Independent Contractor Agreement which only allows him to receive an entirely discretionary bonus payment on the contingency cases, in addition to the weekly compensation and bonus he already received for that work.

30.     Witter is not entitled to seek payment from DiTommaso's clients, or the courts at his reasonable hourly rate because he had no agreement for payment of fees with any of DiTommaso's clients, and he was already compensated for his work through his set agreed upon contractual compensation, and a April 2007 discretionary bonus payment, and had agreed in

6

writing that any future compensation for such work was at the sole discretion of DiTommaso.

31.    However, in Witter's Lien Notices, Witter claims the right to be paid directly from the proceeds of DiTommaso's clients or through fee awards from class action settlements at his hourly market rate, as opposed to the under the terms of his Independent Contractor Agreement.

32.    Although the various Lien Notices are dated April 15, 2008, their Certificates of Service are all dated June 9, 2008.

33.    Neither Brian C. Witter, P.C. nor Brian C. Witter entered into any agreement for payment of attorney's fees directly with any of DiTommaso's clients to whom Witter sent Lien Notices.

34.    Witter has also filed a fee petition in one class action case pending in New York seeking fees for himself in direct violation of the Independent Contract Agreement's requirement that he look solely to DiTommaso for any compensation in that case.  DiTommaso has a right to award any additional compensation to Witter at its sole discretion because was already paid for this work.

35.    All of the clients against whom Witter asserts purported attorney's liens are clients of DiTommaso, not Witter.

36.    Witter misrepresents under penalty of perjury in each of the Lien Notices that DiTommaso's client retained him and that he had a reasonable expectation of being paid his hourly rate, as opposed to pursuant to the compensation terms he agreed upon in his independent contractor agreements with DiTommaso.

37.    Contrary to Witter's misstatements, Witter worked on DiTommaso client matters solely as an independent contractor and neither Brian C. Witter nor the Law Office of Brian C.

7

Witter, PC was ever directly engaged by any of DiTommaso's clients against whom Witter asserted these attorney's liens.

38.    Witter was not hired by any of the clients referenced in its Lien Notices and agreed to be compensated by DiTommaso and not DiTommaso's clients; therefore, Witter has no lien rights and its purported Lien Notices are invalid.

39.    Even assuming that Witter did have an agreement with DiTommaso's clients regarding payment of attorney's fees, which he did not, Witter's Lien Notices are defective because Witter did not serve its Lien Notices during the existence of any attorney/client relationship, as Witter was terminated for cause on April 7, 2008 and its Lien Notices were served via certified mail on June 9, 2008.

40.    DiTommaso has performed all of its obligations to Witter under the terms of the parties' independent contractor agreements.

41.    Witter has materially breached the parties' contract by seeking compensation in violation of the terms of the Independent Contractor Agreement from DiTommaso's clients and not from DiTommaso itself, to the extent Witter has any such claim.

42.    Witter's breach of contract is interfering with DiTommaso's attorney/client and co-counsel relationships, harming its reputation, and causing DiTommaso ongoing actual and irreparable injury and damages for which there is no adequate remedy at law. This ongoing irreparable injury can only be cured through declaratory and injunctive relief. Specifically, without adjudication in favor of DiTommaso and its clients, Witter's Lien Notices would require block defendants in cases in which DiTommaso represents its clients from paying DiTommaso, DiTommaso's clients, and DiTommaso's co-counsel in certain matters. These notices interfere

with timely payment of monies to DiTommaso clients and to co-counsel and constitute a wrongful and willful interference by Witter with DiTommaso business and client relations.

43.    An actual controversy exists between the Plaintiff and Defendants as to: (1) Defendants alleged right to assert Attorney's Liens against DiTommaso's clients' settlement funds or Judgments; (2) Defendants' right to claim compensation contrary to and in materially breach of the express terms of the parties' written contract.

WHEREFORE, the Plaintiff, DiTOMMASO-LUBIN, P.C., prays that this Court declare that: (1) the Defendants have no statutory Attorney Lien rights; that Defendants did not enter into contracts with any of DiTommaso's clients referenced in Defendants' Lien Notices; and that Defendants' Lien Notices are invalid because Defendants were terminated before the date of service of Defendants' Lien Notices, and the Notices are contrary to the terms of Defendants' contract with DiTommaso; (2) under the terms the parties' independent contractor agreement neither DiTommaso nor its clients owe Defendants the monies sought by Defendants' Lien Notices and Witter is not entitled to petition for fees in any class action in violation of the terms of the parties' written agreement; (3) Defendants' are in material breach of contract for seeking compensation contrary to the terms of the parties' contract.

DiTOMMASO-LUBIN, P.C. further prays that this Court temporarily, preliminarily and permanently enjoin Defendants from: (1) seeking to enforce the invalid Attorney Liens, (2) interfering with, and irreparably damaging DiTommaso' client and co-counsel relationships through the fraudulent assertion of the invalid Attorney Liens; (3) seeking compensation contrary

to the terms of the parties' contract, whether by asserting purported Attorney's Liens or otherwise.

LARAIA & HUBBARD, P.C.

By _____

## CERTIFICATE OF ATTORNEY

I certify as attorney of record in this cause, that I have read the above pleading and that to the best of my knowledge, information and belief, formed after reasonable inquiry of my client, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the statements contained herein concerning the lack of knowledge, if any, are true and are not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

_____
As Attorney and Not Personally

LARAIA & HUBBARD, P.C.
Attorney No. 007
1761 S. Naperville Road, Suite 203
Wheaton, Illinois 60187
(630) 690-6800

## Agreement for Professional Services

This Agreement for Professional Services ("Agreement"), made this 19th day of December, 2005, is by and between Brian C. Witter ("Witter"), a lawyer and independent contractor, of 1449 North North Park, Chicago, Illinois, 60610, and the law firm of DiTommaso Lubin, PC. ("the Firm"), whose principal place of business is at 17 West 220 22nd Street, Suite 200, Oakbrook Terrace, Illinois, 60181.

WHEREAS, Witter is a lawyer who was admitted to practice in the State of Illinois in 1988, and has broad experience as a litigation and trial attorney; and

WHEREAS, the Firm wishes to engage Witter's professional services as a lawyer for a six-month term as more fully described below;

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, Witter and the Firm agree as follows:

1. Term.

This Agreement shall be for a term of six months, between December 19, 2005 and June 19, 2006; and the parties may, if they so agree, extend the Agreement for an additional six month term.

2. Services.

Witter will provide legal services to the Firm, relying on his experience and professional expertise, on a variety of matters as the parties may mutually agree, and will be designated as "Of Counsel" to the Firm.

3. Compensation and Hours.

Witter will be compensated for his time by the firm at the rate of $1000.00 per week, although the Firm will bill Witter's time to clients, at market rates, on a case by case basis, as it sees fit. Witter will set his own working hours, and will work out of his home office from time to time as he sees fit, although for at least four days each week he will work out of his office in the Firm's office suite between the hours of 7:00 a.m. and 4:00 p.m.

4. Office Space.

Witter will pay $166.66 per month in rent to the Firm for office space.



1

## 5. Benefits.

Witter will not receive health insurance, either medical or dental, from the Firm; nor will Witter be eligible to participate in the Firm's pension plan. Neither will Witter receive vacation or sick pay from the Firm.

## 6. Other Non-reimbursable Expenses.

Witter will be solely responsible for any fees and expenses related to the renewal of his law license, as well as all bar dues and other professional expenses, including travel and the insurance and other costs associated with the maintenance of Witter's automobile.

## 7. Witter's Legal Business.

Witter may, at his sole discretion, choose to undertake any and all legal matters as he sees fit, including working for other law firms; however, Witter will allow the Firm a right of first refusal on all legal business that he might generate during the term of the Agreement, and he further agrees to split all fees with the Firm as follows: 66.67 % of all legal fees will go to the Firm; while Witter will receive 33.33% of said fees.

## 8. Termination.

Both Witter and the Firm, individually or in concert, may choose to terminate the Agreement at any time, for any reason, prior to the expiration of the six month term, and said termination will also extinguish any renewal of the Agreement that the parties may have agreed upon.

## 9. Governing Law.

This Agreement is governed by the laws of the State of Illinois.


_____                    By: _____


Brian C. Witter                                DiTommaso Lubin, PC.


2

## INDEPENDENT CONTRACTOR AGREEMENT FOR PROFESSIONAL SERVICES

This Agreement for Professional Services ("Agreement"), made this 1st day of February, 2008, is by and between Brian C. Witter, P.C. ("Witter"), a professional corporation and independent contractor, whose principal place of business is located at 1449 North North Park, Chicago, Illinois, 60610, and the law firm of DiTommaso + Lubin, PC. ("the Firm"), whose principal place of business is located at 17 West 220 22nd Street, Suite 200, Oakbrook Terrace, Illinois 60181.

WHEREAS, Brian C. Witter is the principal lawyer and the sole shareholder of Witter, and was admitted to practice in the State of Illinois in 1988; and

WHEREAS, the Firm wishes to engage Witter's professional services as Of Counsel for a six-month term on new and different terms as more fully described below; and

WHEREAS, the Firm, at its sole discretion, in April 2007, paid Witter a discretionary bonus and has paid, from time to time, additional monies to Witter on time Witter has previously expended on a variety of matters for the Firm between December 19, 2005 and January 31, 2008. This Agreement is intended to apply to all matters and work hereinafter performed as more fully described below.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, Witter and the Firm agree as follows:

1. Definition and Term.

The term "hereinafter" as used in this Agreement shall mean the period of time commencing February 1, 2008 and continuing during the term and renewal term of this Agreement. This Agreement shall be for a term of six months, between February 1, 2008 and July 31, 2008; and the parties may, if they so agree in writing, extend this Agreement for an additional six month term.

2. Services.

Witter shall provide legal services to the Firm on a variety of matters as the parties may mutually agree and will be designated as "Of Counsel" to the Firm.

3. Compensation and Hours.

    (a)   Billable Hourly Matters:

Commencing March 15, 2008 and continuing on the 15th day of each month thereafter during the term of this Agreement, Witter shall be compensated for its time and paid for business it generates/originates by the Firm as follows:  Witter will share the risk of non-collection or slow-paying clients.  For the Firm's billable hourly work hereinafter billed by Witter and collected by the Firm, Witter shall be paid thirty three percent (33%) of



EXHIBIT
B

Witter's hereinafter respective hourly fee billings, except that for the first payment due under the Agreement, on February 25, 2008, Witter shall be paid thirty three percent (33%) of hours billed by Witter in December, 2007 and that were collected by the Firm in January, 2008 and Witter shall be paid on February 25, 2008 a $2,000.00 "draw" against future earnings due Witter under the terms of this Agreement. The $2,000.00 draw paid to Witter shall be considered advance payment of monies due Witter hereunder and shall be deducted from any monies due Witter on March 15, 2008 and thereafter, if appropriate. Should Witter terminate the Agreement for any reason prior to its expiration on July 31, 2008, Witter shall, within thirty (30) days, repay the Firm the full amount of the February 25, 2008 payments made to it by the Firm.

In addition, Witter shall receive ten percent (10%) of hours hereinafter billed by Witter and collected by the Firm on Witter originated/generated files, except that for the first payment due under the Agreement, on February 25, 2008, Witter shall be paid ten percent (10%) of hours billed by Witter in December 2007 and collected by the Firm in January 2008 on Witter originated/generated files.

On Witter generated/originated matters where other Firm attorneys have hereinafter billed their respective time, Witter shall receive twenty percent (20%) of those hours billed and collected by the Firm.

The Firm currently has the following Witter generated files:

    (1) *In Re Marriage of Perovich*, 89 D 507; and

    (2) *Johnson v. O'Donnell, et al*, 07-1-014003.

(b)   <u>Contingency Matters</u>:

(The Firm shall be responsible for advancing all costs and expenses in contingency cases.)

    (i)     On matters where Witter's hereinafter respective time billed (Witter's Lodestar) is at least ninety percent (90%) or more of the total time billed (total Lodestar which includes all time billed by all Firm attorneys and Witter). Witter shall be paid forty-five percent (45%) of the "net total fee" paid to or received by the Firm. One hundred fifty percent (150%) unrecovered costs that are billed on the respective file, referral fees and fee sharing monies paid shall reduce the total fees received by the amount paid thereof resulting in "total net fee". Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement.

    (ii)     On matters where Witter's hereinafter respective time billed (Witter's Lodestar) is at least eighty percent (80%) but less than ninety percent (90%) of the



total time billed (total Lodestar which includes all time billed by all Firm attorneys and Witter). Witter shall be paid forty percent (40%) of the "net total fee" paid to or received by the Firm. One hundred fifty percent (150%) unrecovered costs that are billed on the respective file. referral fees and fee sharing monies paid shall reduce the total fees received by the amount paid thereof resulting in "total net fee". Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement.

(iii)    On matters where Witter's hereinafter respective time billed (Witter's Lodestar) is at least seventy percent (70%) but less than eighty percent (80%) of the total time billed (total Lodestar which includes all time billed by all Firm attorneys and Witter), Witter shall be paid thirty-five percent (35%) of the "net total fee" paid to or received by the Firm. One hundred fifty percent (150%) unrecovered costs that are billed on the respective file, referral fees and fee sharing monies paid shall reduce the total fees received by the amount paid thereof resulting in "total net fee". Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement.

(iv)    On matters where Witter's respective time hereinafter billed (Witter's Lodestar) is at least sixty percent (60%) but less than seventy percent (70%) of the total time billed (total Lodestar which includes all time billed by all Firm attorneys and Witter), Witter shall be paid thirty percent (30%) of the "net total fee" paid to or received by the Firm. One hundred fifty percent (150%) unrecovered costs that are billed on the respective file, referral fees and fee sharing monies paid shall reduce the total fees received by the amount paid thereof resulting in "total net fee". Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement.

(v)    On matters where Witter's respective time hereinafter billed (Witter's Lodestar) is at least fifty percent (50%) but less than sixty percent (60%) of the total time billed (total Lodestar which includes all time billed by all Firm attorneys and Witter), Witter shall be paid twenty-five percent (25%) of the "net total fee" paid to or received by the Firm. One hundred fifty percent (150%) unrecovered costs that are billed on the respective file, referral fees and fee

3



sharing monies paid shall reduce the total fees received by the amount paid thereof resulting in "total net fee". Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement.

(vi)    On matters where Witter's respective time hereinafter billed (Witter's Lodestar) is at least forty percent (40%) but less than fifty percent (50%) of the total time billed (total Lodestar which includes <u>all</u> time billed by all Firm attorneys and Witter), Witter shall be paid twenty percent (20%) of the "net total fee" paid to or received by the Firm. One hundred fifty percent (150%) unrecovered costs that are billed on the respective file, referral fees and fee sharing monies paid shall reduce the total fees received by the amount paid thereof resulting in "total net fee". Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement.

(vii)    On matters where Witter's respective time hereinafter billed (Witter's Lodestar) is at least thirty percent (30%) but less than forty percent (40%) of the total time billed (total Lodestar which includes <u>all</u> time billed by all Firm attorneys and Witter), Witter shall be paid fifteen percent (15%) of the "net total fee" paid to or received by the Firm. One hundred fifty percent (150%) unrecovered costs that are billed on the respective file, referral fees and fee sharing monies paid shall reduce the total fees received by the amount paid thereof resulting in "total net fee". Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement.

(viii)    On matters where Witter's respective time hereinafter billed (Witter's Lodestar) is at least twenty percent (20%) but less than thirty percent (30%) of the total time billed (total Lodestar which includes <u>all</u> time billed by all Firm attorneys and Witter), Witter shall be paid ten percent (10%) of the "net total fee" paid to or received by the Firm. One hundred fifty percent (150%) unrecovered costs that are billed on the respective file, referral fees and fee sharing monies paid shall reduce the total fees received by the amount paid thereof resulting in "total net fee". Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional

4



ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement.

(ix)    On matters where Witter's respective time hereinafter billed (Witter's Lodestar) is at least ten percent (10%) but less than twenty percent (20%) of the total time billed (total Lodestar which includes all time billed by all Firm attorneys and Witter), Witter shall be paid five percent (5%) of the "net total fee" paid to or received by the Firm. One hundred fifty percent (150%) unrecovered costs that are billed on the respective file, referral fees and fee sharing monies paid shall reduce the total fees received by the amount paid thereof resulting in "total net fee". Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement.

(x)    On matters where Witter's respective time hereinafter billed (Witter's Lodestar) is less than ten percent (10%) of the total time billed (total Lodestar which includes all time billed by all Firm attorneys and Witter), or where Witter has terminated this Agreement prior to the Firm being paid or receiving money on the respective case(s) and/or on contingency cases where Witter has performed work prior to the date of this Agreement, Witter shall be paid at the sole discretion of the Firm. Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement.

(c)    On collected (and billed) matters as described in 3(a) and 3(b) herein where payments were received by the Firm in the previous month, the Firm shall pay Witter on the 15th of each respective month.

Witter will set its own working hours, and will work out of its home office from time to time as it sees fit, although Witter will be provided the office at the Firm's Chicago location at 332 North Michigan Avenue, Chicago, Illinois between the hours of 7:00 a.m. and 4:00 p.m. at least four (4) days each week.

4. Benefits.

Witter will not receive health insurance, either medical or dental, from the Firm. Witter will not be eligible to participate in the Firm's pension, profit sharing or 401(k) plan(s). Witter will not receive vacation or sick pay from the Firm. However, the Firm will add Witter as additional counsel to its malpractice insurance.



**5. Other Non-reimbursable Expenses.**

Witter will be solely responsible for any fees and expenses related to the renewal of his law license, as well as all bar dues and other professional expenses, including travel and the insurance and other costs associated with the maintenance of Witter's automobile.

**6. Witter's Legal Business.**

Witter shall not undertake any and all legal matters without the express approval of the Firm. Witter is not authorized to sign any client retainer agreements and settlement statements on behalf of Witter or the Firm. Vincent L. DiTommaso and Peter S. Lubin are solely authorized to execute client retainer agreements and settlement statements on behalf of Witter or the Firm. All work performed by Witter shall be under the direct supervision of the principals of the Firm and Witter shall copy and obtain approval from either of the Firm's principals on all work that Witter has prepared in final draft form. The Firm shall have the sole discretion in determining what Witter will disseminate as work product of the Firm.

**7. Termination.**

Both Witter and the Firm, individually or in concert, may choose to terminate the Agreement at any time, for any reason, prior to the expiration of the six month term, and said termination shall also extinguish any renewal of the Agreement that the parties may have agreed upon. Should Witter terminate this Agreement prior to July 31, 2008, Paragraph 3(a) shall apply.

**8. Governing Law.**

This Agreement is governed by the laws of the State of Illinois.

Brian C. Witter, P.C.

By:

DiTommaso + Lubin, P.C.

By:

6

### Vincent DiTommaso

**From:** Vincent DiTommaso
**Sent:** Monday, April 07, 2008 5:05 PM
**To:** Brian Witter
**Subject:** Termination of our business realtionship

This will confirm our meeting today wherein we terminated our business relationship and our Independent Contractor Agreement "Agreement") with you.

I understand that you will be taking the O'Donnell, Varnau and 2-Swift Cases with you. You agreed to file motions to substitute in those cases.

We will pay what is owed to you under the Agreement. Any and all of your future billings (as of today's date) will not be subject to the Agreement and will not be billed through DiTommaso-Lubin, P.C. You will not have access to the DiTommaso-Lubin, P.C. Chicago and Oakbrook Terrace offices except that you are permitted to remove your personal items from the Chicago office tomorrow. We will gather whatever personal belongings you have at the Oakbrook office. As I requested, please leave in the desk at the Chicago office the keys, key-fob and security pass for each of the offices.

Should you have any questions or comments, please do not hesitate to contact me.

Vincent L. DiTommaso
Tel: 630.333.0000
Fax: 630.333.0333
vdt@ditommasolaw.com

☒

Notice: This e-mail and any attached document(s) are intended only for the use of the individual or entity to whom or to which it is addressed and may contain information that is privileged, confidential, proprietary, and/or trade secret. If the reader of this message is not the intended recipient or an employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or reproduction of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately and discard the original message and any attachment(s).



4/7/2008

06/13/2008   18:51    3122015401    TRIBLERORPETT&MEYER    PAGE   02/04

22/04
689.22957
⑤

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINIOS,
### EASTERN DIVISION

JANINCE KOINEWKO, on behalf
of herself and all others similarly situated,     )
)
Plaintiff,     )
)     Case No. 07-CV-05338
)
v.     )
)     Honorable Robert Dow
)
DICKLER, KAHN, SLOWIKOWSKI     )
& ZAVELL, LTD..,     )
)
Defendant.     )

## NOTICE OF ATTORNEY'S LIEN

### VIA CERTIFIED MAIL

Dickler, Kahn, Slowikowski & Zavell, Ltd.
85 W. Algonquin Rd. #420
Arlington Heights, IL 60005

YOU ARE HEREBY NOTIFIED that pursuant to ILCS 770 § 5/1, as the undersigned attorney for plaintiff Janice Konewko and the class in the above-referenced action, I claim a lien in the amount of $5950.00 on the cause of action of Konewko and the class for services rendered as their attorney in this cause, which lien shall attach to any verdict, report, determination, decision, judgment, settlement or final order in favor of Konewko and the class, and the proceeds thereof in whatever hands they may come. The recovery to which the undersigned's lien attaches may be described as follows: the claim of Brian C. Witter ("Witter") is $5950.00 is for reasonable compensation based on hours billed at his regular and customary rate for professional services rendered on behalf of Janice Konewko and the class in the above action.

Dated: April 15, 2008

Brian C. Witter

Law Offices of Brian C. Witter, PC
Brian C. Witter, PC
111 West Jackson Blvd.
Suite 1100
Chicago, IL, 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
brianowitterpc@gmail.com
Attorney No. 6198156



06/13/2008  10:51    3122016401    TRIBLERORPETT&MEYER    PAGE  03/04

# CERTIFICATE OF SERVICE

The undersigned attorney, Brian C. Witter, certifies that on Tuesday June 9, 2008, he served the foregoing *NOTICE OF ATTORNEY'S LIEN* upon the following parties, via Certified Mail:

Dickler, Kahn, Slowikowski & Zavell, Ltd.
85 W. Algonquin Rd. #420
Arlington Heights, IL 60005

Counsel:    Panos T. Topalis
            Tribler Orpett and Meyer, P.C.
            225 West Washington Street
            Suite 1300
            Chicago, IL 60606

Brian C. Witter

06/13/2008  10:51    3122016401              TRIBLERORPETT&MEYER              PAGE  04/04

## DECLARATION OF BRIAN C. WITTER

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows, under penalties of perjury:

1.    I am the attorney named above. I have read the attached *NOTICE OF ATTORNEY'S LIEN* and am familiar with its contents. At all times relevant to the notice, I was and have been licensed to practice law in the State of Illinois and have been admitted to the United States District Court for the Northern District of Illinois. To the best of my knowledge, the contents of the notice are true and correct.

Brian C. Witter

Dated: April 15, 2008

Law Offices of Brian C. Witter, *PC*
Brian C. Witter, *PC*
111 West Jackson Blvd.
Suite 1100
Chicago, IL, 60604
Phone: 312.961.4942
Facsimile: 312.386.9739
brianewitterxc@gmail.com

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| Sara Chirinos, | ) | |
| Plaintiff, | ) | Case No. 07-CV- 05804 |
| | ) | |
| v. | ) | Honorable John A. Nordberg |
| | ) | |
| World Savings Bank, FSB | ) | Magistrate Judge Nolan |
| | ) | |
| Defendant.., | ) | |
| | ) | |
| | ) | |

## NOTICE OF ATTORNEY'S LIEN

<u>VIA CERTIFIED MAIL</u>

World Savings Bank, FSB
4101 Wiseman Blvd.
San Antonio, TX 78251

YOU ARE HEREBY NOTIFIED that pursuant to ILCS 770 § 5/1, as the undersigned attorney for plaintiff Sara Chirinos in the above-referenced action, I claim a lien in the amount of $5250.00 on the cause of action of Chirinos for services rendered as her attorney in this cause, which lien shall attach to any verdict, report, determination, decision, judgment, settlement or final order in favor of Wuttke, and the proceeds thereof in whatever hands they may come. The recovery to which the undersigned's lien attaches may be described as follows: the claim and lien of Brian C. Witter in the amount of $5250.00 is for reasonable compensation based on hours billed at his regular and customary rate for professional services rendered on behalf of Sara Chirinos in the above action.

Dated: April 15, 2008

Brian C. Witter

Law Offices of Brian C. Witter, *PC*

Brian C. Witter, *PC*
111 West Jackson Blvd.
Suite 1100
Chicago, IL, 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
*brianc witterpc@gmail.com*
Attorney No. 6198156

## DECLARATION OF BRIAN C. WITTER

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows, under penalties of perjury:

I am the attorney named above. I have read the attached *NOTICE OF ATTORNEY'S LIEN* and am familiar with its contents. At all times relevant to the notice, I was and have been licensed to practice law in the State of Illinois and have been admitted to the United States District Court for the Northern District of Illinois. To the best of my knowledge, the contents of the notice are true and correct.

Brian C. Witter

Dated: April 15, 2008

Law Offices of Brian C. Witter, *PC*

Brian C. Witter, *PC*
111 West Jackson Blvd.
Suite 1100
Chicago, IL, 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
*briancwitterpc@gmail.com*

## CERTIFICATE OF SERVICE

The undersigned attorney, Brian C. Witter, certifies that on Tuesday June 9, 2008, he served the foregoing *NOTICE OF ATTORNEY'S LIEN* upon the following parties, via Certified Mail:

World Savings Bank, FSB
4101 Wiseman Blvd.
San Antonio, TX 78251


Counsel:        Gary S, Caplan
                Reed Smith LLP
                10 South Wacker Drive
                40th Floor
                Chicago, IL 60606

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| JANET AGRANOFF, on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) ) ) ) | Case No. 07-CV-4933 |
| v. ) ) | Honorable Suzanne B. Conlon |
| LENSCRAFTERS, INC., ) ) | |
| Defendant. ) | |

## NOTICE OF ATTORNEY'S LIEN

### VIA CERTIFIED MAIL

LensCrafters, Inc.
4000 Luxottica Place
Mason, OH 45040

YOU ARE HEREBY NOTIFIED that pursuant to ILCS 770 § 5/1, as the undersigned attorney for plaintiff Janet Agranoff and the class in the above-referenced action, I claim a lien in the amount of $73,500.00 on the cause of action of Agranoff and the class for services rendered as their attorney in this cause, which lien shall attach to any verdict, report, determination, decision, judgment, settlement or final order in favor of Agranoff and the class, and the proceeds thereof in whatever hands they may come. The recovery to which the undersigned's lien attaches may be described as follows: the claim of Brian C. Witter ("Witter") is for reasonable compensation based on actual hours billed to the above action. The lien and claim in the amount of $73,500 represents Witter's lodestar at rates comparable to those of his co-counsel in this action.

Dated: April 15, 2008

Brian C. Witter

Law Offices of Brian C. Witter, *PC*

Brian C. Witter, *PC*
111 West Jackson Blvd.
Suite 1100
Chicago, IL, 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
*brianewitterpc@gmail.com*

## DECLARATION OF BRIAN C. WITTER

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows, under penalties of perjury:

1.    I am the attorney named above. I have read the attached *NOTICE OF ATTORNEY'S LIEN* and am familiar with its contents. At all times relevant to the notice, I was and have been licensed to practice law in the State of Illinois and have been admitted to the United States District Court for the Northern District of Illinois, and the United States Court of Appeals, Seventh Circuit. To the best of my knowledge, the contents of the notice are true and correct.

Brian C. Witter

Dated: April 15, 2008

Law Offices of Brian C. Witter, *PC*
Brian C. Witter, *PC*
111 West Jackson Blvd.
Suite 1100
Chicago, IL, 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
*brianwitterpc@gmail.com*

2

## CERTIFICATE OF SERVICE

The undersigned attorney, Brian C. Witter, certifies that on Tuesday June 9, 2008, he served the foregoing *NOTICE OF ATTORNEY'S LIEN* upon the following parties, via Certified Mail:

LensCrafters, Inc.
4000 Luxottica Place
Mason, OH 45040

Counsel:      Joseph A. DiBenedetto, Esq.
Winston & Strawn LLP 200 Park Avenue
New York, New York
10166-4193

Brian C. Witter

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

JANET AGRANOFF, on behalf )
of herself and all others similarly situated, )
)
Plaintiff-Appellant, )    Court of Appeals Docket #: 08-1173
)
)    Appeal from: United States District Court
)    for the Northern District of Illinois,
)    Eastern Division
v. )    Case No. 07-CV-4933
)    Honorable Suzanne B. Conlon, Presiding
)
LENSCRAFTERS, INC., )
)
Defendant-Appellee. )

## NOTICE OF ATTORNEY'S LIEN

### VIA CERTIFIED MAIL

LensCrafters, Inc.
4000 Luxottica Place
Mason, OH 45040

YOU ARE HEREBY NOTIFIED that pursuant to ILCS 770 § 5/1, as the undersigned attorney for plaintiff Janet Agranoff and the class in the above-referenced action, I claim a lien in the amount of $73,500.00 on the cause of action of Agranoff and the class for services rendered as their attorney in this cause, which lien shall attach to any verdict, report, determination, decision, judgment, settlement or final order in favor of Agranoff and the class, and the proceeds thereof in whatever hands they may come. The recovery to which the undersigned's lien attaches may be described as follows: the claim of Brian C. Witter ("Witter") is for reasonable compensation based on actual hours billed to the above action. The lien and claim in the amount of $73,500 represents Witter's lodestar at rates comparable to those of his co-counsel in this action.

Dated: April 15, 2008

Brian C. Witter

Law Offices of Brian C. Witter, *PC*
Brian C. Witter, *P C*
111 West Jackson Blvd.
Suite 1100
Chicago, IL 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
*brianewitterpc@gmail.com*

## DECLARATION OF BRIAN C. WITTER

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows, under penalties of perjury:

1.   I am the attorney named above. I have read the attached *NOTICE OF ATTORNEY'S LIEN* and am familiar with its contents. At all times relevant to the notice, I was and have been licensed to practice law in the State of Illinois and have been admitted to the United States District Court for the Northern District of Illinois, and the United States Court of Appeals, Seventh Circuit. To the best of my knowledge, the contents of the notice are true and correct.

Brian C. Witter

Dated: April 15, 2008

Law Offices of Brian C. Witter, *PC*

Brian C. Witter, *PC*
111 West Jackson Blvd.
Suite 1100
Chicago, IL. 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
*brianwitterpc@gmail.com*

2

## CERTIFICATE OF SERVICE

The undersigned attorney, Brian C. Witter, certifies that on Tuesday June 9, 2008, he served the foregoing *NOTICE OF ATTORNEY'S LIEN* upon the following parties, via Certified Mail:

LensCrafters, Inc.
4000 Luxottica Place
Mason, OH 45040

Counsel:    Joseph A. DiBenedetto, Esq.
Winston & Strawn LLP 200 Park Avenue
New York, New York
10166-4193

Brian C. Witter

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICAL CIRCUIT
DUPAGE COUNTY, WHEATON, ILLINOIS

| | | |
|---|---|---|
| JANINCE KOINEWKO, on behalf of herself and all others similarly situated, | ) ) ) | JUN 10 200 |
| Plaintiff, | ) ) | Case No. 06-CH- 0617 |
| v. | ) ) | |
| SPINNAKER COVE HOMEOWNER'S ASSOLCIATION, et al, | ) ) ) | |
| Defendants. | ) | |

## NOTICE OF ATTORNEY'S LIEN

VIA CERTIFIED MAIL

Board of Directors
Spinnaker Cove Homeowner's Association
Carol Stream, Il 60188

YOU ARE HEREBY NOTIFIED that pursuant to ILCS.770 § 5/1, as the undersigned attorney for plaintiff Janice Konewko and the class in the above-referenced action, I claim a lien in the amount of $26,250.00 on the cause of action of Konewko and the class for services rendered as their attorney in this cause, which lien shall attach to any verdict, report, determination, decision, judgment, settlement or final order in favor of Konewko and the class, and the proceeds thereof in whatever hands they may come. The recovery to which the undersigned's lien attaches may be described as follows: the claim of Brian C. Witter is $26,250.00 is for reasonable compensation based on hours billed at his regular and customary rate for professional services rendered on behalf of Janice Konewko and the class in the above action.

Dated: April 15, 2008

Brian C. Witter

Law Offices of Brian C. Witter, *PC*
Brian C. Witter, *PC*
111 West Jackson Blvd.
Suite 1100
Chicago, IL 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
briancwitterpc@gmail.com

## CERTIFICATION OF BRIAN C. WITTER

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Brian C. Witter

Dated: April 15, 2008

Law Offices of Brian C. Witter, *PC*
Brian C. Witter, *PC*
111 West Jackson Blvd.
Suite 1100
Chicago, IL, 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
briancwitterpc@gmail.com

## CERTIFICATE OF SERVICE

The undersigned attorney, Brian C. Witter, certifies that on Tuesday June 9, 2008, he served the foregoing *NOTICE OF ATTORNEY'S LIEN* upon the following parties, via Certified Mail:

Board of Directors
Spinnaker Cove Homeowner's Association
Carol Stream, Il 60188

Counsel:      Thomas P. Scherschel
              Smith Amundsen, LLC
              3815 E. Main St. Ste. A-1
              Saint Charles, IL 60174-2488

Brian C. Witter

*Eckhaus*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Pamela Eckhaus, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 06-CV-00985 |
| vs. | ) ) | Judge Block |
| Nature's Pillows, Inc., Bill McAllister, Brad Specter, and Steve Silbiger, | ) ) ) | Magistrate Matsumoto |
| Defendants. | ) ) | |

## NOTICE OF ATTORNEY'S LIEN

**VIA CERTIFIED MAIL**

**STEVE SILBIGER**
**H.C.T.V. Inc.**
**STUMP RD**
**MONTGOMERYVILLE PA 18936**

**YOU ARE HEREBY NOTIFIED** that pursuant to New York Judiciary Law § 475 and ILCS 770 § 5/1, as the undersigned attorney for plaintiff Pamela Eckhaus ("Eckhaus") and the class in the above-referenced action, I claim a lien in the amount of $105, 000.00 on the cause of action of Eckhaus and the class for services rendered as their attorney in this cause, which lien shall attach to any verdict, report, determination, decision, judgment, settlement or final order in favor of Eckhaus and the class, and the proceeds thereof in whatever hands they may come. The recovery to which the undersigned's lien attaches may be described as follows: the claim of Brian C. Witter ("Witter") is for reasonable compensation based on actual hours billed to the above action relative to all attorney hours billed to the action by attorneys on behalf of Eckhaus and the class. The lien and claim in the amount of $105,000 represents Witter's pro rata share of the $300,000 in plaintiffs' attorneys' fees preliminary approved by the Honorable Frederic Block on March 15, 2008. The lien and claim in the amount of $105,000 represents 32 percent of all hours billed by plaintiffs' counsel to the action.

Dated: April 15, 2008

Brian C. Witter

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICAL CIRCUIT
DUPAGE COUNTY, WHEATON, ILLINOIS

In re the Estate of Scott Hudson,          )
                                            )
          Deceased,                         )
                                            )      Case No. 05-P-150
                                            )
                                            )
                                            )
                                            )

NOTICE OF ATTORNEY'S LIEN

VIA CERTIFIED MAIL
Matthew T. Caruso, Esq.
Roberts & Caruso
411 W. Wesley
Wheaton, IL 60187-4925

Special Administrator
Estate of Scott Hudson

YOU ARE HEREBY NOTIFIED that pursuant to ILCS 770 § 5/1, as the undersigned attorney for Joanne Hudson, as the court-appointed guardian of Kyle Hudson ("Guardian"), the minor child of the deceased and the deceased's beneficiary, I claim a lien in the amount of $14,000.00 on the cause of action of the Guardian for services rendered as her attorney in this cause, which lien shall attach to any verdict, report, determination, decision, judgment, settlement or final order in favor of the Guardian, and the proceeds thereof in whatever hands they may come. The recovery to which the undersigned's lien attaches may be described as follows: the claim of Brian C. Witter for $14,000.00 is for reasonable compensation based on hours billed at his regular and customary rate for professional services rendered on behalf of the Guardian in the above action.

Dated: April 15, 2008

Brian C. Witter

Law Offices of Brian C. Witter, PC
Brian C. Witter, PC
111 West Jackson Blvd.
Suite 1100
Chicago, IL 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
brianewitterpc@ymail.com

## CERTIFICATION OF BRIAN C. WITTER

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Dated: April 15, 2008

Law Offices of Brian C. Witter, PC
Brian C. Witter, PC
111 West Jackson Blvd.
Suite 1100
Chicago, IL, 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
brianwitterpc@gmail.com

# EXHIBIT 6

1

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2

3     - - - - - - - - - - - - - X
                              :
      ECKHAUS,
4                                        06 CV 985
           Plaintiff,
5

6             -against-              :
                                         United States Courthouse
                                         Brooklyn, New York
7     NATURES PILLOWS,

8          Defendant.             :
                                         June 23, 2008
9     - - - - - - - - - - - - - X    10:00 o'clock a.m.

10                       TRANSCRIPT OF FAIRNESS HEARING
                      BEFORE THE HONORABLE FREDERIC BLOCK
11                       UNITED STATES DISTRICT JUDGE

12    APPEARANCES:

13    For the Plaintiff:      BRIAN WITTER, ESQ

14                            DiTOMMASO & LUBIN.
                              17W 220 22nd Street.
15                            Oakbrook Terrace, Illinois 60181
                              BY:   VINCENT L. DiTOMMASO, ESQ., and
16                                  BRIAN BROMBERG, ESQ.

17    For the Defendant:      McELROY & ASSOCIATES, LLP.
                              202A North Monroe Street
18                            Media, PA 19063
                              BY:  RICHARD P. McELROY,, ESQ.
19

20
      Court Reporter:         Henry R. Shapiro
21                            225 Cadman Plaza East
                              Brooklyn, New York
22                            718-613-2509

23

24

25    Proceedings recorded by mechanical stenography, transcript
      produced by computer.

                  HENRY SHAPIRO      OFFICIAL COURT REPORTER

2

1          THE COURT:  Eckhaus versus Natures Pillows.

2              We're here for a hearing to see whether or not

3     anybody has any objection to the proposed settlement.  I have

4     an amended approval order. Anyone here who wishes to speak.

5          MR. DiTOMMASO:  Vincent DiTommaso. If I could

6     briefly.

7          THE COURT:  Apparently, there is nobody here to

8     question the settlement.

9          MR. DiTOMMASO:  That's right, Judge.

10         THE COURT:  What do you wish to say?

11         MR. DiTOMMASO:  Just briefly, your Honor, we gave

12    notice to the class.  There was no objection whatsoever to the

13    settlement. No opt outs to the settlement.  We've itemized the

14    amount of time that we had in this case to support the

15    agreement on the fee issue and the amount of cost that we

16    paid.

17             As a result there being no opt outs or objectors,

18    we're asking the Court to enter the final approval order that

19    we submitted with our motion.

20             This order has been approved by all counsel except

21    Mr. Witter who has not objected to it. We'd ask that the Court

22    enter the final approval order.

23         THE COURT:  How is it amended, by the way?

24         MR. DiTOMMASO:  Mr. Witter, submitted an amendment to

25    the final approval order, which we object to.  We do not agree

3

1    with Mr. Witter's amended final order.

2         THE COURT:  I have an amended final approval order

3    here that was submitted by Mr. Witter. I'm a little unclear

4    what it is I should sign.

5         MR. DiTOMMASO:  We're asking the Court to sign the

6    final approval order.

7         THE COURT:  What is the difference between them?

8         MR. DiTOMMASO:  The difference is, Judge, Mr. Witter

9    wants this Court to act as some type of body as to

10   distribution of fees to him and solely to him related to the

11   amount of the fee distribution.

12        THE COURT:  Where specifically are you speaking of?

13        MR. WITTER:  Brian Witter. In paragraph eight, there

14   is a tiny amount that just allocates fees slightly differently

15   than the order that I never saw by the way.

16        THE COURT:  Tell me what the difference is.  This is

17   all about legal fees. Nobody is getting any money except the

18   lawyers, right?

19        MR. WITTER:  Correct.

20        THE COURT:  My favorite type of class action.

21        MR. DiTOMMASO:  We sent your Honor a copy of the

22   complaint against Mr. Witter, which is pending in Illinois. We

23   submitted it this morning. This is not the appropriate forum

24   for a dispute as to the fees.

25        THE COURT:  You are not here to challenge Mr.

4

1  Witter's proposal, other then the method by which he's going

2  to get paid, is that what you are trying to tell me?

3  　　　　　MR. DiTOMMASO:  We're here to challenge his proposed

4  amended order based upon the way he wishes to have to Court

5  distribute fees to him.

6  　　　　　The settlement agreement and the proposed -- the

7  proposed order specifically says that the plaintiffs' counsel

8  will be paid a lump sum of money, and it's between plaintiffs'

9  counsel, based upon their agreement how that should be

10  distributed.

11  　　　　　Mr. Witter submitted an amended order --

12  　　　　　THE COURT:  He proposes that the Court prove payment

13  by defendants of $298,000 to counsel for attorney's fees and

14  costs.  Do you object to that, yes or no?

15  　　　　　MR. DiTOMMASO:  We do.

16  　　　　　THE COURT:  You don't think he's entitled to

17  $298,000?

18  　　　　　MR. DiTOMMASO:  He's not entitled to anything. That

19  is what is pending in Illinois, in an action that we filed

20  against Mr. Witter.

21  　　　　　THE COURT:  What is it that you think he is entitled

22  to get as counsel fees?

23  　　　　　MR. DiTOMMASO:  Mr. Witter entered into two written

24  agreements with our firm.  He did not act -- he has no

25  relationship with the plaintiff in this case.  He's not party

5

1  to any agreement with the plaintiff.

2          THE COURT:  Just one second.  Your proposed agreement

3  says that the Court approves payment by defendants of $298,000

4  to class counsel for attorney fees and cost.  That is what his

5  says.  What is the difference?

6          MR. DiTOMMASO:  The judge--

7          THE COURT:  Let us take it one at a time.  Is that

8  correct.

9          MR. DiTOMMASO:  Yes, your Honor.

10          THE COURT:  That is correct?

11          MR. DiTOMMASO:  That is correct.

12          THE COURT:  $298,000.

13          MR. DiTOMMASO:  Yes, your Honor.

14          THE COURT:  You are not challenging that?

15          MR. DiTOMMASO:  No.

16          THE COURT:  Then the next sentence:  The Court finds

17  the attorney's fees reasonable and in light of the attorneys'

18  conduct out of pocket cost incurred by class counsel. You

19  agree with that sentence?

20          MR. DiTOMMASO:  Yes, your Honor.

21          THE COURT:  So how we're focusing on what the problem

22  is.

23          The next sentence: Defendants shall transmit to

24  Witter and DiTommaso & Lubin, within 14 days of the effective

25  date, a check in the amount of $105,000.  From thereon you

HENRY SHAPIRO          OFFICIAL COURT REPORTER

6

1   don't agree with any of that?

2           MR. DiTOMMASO:  Yes, your Honor.

3           THE COURT:  You don't think you send a check of

4   $105,000 paid out to Brian C. Witter?

5           MR. DiTOMMASO:  Correct.

6           THE COURT:  Is there any problem with that?

7           MR. DiTOMMASO:  There is a huge problem with that,

8   your Honor. First of all, none of the plaintiffs agreed to

9   that and there are numerous other plaintiffs' attorneys.

10          The amount -- the allegation of fees of $298,000 is

11  in my opinion, Judge, is based upon the agreement that exists

12  between plaintiffs' counsel.  This Court should not --

13          THE COURT:  You have something there that sounds

14  correct to me. You propose that the simple check be made out

15  to DiTommaso & Lubin, they are the class counsel, right?

16          MR. WITTER:  That is incorrect, your Honor.

17          MR. DiTOMMASO:  If I may point out to Mr. Witter's

18  affidavit, which he filed in this case in support of the

19  motion for preliminary approval, I'm quoting from it, Judge.

20  Herself what Mr. Witters said --

21          THE COURT:  What is wrong with making a check out for

22  $298,000 to DiTommaso & Lubin?

23          What is wrong with that?

24          MR. WITTER:  The problem is, I won't get paid on the

25  case in which I did more work than any of the plaintiffs'

HENRY SHAPIRO        OFFICIAL COURT REPORTER

7

1   counsel by far on this $105,000, your Honor.

2           THE COURT:   It's not for me to decide how the money

3   should be attributed. That is a separate fight the two of you

4   are fighting and be my guest.

5           Legally, the money goes to DiTommaso & Lubin.

6           MR. WITTER:   That is not correct.  The preliminarily

7   approval order, Judge, there are co-lead counsel in this case,

8   and I'm one of the co-lead counsel, and DiTommaso & Lubin is

9   the other co-lead counsel. So we should decide equally on the

10  basis of your Honor's order on preliminary approval and what

11  happened was --

12          THE COURT:   How do you divide $105,000 to you and

13  $193,000?  Unfortunately you have a problem. How do you make

14  that division?

15          MR. WITTER:   Judge --

16          THE COURT:   Is that your arbitrary way of saying how

17  much I want?

18          MR. WITTER:   It's not arbitrary at all. I went

19  through everyone's times records, I looked at the percentage

20  of time --

21          THE COURT:   Why should I be involved in the dispute

22  between you two? Why can't I make a check out to the two of

23  you, and fight over it whichever way you want?

24          MR. WITTER:   Here's what happened, your Honor.  We're

25  both co-counsel, DiTommaso & Lubin and me.

---

8

1        MR. DiTOMMASO:  That is not quite accurate.

2        THE COURT:  He doesn't agree with that.  What do the

3  papers say who is lead counsel? Lead counsel is designated as

4  whom?

5        MR. DiTOMMASO:  If I may answer the question?

6        THE COURT:  Who?

7        MR. DiTOMMASO:  Vincent DiTommaso, Peter Lubin and

8  Brian Witter.  Mr. Witter has only in this case acted, even

9  his own affidavit says it, through the DiTommaso & Lubin law

10 firm.  This dispute is pending in Illinois, as far as I'm

11 concerned Judge, the papers in Illinois have been filed, it's

12 no different if he acted as one of our associates and now he's

13 trying to get paid separately.

14       THE COURT:  Why don't I have it made out to both of

15 you jointly?

16       MR. DiTOMMASO:  I would even go a step further, if

17 your Honor pleases?  Let's put it in escrow account.  Because

18 there is the court in Illinois that is going to decide these

19 issues.  I have no problem with that.

20       THE COURT:  Whoever has been designated as lead

21 counsel, that seems to be the right way to do it. I will not

22 get involved in deciding whether you, Mr. Witter, is to get

23 $105,000 or $100,000.  It does not seem appropriate to me.

24       MR. WITTER:  I understand it.

25       Could I make one additional point?  I understand your

9

1   Honor's concern about wading in the middle of any of this.

2   What happened even as one of the co-counsel, I never saw this

3   order that they submitted.  They submitted it, they didn't

4   involve me. They sent it in without having me review it or

5   have any involvement --

6           THE COURT:  This is all about lawyers getting paid.

7           MR. WITTER:  What I did in amending the order was

8   agree with defense counsel, it's not as if I acted

9   unilaterally.  I spoke about this with Mr. McElroy and I

10  explained the situation and Mr. McElroy agreed with me and

11  he's representing the defendants here today and he's prepared,

12  I believe, to support the amended approval.

13          THE COURT:  Lead counsel apparently, my clerk tells

14  me, as of March 12th, is DiTommaso, Lubin and Witter.  We'll

15  have the check made out collectively. It might be a problem to

16  do special, account pending the ultimate determination in

17  Illinois.

18          The case quite candidly leaves me with a bad taste in

19  my mouth. All about greedy lawyers, appears superficially,

20  taking advantage to get money for themselves.

21          What are the plaintiffs getting here?  She is getting

22  2000.

23          MR. DiTOMMASO:  It's a different notice, a different

24  writing as to what the product does, your Honor. What the

25  settlement doesn't do, they still have a right, all plaintiffs

HENRY SHAPIRO        OFFICIAL COURT REPORTER

10

1 who purchased the product, if they have a problem with the

2 particular product, that right --

3        THE COURT: How does somebody get a case like this?

4 Who would want to take a case like this?

5        MR. DiTOMMASO: We hired an expert and the expert

6 made these tests and things and --

7        THE COURT: Who cares.

8        MR. DiTOMMASO: It turned out there was a dispute as

9 to whether our expert actually did it right or not. Quit

10 frankly, your Honor --

11        THE COURT: Don't you people have better things to do

12 as lawyers?

13        MR. DiTOMMASO: I do.

14        I apologize, your Honor. I truly do. I'm sorry we're

15 here discussing the fee issue.

16        THE COURT: It's unfortunate. I will sign neither of

17 these. I will put in DiTommaso, Lubin and Witter. It won't

18 be negotiable until you decide to sign your names to it into a

19 special account. What else can I do?

20        MR. DiTOMMASO: I certainly respect that decision and

21 I think it works well.

22        THE COURT: Anybody else wish to say anything?

23        MR. McELROY: Richard McElroy. I have no interest in

24 this dispute whatsoever.

25        THE COURT: You are representing the defendant?

HENRY SHAPIRO      OFFICIAL COURT REPORTER

Case 1:08-cv-04720    Document 13-9    Filed 08/28/2008    Page 12 of 15

11

1          MR. McELROY:  Yes, your Honor.

2          THE COURT:  There is nothing else that we have do

3    today.   Have a good day.

4          MR. DiTOMMASO:  Thank you.

5          MR. WITTER:  Thank you.

6          MR. McELROY:  Thank you.

7                         ********

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

RE: ECHHAUS V NATURE'S PILLOWS YOU Credo It!™    $100,000 - HONORABI
JUNE 23, 200

| | | |
|---|---|---|
| **-$-** | | |
| $100,000 [1]  8:23 | | |
| $105,000 [5]  5:25 | | |
| 6:4   7:1   7:12 | | |
| 8:23 | | |
| $193,000 [1]  7:13 | | |
| $298,000 [6]  4:13 | | |
| 4:17   5:3   5:12 | | |
| 6:10   6:22 | | |
| **---** | | |
| -against [1]   1:5 | | |
| **-0-** | | |
| 06 [1]   1:4 | | |
| **-1-** | | |
| 10:00 [1]   1:9 | | |
| 12th [1]  9:14 | | |
| 14 [1]   5:24 | | |
| 17W [1]  1:14 | | |
| 19063 [1]   1:18 | | |
| **-2-** | | |
| 2000 [1] 9:22 | | |
| 2008 [1] 1:8 | | |
| 202A [1]   1:17 | | |
| 220 [1]   1:14 | | |
| 225 [1]   1:21 | | |
| 22nd [1] 1:14 | | |
| 23 [1]   1:8 | | |
| **-6-** | | |
| 60181 [1]   1:15 | | |
| **-7-** | | |
| 718-613-2509 [1] | | |
| 1:22 | | |
| **-9-** | | |
| 985 [1]  1:4 | | |
| **-A-** | | |
| a.m [1]   1:9 | | |
| account [3]   8:17 | | |
| 9:16   10:19 | | |
| accurate [1]   8:1 | | |
| act [2]   3:9   4:24 | | |
| acted [3] | | |
| 8:12   9:8 | | |
| action [1]   3:20 | | |
| 4:19 | | |
| additional [1]  8:25 | | |
| advantage [1]  9:20 | | |
| affidavit [2]  6:18 | | |
| 8:9 | | |

against [2]   3:22
4:20
agree [5] 2:25   5:19
6:1   8:2   9:8
agreed [2]   6:8
9:10
agreement [6]   2:15
4:6   4:9   5:1
5:2   6:11
agreements [1]  4:24
allegation [1]   6:10
allocates [1]   3:14
amended [7]   2:4
2:23   3:1   3:2
4:4   4:11   9:12
amending [1]   9:7
amendment [1]  2:24
amount [6]   2:14
2:15   3:11   3:14
5:25   6:10
answer [1]   8:5
apologize [1]   10:14
APPEARANCES [1]
1:12
appropriate [2] 3:23
8:23
approval [10]   2:4
2:18   2:22   2:25
3:2   3:6   6:19
7:7   7:10   9:12
approved [1]   2:20
approves [1]   5:3
arbitrary [2]   7:16
7:18
associates [2]   1:17
8:12
attorney [1]   5:4
attorney's [2]   4:13
5:17
attorneys [1]   6:9
attorneys' [1]   5:17
attributed [1]   7:3

**-B-**
bad [1]  9:18
based [3]   4:4
4:9   6:11
basis [1] 7:10
better [1]   10:11
between [4]   3:7
4:8   6:12   7:22
BLOCK [1]   1:10
body [1] 3:9
Brian [5]   1:13
1:16   3:13   6:4
8:8
briefly [2]   2:6
2:11
BROMBERG [1]
1:16
Brooklyn [1]   1:6
1:21

**-C-**
C [1]   6:4
Cadman [1]   1:21
candidly [1]   9:18
cares [1] 10:7
case [9]  2:14   4:25
6:18   6:25   7:7
8:8   9:18   10:3
10:4
certainly [1]   10:20
challenge [2]   3:25
4:3
challenging [1] 5:14
check [6]   5:25
6:3   6:14   6:21
7:22   9:15
class [5] 2:12   3:20
5:4   5:18   6:15
clerk [1] 9:13
co-counsel [2]  7:25
9:2
co-lead [3]   7:7
7:8   7:9
collectively [1] 9:15
complaint [1]   3:22
concern [1]   9:1
concerned [1]   8:11
conduct [1]   5:18
copy [1] 3:21
correct [7]   3:19
5:8   5:10   5:11
6:5   6:14   7:6
cost [3]  2:15   5:4
5:18
costs [1] 4:14
counsel [18]   2:20
4:7   4:9   4:13
4:22   5:4   5:18
6:12   6:15   7:1
7:7   7:8   7:9
8:3   8:3   8:21
9:8   9:13
court [53]   1:1
1:20   2:1   2:7
2:10   2:18   2:21
2:23   3:2   3:5
3:7   3:9   3:12
3:16   3:20   3:25
4:4   4:12   4:12
4:16   4:21   5:2
5:3   5:7   5:10
5:12   5:14   5:16
5:16   5:21   6:3
6:6   6:12   6:13
6:21   7:2   7:12
7:16   7:21   8:2
8:6   8:14   8:18
8:20   9:6   9:13
10:3   10:7   10:11
10:16   10:22  10:25
11:2
Courthouse [1] 1:6
CV [1]   1:4

**-D-**
date [1]  5:25
days [1] 5:24
decide [1]   7:2
7:9   8:18   10:18
deciding [1]   8:22
decision [1]   10:20
defendant [3]   1:8
1:17   10:25
defendants [4]  4:13
5:3   5:23   9:11
defense [1]   9:8
designated [2]  8:3
8:20
determination [1]
9:16
difference [4]   3:7
3:8   3:16   5:5
different [3]   8:12
9:23   9:23
differently [1]  3:14
discussing [1]  10:15
dispute [5]   3:24
7:21   8:10   10:8
10:24
distribute [1]   4:5
distributed [1]  4:10
distribution [2] 3:10
3:11
DISTRICT [3]  1:1
1:1   1:11
DiTommaso [44]
1:14   1:15   2:5
2:5   2:9   2:11
2:24   3:5   3:8
3:21   4:3   4:15
4:18   4:23   5:6
5:9   5:11   5:13
5:15   5:20   5:24
6:2   6:5   6:7
6:15   6:17   6:22
7:5   7:8   7:25
8:1   8:5   8:7
8:7   8:9   8:16
9:14   9:23   10:5
10:8   10:13  10:17
10:20  11:4
divide [1]   7:12
division [1]   7:14
doesn't [2]   8:2
9:25

**-E-**
East [1]  1:21
EASTERN [1]  1:1
Eckhaus [2]   1:3
2:1
effective [1]   5:24
eight [1] 3:13
enter [2] 2:18   2:22
entered [1]   4:23
entitled [3]   4:16

4:18   4:21
equally [1]   7:9
escrow [1]   8:17
ESQ [4] 1:13   1:15
1:16   1:18
everyone's [1] 7:19
except [2]   2:20
3:17
exists [1]   6:11
expert [1]   10:5
10:5   10:9
explained [1]   9:10

**-F-**
FAIRNESS [1] 1:10
far [2]   7:1   8:10
favorite [1]   3:20
fee [2]  2:15   3:11
10:15
fees [10] 3:10   3:14
3:17   3:24   4:5
4:13   4:22   5:4
5:17   6:10
fight [2] 7:3   7:23
fighting [1]   7:4
filed [3] 4:19   6:18
8:11
final [6] 2:18   2:22
2:25   3:1   3:2
3:6
finds [1] 5:16
firm [2] 4:24   8:10
First [1] 6:8
focusing [1]   5:21
forum [1]   3:23
frankly [1]   10:10
FREDERIC [1] 1:10

**-G-**
goes [1]  7:5
good [1] 11:3
greedy [1]   9:19
guest [1] 7:4

**-H-**
hearing [2]   1:10
2:2
Henry [1]   1:20
Herself [1]   6:20
hired [1] 10:5
Honor [15]   2:11
3:21   5:9   5:13
5:20   6:2   6:8
6:16   7:1   7:24
8:17   9:24   10:10
10:14  11:1
Honor's [2]   7:10
9:1
HONORABLE [3]
1:10

**huge** [1] 6:7

**-I-**

**Illinois** [7] 1:15
3:22  4:19  8:10
8:11  8:18  9:17
**incorrect** [1] 6:16
**incurred** [1] 5:18
**interest** [1] 10:23
**involve** [1] 9:4
**involved** [2] 7:21
8:22
**involvement** [1]
9:5
**issue** [2] 2:15  10:15
**issues** [1] 8:19
**itemized** [1] 2:13

**-J-**

**jointly** [1] 8:15
**judge** [9] 1:11
2:9  3:8  5:6
6:11  6:19  7:7
7:15  8:11
**June** [1] 1:8

**-L-**

**L** [1] 1:15
**law** [1] 8:9
**lawyers** [4] 3:18
9:6  9:19  10:12
**lead** [4] 8:3  8:3
8:20  9:13
**leaves** [1] 9:18
**legal** [1] 3:17
**Legally** [1] 7:5
**light** [1] 5:17
**LLP** [1] 1:17
**looked** [1] 7:19
**Lubin** [11] 1:14
5:24  6:15  6:22
7:5  7:8  7:25
8:7  8:9  9:14
10:17
**lump** [1] 4:8

**-M-**

**March** [1] 9:14
**may** [2] 6:17  8:5
**McElroy** [8] 1:17
1:18  9:9  9:10
10:23  10:23  11:1
11:6
**mechanical** [1] 1:25
**Media** [1] 1:18
**method** [1] 4:1
**middle** [1] 9:1
**might** [1] 9:15
**money** [5] 3:17
4:8  7:2  7:5

9:20
**Monroe** [1] 1:17
**morning** [1] 3:23
**motion** [2] 2:19
6:19
**mouth** [1] 9:19

**-N-**

**names** [1] 10:18
**Natures** [2] 1:7
2:1
**negotiable** [1] 10:18
**neither** [1] 10:16
**never** [2] 3:15
9:2
**New** [3] 1:1  1:6
1:21
**next** [2] 5:16  5:23
**nobody** [2] 2:7
3:17
**none** [2] 6:8
**North** [1] 1:17
**nothing** [1] 11:2
**notice** [2] 2:12
9:23
**now** [1] 8:12
**numerous** [1] 6:9

**-O-**

**o'clock** [1] 1:9
**Oakbrook** [1] 1:15
**object** [2] 2:25
4:14
**objected** [1] 2:21
**objection** [2] 2:3
2:12
**objectors** [1] 2:17
**one** [6] 5:2  5:7
7:8  8:12  8:25
9:2
**opinion** [1] 6:11
**opt** [2] 2:13  2:17
**order** [16] 2:4
2:18  2:20  2:22
2:25  3:1  3:2
3:6  3:15  4:4
4:7  4:11  7:7
7:10  9:3  9:7
**outs** [2] 2:13  2:17
**own** [1] 8:9

**-P-**

**P** [1] 1:18
**paid** [7] 2:16  4:2
4:8  6:4  6:24
8:13  9:6
**papers** [2] 8:3
8:11
**paragraph** [1] 3:13
**particular** [1] 10:2

**party** [1] 4:25
**payment** [2] 4:12
5:3
**pending** [4] 3:22
4:19  8:10  9:16
**people** [1] 10:11
**percentage** [1] 7:19
**Peter** [1] 8:7
**Pillows** [2] 1:7
2:1
**plaintiff** [4] 1:4
1:13  4:25  5:1
**plaintiffs** [3] 6:8
9:21  9:25
**plaintiffs'** [5] 4:7
4:8  6:9  6:12
6:25
**Plaza** [1] 1:21
**pleases** [1] 8:17
**pocket** [1] 5:18
**point** [2] 6:17  8:25
**preliminarily** [1]
7:6
**preliminary** [2] 6:19
7:10
**prepared** [1] 9:11
**problem** [8] 5:21
6:6  6:7  6:24
7:13  8:19  9:15
10:1
**Proceedings** [1]
1:25
**product** [3] 9:24
10:1  10:2
**proposal** [1] 4:1
**propose** [1] 6:14
**proposed** [5] 2:3
4:3  4:6  4:7
5:2
**proposes** [1] 4:12
**prove** [1] 4:12
**purchased** [1] 10:1
**put** [2] 8:17  10:17

**-Q-**

**Quit** [1] 10:9
**quite** [2] 8:1  9:18
**quoting** [1] 6:19

**-R-**

**R** [1] 1:20
**reasonable** [1] 5:17
**recorded** [1] 1:25
**records** [1] 7:19
**related** [1] 4:25
**relationship** [1] 4:25
**Reporter** [1] 1:20
**representing** [2]
9:11  10:25
**respect** [1] 10:20

**result** [1] 2:17
**review** [1] 9:4
**Richard** [2] 1:18
10:23
**right** [7] 2:9  3:18
6:15  8:21  9:25
10:2  10:9

**-S-**

**saw** [2] 3:15  9:2
**says** [4] 4:7  5:3
5:5  8:9
**second** [1] 5:2
**see** [1] 2:2
**seem** [1] 8:23
**send** [1] 6:3
**sent** [2] 3:21  9:4
**sentence** [3] 5:16
5:19  5:23
**separate** [1] 7:3
**separately** [1] 8:13
**settlement** [6] 2:3
2:8  2:13  2:13
4:6  9:25
**shall** [1] 5:23
**Shapiro** [1] 1:20
**sign** [4] 3:4  3:5
10:16  10:18
**simple** [1] 6:14
**situation** [1] 9:10
**slightly** [1] 3:14
**solely** [1] 3:10
**sorry** [1] 10:14
**sounds** [1] 6:13
**speak** [1] 2:4
**speaking** [1] 3:12
**special** [2] 9:16
10:19
**specifically** [2] 3:12
4:7
**spoke** [1] 9:9
**States** [3] 1:1
1:6  1:11
**stenography** [1]
1:25
**step** [1] 8:16
**still** [1] 9:25
**Street** [2] 1:14
1:17
**submitted** [7] 2:19
2:24  3:3  3:23
4:11  9:3  9:3
**sum** [1] 4:8
**superficially** [1]
9:19
**support** [3] 2:14
6:18  9:12

**-T-**

**taking** [1] 9:20

**taste** [1] 9:18
**tells** [1] 9:13
**Terrace** [1] 1:15
**tests** [1] 10:6
**Thank** [3] 11:4
11:5  11:6
**themselves** [1] 9:20
**thereon** [1] 5:25
**through** [2] 7:19
8:9
**times** [1] 7:19
**tiny** [1] 3:14
**today** [2] 9:11
11:3
**transcript** [2] 1:10
1:25
**transmit** [1] 5:23
**truly** [1] 10:14
**trying** [2] 4:2
8:13
**turned** [1] 10:8
**two** [4] 4:23  7:3
7:22  7:22
**type** [2] 3:9  3:20

**-U-**

**ultimate** [1] 9:16
**unclear** [1] 3:3
**understand** [2] 8:24
8:25
**unfortunate** [1] 10:16
**Unfortunately** [1]
7:13
**unilaterally** [1] 9:9
**United** [3] 1:1
1:6  1:11

**-V-**

**versus** [1] 2:1
**Vincent** [3] 1:15
2:5  8:7

**-W-**

**wading** [1] 9:1
**wants** [1] 3:9
**whatsoever** [2] 2:12
10:24
**whichever** [1] 7:23
**wish** [2] 2:10  10:22
**wishes** [2] 2:4
4:4
**within** [1] 5:24
**without** [1] 9:4
**Witter** [26] 1:13
2:21  2:24  3:3
3:8  3:13  3:13
3:19  3:22  4:11
4:20  4:23  5:24
6:4  6:16  6:24
7:6  7:15  7:18
7:24  8:6  8:8

RE: ECHHAUS V NATURE'S PILLOWS YOMdensdlt!™    Witter's – Yo
JUNE 23, 200

| | | | | |
|---|---|---|---|---|
| 8:22    8:24    9:7 | | | | |
| 9:14    10:17    11:5 | | | | |
| **Witter's [3]**    3:1 | | | | |
| 4:1    6:17 | | | | |
| **Witters [1]**    6:20 | | | | |
| **works [1]**    10:21 | | | | |
| **writing [1]**    9:24 | | | | |
| **written [1]**    4:23 | | | | |
| **wrong [2]**    6:21 | | | | |
| 6:23 | | | | |

**–X–**

**X [2]**    1:2    1:9

**–Y–**

**York [3] 1:1    1:6**
1:21

# EXHIBIT 7

FILED ORIGINAL
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 24 2008 ★
C I M
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PAMELA ECKHAUS, individually and )
on behalf of all others similarly situated, )
)
)    06 CV 00985
Plaintiff, )
)
-vs- )    Judge Block
)
)    Magistrate Matsumoto
NATURE's PILLOWS, INC., BILL McALLISTER )
BRAD SPECTER and STEVE SILBIGER, )
)
Defendants. )

## FINAL APPROVAL ORDER

### IT IS HEREBY ORDERED:

1.    On March 14, 2008 this Court preliminarily approved the Class Settlement

Agreement ("Agreement") reached between Pamela Eckhaus ("Plaintiff") and the class of

persons as defined in the Agreement ("Class"); and Defendants Nature's Pillows, Inc.,

Bill McAllister, Brad Specter, and Steve Silbiger ("Defendants").

2.    The notice given to the members of the class—publication in the USA Today

Weekend Edition on April 11 and 18, 2008—was reasonably calculated under the

circumstances to apprise them of the pendency of this action, all material elements of the

proposed settlement, their opportunity to exclude themselves from, to object to, or to

comment on the settlement and to appear at the settlement hearing. The notice was

reasonable and the best notice practicable under the circumstances; was due, adequate

and sufficient notice to all class members; and complied fully with the laws of the United

States and the Federal Rules of Civil Procedure, due process and any other applicable

rules of court. A full opportunity has been afforded to the members of the class to

participate in the hearing, and all members of the class and other persons wishing to be

of the attorney time and out-of-pocket costs incurred by Class Counsel. Defendants shall

transmit to DiTommaso & Lubin within fourteen (14) days of the Effective Date as

defined in the Settlement Agreement: (1) a check in the amount of $298,000 made out to jointly to

Vincent L. DiTommaso, Peter S. Lubin e Brian C. Witter;

~~DiTommaso & Lubin, which DiTommaso & Lubin will distribute among Class Counsel;~~

and (2) a check in the amount of $2000 made out to Pamela Eckhaus, which DiTommaso

& Lubin will transmit to Mrs. Eckhaus.

9.    Release of UrineGone™ Claims: Plaintiff and each member of the Settlement

Class, their spouses and former spouses, as well as the present, former, and future

respective heirs, executors, administrators, representatives, agents, attorneys, partners,

successors, predecessors-in-interest, and assigns of Plaintiff and each Settlement Class

member, pursuant to the Settlement Agreement and Amendment thereto approved by this

final order, have discharged Defendants, as well as all of their present, former, and future

direct and indirect parent companies, affiliates, subsidiaries, divisions, agents,

franchisees, successors, predecessors-in-interest; and all of the aforementioneds'

respective present, former, and future officers, directors, employees, shareholders,

attorneys, agents, vendors, couriers, independent contractors, and assigns, from any and

all rights, duties, obligations, claims, actions, causes of action, or liabilities, whether

arising under local, state, or federal law, whether by statute, contract, common law, or

equity, whether known or unknown, suspected or unsuspected, asserted or unasserted,

foreseen or unforeseen, actual or contingent, liquidated or unliquidated that, as of the date

that this Order is entered: (1) arise out of or are related in any way to any or all of the

acts, omissions, facts, matters, transactions, or occurrences that were directly or indirectly

alleged, asserted, described, set forth, or referred to in the case captioned *Eckhaus v.*

*Nature's Pillows, et al.*, Case No. 06-CV-985, currently pending in the United States District Court for the Eastern District Court of New York before the Honorable Fredrick Block ("the UrineGone™ Litigation"); (2) are, were, or could have arisen out of or been related in any way to the UrineGone™ Litigation.

10.    Nothing contained in the release agreed to by the parties and set forth in Paragraph 9 herein shall be construed to prevent or impede Settlement Class members, including the Class Representative, from (1) individually seeking product refunds for Urine Gone kits purchased from defendant Nature's Pillows, Inc.; or (2) individually bringing tort claims for property damage or personal injury arising from UrineGone™ products.

11.    Plaintiff and each member of the Settling Class is hereby fully and finally enjoined from prosecuting all claims released by the release agreed to in the Settlement Agreement and Amendment thereto, as set forth in Paragraph 9 herein.

12.    As provided for in the Settlement Agreement, Defendants have agreed to change the original television advertising spots for Urine Gone™, whether broadcast via television, radio, internet, print, or other means.

13.    The claims of Plaintiff and the class set forth in the Second Amended Complaint are dismissed with prejudice pursuant to the parties' settlement.

DATE June 23, 2008

Entered:    s/FB
_____
The Honorable Frederic Block
United States District Judge

# EXHIBIT 8

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
DU PAGE COUNTY, ILLINOIS

| | | |
|---|---|---|
| DiTOMMASO-LUBIN, P.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2008 CH 2378 |
| | ) | |
| LAW OFFICE OF | ) | |
| BRIAN C. WITTER, P.C. and | ) | |
| BRIAN C. WITTER, individually, | ) | |
| | ) | |
| Defendant. | ) | |

## PETITION FOR PRELIMINARY INJUNCTION

NOW COMES the Plaintiff, DiTOMMASO-LUBIN, P.C. ("DiTommaso"), by and through its attorneys, LARAIA & HUBBARD, P.C., and respectfully moves the Court for entry of an Order for Preliminary Injunction directing the Defendants, Brian C. Witter, individually and as Brian C. Witter, P.C. ("Witter"), to endorse a check that was submitted to DiTommaso pursuant to a settlement of one of the cases in which DiTommaso represented the plaintiffs therein, and in support thereof, states as follows :

1.    The entitled case involves an action for Declaratory Judgment and Injunctive Relief and pertains to the rights of DiTommaso and Witter under two independent contractor's agreements entered into between said parties and the business relationship arising therefrom. Said independent contractor's agreements and business relationship pertain to the hiring of Witter by DiTommaso to perform legal services for, and on behalf of, DiTommaso, which services pertained primarily to class action suits.

2.     DiTommaso terminated the independent contractor's agreement and business relationship with Witter, after which Witter filed Notices of Attorney's Lien in certain class action, and other, cases which Witter claimed he had performed services therein.

3.     One of said cases is General Case No.06-CV-00985, entitled *Pamela Eckaus, et al., v. Nature's Pillows, Inc., et al.*, filed in the United States District Court for the Eastern District of New York (the "Eckaus Case").

4.     The class action plaintiffs in the Eckaus Case were clients that were procured by DiTommaso through other counsel, and were the clients of DiTommaso.

5.     The Eckaus Case has been settled and a draft in payment of the attorneys' fees was issued on or about June 24, 2008 in the amount of $298,000.  The subject check was issued to DiTommaso and Witter because Witter had filed a Notice of Attorney's Lien in the Eckhaus Case (Exhibit "A") and the Court in said case stated that Witter's lien issues should be resolved in this case, which was already pending at that time.

6.     As set forth above, the plaintiffs in the Eckaus Case were DiTommaso's clients and never were the clients of Witter.  Witter only worked on the case as an independent contractor of DiTommaso and was paid by DiTommaso for all of the work which Witter performed as an independent contractor.

7.     Witter has no right, or claim, to attorneys' fees in the Eckaus Case.

8.     DiTommaso and Witter have been involved in settlement negotiations concerning the matters involved in the entitled litigation, including matters that could have been included in therein.  Pursuant to said settlement negotiations, the parties have tentatively agreed that DiTommaso would pay Witter a sum in settlement of Witter's claims, which claims DiTommaso denies.

9.    DiTommaso has requested that Witter endorse the settlement draft for attorneys' fees so that DiTommaso could distribute the proceeds thereof to DiTommaso and the three other co-counsel law firms who have an interest therein, or that Witter authorize DiTommaso to negotiate the draft on Witter's behalf so that DiTommaso could make said distributions; however, Witter has failed to provide said consent.

10.    Since the settlement draft was issued on June 24, 2008, it is essential that it be negotiated promptly so that it will not be refused upon presentment because of delay.

WHEREFORE, the Plaintiff, DiTOMMASO-LUBIN, P.C., respectfully prays the Court to enter an order directing Brian C. Witter to endorse the settlement draft and/or to authorize DiTommaso to endorse the settlement draft on Witter's behalf so that the proceeds of said settlement check can be distributed and for DiTommaso to retain the amount tentatively agreed upon by the parties as a settlement of Witter's claims for later distribution pursuant to the settlement and/or order of this Court.

DiTOMMASO- LUBIN, P.C.

STATE OF ILLINOIS    )
                     ) SS
COUNTY OF DU PAGE    )

DiTOMMASO-LUBIN, P.C., being first duly sworn on oath deposes and states that they are the Plaintiff in the above-entitled matter, that they have read the above and foregoing Motion for Preliminary Injunction, by them subscribed, and that the facts contained therein are true and correct.

DiTOMMASO-LUBIN, P.C.

SUBSCRIBED AND SWORN to before me this _28_ day of July, 2008.

_____
NOTARY PUBLIC

OFFICIAL SEAL
SANDRA A OBOS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/09/12

## CERTIFICATE OF ATTORNEY

I certify as attorney of record in this cause, that I have read the above pleading and that to the best of my knowledge, information and belief, formed after reasonable inquiry of my client, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the statements contained herein concerning the lack of knowledge, if any, are true and are not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

As Attorney and Not Personally

LARAIA & HUBBARD, P.C.
Attorney No. 007
1761 South Naperville Road, Suite 203
Wheaton, Illinois 60187
(630) 690-6800

# EXHIBIT 9

08CV4825
JUDGE PALLMEYER
MAGISTRATE JUDGE VALDEZ
CEM

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICAL CIRCUIT
## DUPAGE COUNTY, WHEATON, ILLINOIS

DiTommaso Lubin, PC,                    )
                                        )
        Plaintiff,                      )
                                        )   Case No. 08-CH-2378
        v.                              )
                                        )
Brian C. Witter, et al,                 )
                                        )
        Defendants.                     )
                                        )

### DEFENDANTS' 2-619(A)(4) MOTION TO DISMISS PLAINTIFF'S PETITION FOR PRELIMINARY INJUNCTION AS BARRED BY A PRIOR FEDERAL COURT JUDGMENT, AND FOR OTHER RELIEF

Defendants, by their undersigned counsel, hereby move pursuant to 735 ILCS 5/2-619(a)(4) to dismiss plaintiff's Petition for a Preliminary Injunction on the basis of the doctrine of *res judicata.*

1.    *Res judicata* precludes plaintiff's claims because the cause of action asserted is barred by a final Federal Court Judgment entered in the United States District Court for the Eastern District of New York on June 24, 2008 by the Honorable Frederic Block in the matter of *Eckhaus v. Nature's Pillows, et al., 06-CV-985.* All of the requirements for claim preclusion exist in this case; *i.e.,* (1) there are identical claims arising out of the same transaction and occurrence; (2) there are identical parties to the dispute; and (3) there is a final judgment on the merits. *See Baicker-Mckee, Janssen & Corr, Federal Civil Rules Handbook, § 2.20, pp. 137-142 (2008).*

2.    There can be no dispute in this case, for purposes of *res judicata* analysis, that prongs one and two—identical claims and parties—are satisfied. Plaintiff argued its contract

IMAGED
20080828004

claims in writing and at oral argument before Judge Block in New York; and the fee dispute that has now found its way to DuPage County, Illinois, involved the identical competing claimants. (The June 24, 2008 Final Judgment is attached hereto as Exhibit A.) [1]

3.    But, for *res judicata* purposes, was the final judgment one on the merits? Both the United States Supreme Court and the relevant Federal Rule of Civil Procedure, Fed. R. Civ. P. 54(a), answer this question emphatically and in the affirmative. It is well settled that when a trial judge enters judgment, so that the parties are in a position to either enforce or appeal the judgment, sufficient finality has been achieved for purposes of *res judicata*. *See, e.g., Clay v. United States, 537 U.S. 522, 526 (2003)*. ("[A] federal judgment becomes final for appellate review and claim preclusion purposes when the district court disassociates itself from the case, leaving nothing to be done at the court of first instance save the execution of the judgment." The plain language of Federal Rule 54 states that a judgment is any appealable decree or order.

4.    Plaintiff's failure to seek post-judgment relief in that Court bars relitigation of the claims in Illinois because plaintiff raised and vigorously argued these precise contract claims before Judge Block at the June 23, 2008 fairness hearing in Brooklyn, New York. Indeed, plaintiff not only argued these claims in the New York case, it attached the complaint in this cause to a Federal Court pleading setting forth the identical contract claims that it now asks an Illinois State Court Judge to review.[2]

5.    The June 24, 2008 Final Approval Order entered in the Eckhaus case awarded equal discretion over the distribution of $298,000 in attorneys' fees to Brian C. Witter ("Witter")

---

[1]    The transcript of proceedings of the fairness hearing in the Eckhaus matter, written by Mr. Henry Shapiro, an official court reporter in the EDNY, is attached hereto as Exhibit B.

[2]    *See* Eckhaus case, *06-CV-985*, EDNY Docket # 76, filed June 23, 2008: Docket Text: *Letter to Judge Block in Response to Brian Witter's Motion re: Final Approval and Entry of Amended Final Approval Order* (Attachments: # (1) Exhibit [DuPage County] Complaint.)

2

and DiTommaso Lubin ("D & L"). Accordingly, on July 7, 2008, defendants' counsel, Richard

P. McElroy, sent a check drawn by his client for $298,000 made out jointly to Witter and D & L

in satisfaction of the June 24, 2008 judgment.[3] This settlement check is currently non-negotiable

due to this dispute. (Mr. McElroy's letter transmitting the check is attached hereto as Exhibit C.)

6.      This Court must now enforce the New York Federal Court order and, accordingly,

dismiss plaintiff's Petition for a Preliminary Injunction. This Court should then order that the

$298,000 check be paid into the Clerk of the Court of the Eighteenth Judicial Circuit, DuPage

County, Wheaton, Illinois, and distributed equally to Witter and D & L as the New York

judgment requires and the Supremacy Clause of Article VI of the United States Constitution

demands. *U.S.Const. Art. VI § 2.*

7.      An Article III Court entered a final and appealable order in the New York case.

Plaintiff, inexplicably, let pass every federal post-judgment procedural deadline under both the

Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure. Plaintiff, due to

its eschewal of the rules and plain mandates of post-judgment federal practice, now finds itself

with no remedy whatsoever. Certainly its proposal to this Court to sit as an Appellate Court to

review a Federal Court judgment is a nonstarter.

8.      As one treatise writer has put it: "The suggestion that state courts should be free

to disregard the judgments of federal courts is so unthinkable that the rule rejecting any such

suggestion has been stated in an unbroken line of cases..." *Wright, Law of Federal Courts, 4th*

---

[3]      810 ILCS 5/3-110(a) controls the issue of identification of the person to whom the instrument is payable by looking to the intention of the issuer. In this case, following the instruction of the federal judgment to pay Witter and D & L "jointly," the payment on the $298,000 check can only be made with signatures of both parties. The express provision in the judgment that these monies are to be paid jointly—and the check itself having joint payees—thus requires that the funds be split evenly between Witter and D & L.

*Ed., (1983), p. 694.* Plaintiff's Petition invites a state court judge to do just that: disregard and overrule a final federal court judgment.[4]

9.      Federal judgments are immune to such collateral attacks by state courts. This is basic Federalism. In short, once an Article III Court has entered a final and appealable order—a judgment for purposes of Fed. R. Civ. P. 54(a)—while there are a variety of ways to seek post-judgment relief in the District Court or on appeal, the federal judgment will automatically preclude subsequent state court litigation since the Supremacy Clause of Article VI "mandates that those preclusive effects are binding on state courts." *18 Wright, Miller & Cooper § 4468, pp. 649-650.*[5]

10.     Illinois law, too, recognizes that the doctrine of *res judicata* "applies whether the antecedent case was determined by another Illinois Court, an administrative agency, a federal court, or a court of a sister state to which Illinois courts must give full faith and credit. Judgments rendered by these tribunals may not be subjected to a collateral attack except one which attacks the judgment as void rather than voidable." *Michael, Illinois Practice, Vol. IV, Civil Procedure Before Trial, § 41.5, pp. 310-311 (1989); 2007-08 Pocket Part, n. 3-8, and the numerous Illinois and federal court cases cited therein affirming the above basic principles..*

---

[4]      Although, given the bar of *res judicata*, the Court needn't concern itself with the substance of plaintiff's contract claim, it should be noted that plaintiff's claim is spurious in any case since the contract is with the wrong party—Brian C. Witter, PC, an Illinois professional Corporation, and not signed by Brian C. Witter individually. The New York judgment and the check in satisfaction thereof relate only to Mr. Witter individually. Further, the contract was terminated by plaintiff more than ninety days before the entry of the New York judgment and so can have no effect on this proceeding even if the bar of *res judicata* did not doom plaintiff's Petition for Preliminary Injunction in the first instance

[5]      *Restatement Second of Judgments, § 87,* puts the matter even more bluntly: "Federal law determines the effects under the rules of *res judicata* of a judgment of a federal court."

11.    It is not as if plaintiff was lacking for resources had it wanted post-judgment relief on its purported contract claim. The Federal Rules provide ample instance to alter, amend or reconsider a final and appealable judgment. For example, plaintiff could have availed itself of a Rule 59(e) motion to alter or amend the June 24, 2008 judgment within ten days of its entry. Plaintiff failed to so move. Plaintiff might also have filed a motion to reconsider Judge Block's ruling specifying that the fee award check should be issued jointly to Witter and D & L. Such a motion could have been made up to thirty days after the entry of judgment. Yet plaintiff filed no such motion. Further, plaintiff could have taken advantage of the local rules of the Eastern District of New York which afford litigants a relatively rare opportunity to have the fee matter sent to its Mandatory ADR program. (It is one of only ten United States District Courts in the country to have such a program.) Or, using again the local rules of Court, plaintiff might have asked for a special master to adjudicate its contract claims and attack the judgment in the federal court where the judgment was entered. Finally, of course, plaintiff could have appealed the judgment to the United States Court of Appeals for the Second Circuit, either opting for a straight appeal or moving in the reviewing court for some species of arbitration or court-annexed mediation. None of these many opportunities were taken up by plaintiff. So now it turns to an Illinois state court to overturn a federal judgment.

12.    "It is difficult to evoke sympathy for a plaintiff if the present claim is one which he could have presented in the prior case. Accordingly, if the claim could have been presented in the earlier case, few considerations weigh against the application of the doctrine [of res judicata]." *Ibid. at 314.*[6]

---

[6]    Plaintiff's attempt to have a state tribunal overturn a final federal court judgment may be reduced metaphorically as follows: A car, already critically low on fuel, sets out from Brooklyn on a journey. There are five service stations nearby along the car's route; and one in lower

5

13.    Plaintiff's Petition for Preliminary Injunction, which seeks to appeal a federal judgment in an Illinois trial court, should accordingly be dismissed pursuant to 735 ILCS 5/2-619(a)(4) on the basis of the doctrine of *res judicata*.

   **WHEREFORE**, defendants pray that their 2-619(a)(4) motion to dismiss be granted; that plaintiff's Petition for Preliminary Injunction be dismissed with prejudice as barred by the doctrine of *res judicata*; and that this Court enter an order requiring the Eckhaus attorneys' fees check in the amount of $298,000 to be paid into the Clerk of the Court of the Eighteenth Judicial Circuit, DuPage County, Wheaton, Illinois, and distributed equally to Witter and D & L as the New York judgment and applicable federal law requires.

Brian C. Witter, et al.

By: _____

One of his Attorneys

**Thomas G. Gardiner**
**Gardiner Koch & Weisberg**
**53 W. Jackson Blvd., Suite 950**
**Chicago, IL 60604-3849**
**(312) 362-0000**
**Attorney No. 29975**

---

Manhattan across the Brooklyn Bridge. The driver, however, drives blithely by these convenient fueling points and instead tries to drive the 800 miles to Wheaton, Illinois, to refuel, only to stall out in Hoboken, NJ. The car, like the case, should never have left New York.

# EXHIBIT 10

STATE OF ILLINOIS

UNITED STATES OF AMERICA

COUNTY OF DU PAGE

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT

Di Tommaso LuS.n, P.C.

PLAINTIFF

VS.

Brian C. Witter, et al,

DEFENDANT

**CASE NUMBER**

08 CH 2378

File Stamp Here

### ORDER

This matter coming on to be heard, the Court being fully advised in the premises and having jurisdiction of the subject matter, **IT IS HEREBY ORDERED:** This matter coming before the Court on Defendants *motion* motion for Substitution of judge and motion to Dismiss Plaintiff Petition for Injunction, the Court being fully advised in the premises and having jurisdiction, it is hereby ordered:

(1) Defendants motion for Substitution is granted.

(2) Plaintiffs have 14 days to file its Response to Defendants motion to Dismiss

(3) Defendants have 14 days after response is filed to file his Reply.

(4) Hearing on Defendants Motion to Dismiss is set for September 9, 2008 @ 9:30 a.m. in courtroom 1003.

Name: Laraia + Hubbard, PC ☐PRO SE

DuPage Attorney Number: 007

Attorney for: Plaintff

Address: 1761 S. Naperville Rd Ste3

City/State/Zip: Wheaton Il 60179

Telephone: 630 690-6800

ENTER:

**COPY**

Bonnie M Wheaton

Judge

Date: 8/4/08

# EXHIBIT 11

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRC
DU PAGE COUNTY, ILLINOIS

*Chris Kachiroubas*
****Electronically Filed****
Transaction Id: 1310114
2008CH002378
08/21/2008
KIM FRANCO
****************************

| | |
|---|---|
| DiTOMMASO-LUBIN, P.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| LAW OFFICE OF | ) |
| BRIAN C. WITTER, P.C. and | ) |
| BRIAN C. WITTER, individually, | ) |
| | ) |
| Defendant. | ) |

Case No. 2008 CH 2378

## ANSWER TO DEFENDANT'S 2-619 (A) (4) MOTION TO DISMISS

NOW COMES the Plaintiff, DiTOMMASO & LUBIN, P.C. ("Di-Tommaso"), by and through its attorneys, LARAIA & HUBBARD, P.C., and in Answer to Defendant's 2-619 (A) (4) Motion to Dismiss Plaintiff's Petition for Preliminary Injunction, states as follows:

1.    Plaintiff denies the allegations in paragraph 1 and affirmatively states the doctrine of *res judicata* does not preclude the Plaintiff's claim. Plaintiff denies that the elements for claim preclusion have been satisfied by the Defendant and the issues of the entitled matter have been resolved through the June 23, 2008 Final Approval Order entered in the United States District Court - Eastern District of New York, in *Pamela Eckhaus, etal. v. Natures Pillows, Inc., etal*, 2006 CV00985, (hereinafter referred to as "Federal matter" or "*Eckhaus*"). Plaintiff submits its Memorandum of Law in support of its denial.

2.    Plaintiff denies the allegations in paragraph 2, and affirmatively state, as argued more fully in its Memorandum of Law, *res judicata* is not an appropriate remedy or defense in this matter. Plaintiff further asserts the Defendant failed to attach the June 23, 2008 transcript to the Motion served upon the Plaintiff.

3.    Plaintiff neither admits nor denies the legal arguments of the Defendant as said argument are not allegations of fact and do not require an answer by the Plaintiff. The Plaintiff further denies that the doctrine of *re judicata* applies to this matter and affirmatively states the June 23, 2008 Court Order in *Eckhaus* does not rise to the level of a final judgment or appealable decree or Order in the entitled matter. In support thereof, see Plaintiff's Memorandum.

4.    Plaintiff denies that it was required to seek "post-judgment" relief against the Defendant in the *Eckhaus* matter. Plaintiff admits that it partially argued its position in opposition of Defendant's pursuit of entry of his proposed Approval Order of the *Eckhaus* Settlement, but Plaintiff affirmatively states the Defendant's pursuit of said approval order in *Eckhaus* was without merit and that his *res judicata* argument is improper. Plaintiff admits that it argued against the Defendant's pursuit of same and issuance of attorney's lien in the *Eckhaus* matter, as raised in Plaintiff's Complaint in the entitled matter. Plaintiff affirmatively states the Court in *Eckhaus* did not issue a ruling pertaining to the Plaintiff's argument in opposition of the Defendant's proposed order, but merely modified the Plaintiff's Final Approval Order and indicated the funds should be placed in a special account until the parties resolve the issue. Plaintiff further states the June 23, 2008 Order and attachment (Exhibit "A" of Defendant's Motion to Dismiss) is not dispositive of the issues in the entitled matter.

5.    Plaintiff denies that the June 23, 2008 Final approval Order awarded equal discretion over the distribution of the attorneys fees awarded in the *Eckhaus* matter. Plaintiff affirmatively states the *Eckhaus* Court placed both parties' names in the order for purposes of distributing the settlement draft foreseeing the parties placing the draft in a special account until the parties resolved their dispute regarding fees. (See transcript of the *Eckhaus* matter attached to Plaintiffs Memorandum of Law in Support of this Answer). Plaintiff admits that defense counsel in the

*Eckhaus* matter submitted the funds pursuant to his correspondence of July 7, 2008, and Plaintiff admits the draft is non-negotiable without the parties; execution of the draft. Plaintiff affirmatively states its Petition for Preliminary Injunction addresses said issue and seeks Defendant's execution of the draft.

6.    Plaintiff denies the allegations of paragraph 6 and affirmatively states the *Eckhaus* order of June 23, 2008 is not *res judiciata* and dispositive of the Plaintiff's Complaint or Petition for Preliminary Injunction.

7.    Plaintiff admits the *Eckhaus* June 23, 2008 order is a final and appealable order regarding the *Eckhaus* matter, but affirmatively states it is not a final judgment or order pertaining to the entitled matter. As argued more fully in its Memorandum of Law, *res judicata* does not apply in the entitled matter as the parties in the *Eckhaus* matter are not the same parties in the entitled matter, the cause of action in *Eckhaus* was different than the entitled matter. Also, the June 23, 2008 *Eckhaus* order is not a final adjudication or final judgment of the merits of the entitled matter. Plaintiff further denies the allegations of paragraph 7.

8.    Plaintiff neither admits nor denies the allegations and legal quote in paragraph 8 as said allegations are legal arguments which do not require Plaintiff's response, but if a response is required by the Court, the Plaintiff denies the application of the Defendant's allegations and legal theory as alleged in paragraph 8.

9.    Plaintiff denies that the *Eckhaus* matter precludes the Plaintiff's Petition for Preliminary Injunction and Complaint for Declaratory Judgment. Plaintiff further denies Defendant's continuous repeated argument of *res judicata*, as the June 23, 2008 Order in *Eckhaus* was not a judgment on the merits of the entitled matter, the parties in the *Eckhaus* matter were different, and the cause of action in the entitled matter is different than that of the *Eckhaus* matter.

Further, the Court in issuing the June 23, 2008 order in *Eckhaus* indicated that it foresaw the settlement funds being placed with a special account until the resolution of the issues in the entitled matter. The court did not rule on the merits of the Defendant's claim to attorneys fees in the *Eckhaus* matter, and simply ordered the settlement funds to be made out to the parties in the entitled matter so the funds could be deposited in a special account until the issue is resolved.

10.  Plaintiff neither admits nor denies the statements in paragraph 10 as said statement are legal conclusions which do not require an answer.

11.  Plaintiff neither admits nor denies the allegations of paragraph 11 as said allegations call for speculation as to what the *Defendant* believes the *Plaintiff* should have done. The Plaintiff denies its requirement to follow any of the Defendant's suggestions for post-judgment relief as the *Eckhaus* order is not a final adjudication of the entitled matter and does not bar, through *res judicata*, the Plaintiff's claims against the Defendant. Plaintiff further states it is not seeking appellate review of the *Eckhaus* court order through the court in the entitled matter as the *Eckhaus* order does not preclude or control the issues in the entitled matter.

12.  Plaintiff denies the Defendant's allegations and footnote in paragraph 12 and further states Defendant's footnote is inappropriate and baseless in law and fact pertaining to the entitled matter.

13.  Plaintiff denies the allegations in paragraph 13.

Wherefore, the Plaintiff, DiTOMMASO & LUBIN, P.C., respectfully requests this Honorable Court to enter an Order denying the Defendant's Motion to Dismiss pursuant to Section 2-619 (A)(4), and for other just relief this Court finds fair and equitable.

LARAIA & HUBBARD, P.C.
Attorneys for Plaintiff

## CERTIFICATE OF ATTORNEY

I certify as attorney of record in this cause, that I have read the above pleading and that to the best of my knowledge, information and belief, formed after reasonable inquiry of my client, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the statements contained herein concerning the lack of knowledge, if any, are true and are not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

_____
As Attorney and Not Personally

LARAIA & HUBBARD, P.C.
Attorney No. 007
1761 South Naperville Road, Suite 203
Wheaton, Illinois 60187
(630) 690-6800

# EXHIBIT 12

Case 1:08-cv-04720    Document 4    Filed 08/19/2008   Page 1 of 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

**AUGUST 19, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Pamela Eckhaus,                          )
                                         )
                                         )
                    Plaintiff,           )     Case No. 07-CV-99999
                                         )
         vs.                             )
                                         )     **08 C 4720**
Nature's Pillows *et al.*,               )
                                         )
                    Defendants.          )     **JUDGE ST. EVE**
                                               **MAGISTRATE JUDGE KEYS**

NOTICE OF FILING

***PLEASE TAKE NOTICE*** that on August 19, 2008, I filed and registered, via ECF, with
the Clerk of the United States District Court for the Northern District of Illinois, Eastern
Division, at the Everett McKinley Dirksen United States Courthouse, 219 South
Dearborn Street, Chicago, IL 60604, the attached ***Certified Final Judgment*** entered by
the Honorable Frederic Block, Senior District Judge, on June 24, 2008, in the United
States District Court for the Eastern District of New York, and initiated an action to
enforce said ***Certified Final Judgment***.

/s/Brian C. Witter

Brian C. Witter
**Law Offices of Brian C. Witter, P.C.**
111 West Jackson Boulevard
Suite 1100
Chicago, IL 60604
(312) 961-4942 (T)
(312) 386-9759 (F)
*briancwitterpc@gmail.com*
Attorney No. 6198156

**Counsel for Plaintiff and for Judgment Creditor**
**Brian C. Witter**

**Dated: August 19, 2008**

## CERTIFICATE OF SERVICE

I, Brian C. Witter, certify that on August 20, 2008, I served a copy of the foregoing *Notice of Filing* on the following counsel via United States Mail, First Class.


_/s/ Brian C. Witter_


Matthew H. Adler, Esq.
Pepper Hamilton, LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799

Counsel for Nature's Pillows, et al.

Joseph M. Laraia, Esq.
Laraia & Hubbard, P.C.
1761 S. Naperville Road, Suite 203
Wheaton, Illinois 60187

Counsel for co-judgment creditor
DiTommaso Lubin, PC

2

AUG-19-2008  13:29                                                    P.002

**FILED**

# AUGUST 19, 2008
## MICHAEL W. DOBBINS
## CLERK, U.S. DISTRICT COURT

FILED
U.S. DISTRICT COURT E.D.N.Y.
★ JUDGE ★
C I M
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAMELA ECKHAUS, individually and<br>on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    -vs-<br><br>NATURE's PILLOWS, INC., BILL McALLISTER<br>BRAD SPECTER and STEVE SILBIGER,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

(6 CV 00985

Judge Block

Magistrate Matsumoto

# 08 C 4720

## JUDGE ST. EVE
## MAGISTRATE JUDGE KEYS

## FINAL APPROVAL ORDER

**IT IS HEREBY ORDERED:**

1. On March 14, 2008 this Court preliminarily approved the Class Settlement
Agreement ("Agreement") reached between Pamela Eckhaus ("Plaintiff") and the class of
persons as defined in the Agreement ("Class"); and Defendants Nature's Pillows, Inc.,
Bill McAllister, Brad Specter, and Steve Silbiger ("Defendants").

2. The notice given to the members of the class—publication in the USA Today
Weekend Edition on April 11 and 18, 2008—was reasonably calculated under the
circumstances to apprise them of the pendency of this action, all material elements of the
proposed settlement, their opportunity to exclude themselves from, to object to, or to
comment on the settlement and to appear at the settlement hearing. The notice was
reasonable and the best notice practicable under the circumstances; was due, adequate
and sufficient notice to all class members; and complied fully with the laws of the United
States and the Federal Rules of Civil Procedure, due process and any other applicable
rules of court. A full opportunity has been afforded to the members of the class to
participate in the hearing, and all members of the class and other persons wishing to be

of the attorney time and out-of-pocket costs incurred by Class Counsel. Defendants shall

transmit to DiTommaso & Lubin within fourteen (14) days of the Effective Date as

defined in the Settlement Agreement: (1) a check in the amount of $298,000 made out to *jointly to*

*Vincent L. DiTommaso, Peter S. Lubin + Brian C. Witter;*

~~DiTommaso & Lubin, which DiTommaso & Lubin will distribute among Class Counsel;~~

and (2) a check in the amount of $2000 made out to Pamela Eckhaus, which DiTommaso

& Lubin will transmit to Mrs. Eckhaus.

9.    <u>Release of UrineGone™ Claims</u>: Plaintiff and each member of the Settlement

Class, their spouses and former spouses, as well as the present, former, and future

respective heirs, executors, administrators, representatives, agents, attorneys, partners,

successors, predecessors-in-interest, and assigns of Plaintiff and each Settlement Class

member, pursuant to the Settlement Agreement and Amendment thereto approved by this

final order, have discharged Defendants, as well as all of their present, former, and future

direct and indirect parent companies, affiliates, subsidiaries, divisions, agents,

franchisees, successors, predecessors-in-interest; and all of the aforementioneds'

respective present, former, and future officers, directors, employees, shareholders,

attorneys, agents, vendors, couriers, independent contractors, and assigns, from any and

all rights, duties, obligations, claims, actions, causes of action, or liabilities, whether

arising under local, state, or federal law, whether by statute, contract, common law, or

equity, whether known or unknown, suspected or unsuspected, asserted or unasserted,

foreseen or unforeseen, actual or contingent, liquidated or unliquidated that, as of the date

that this Order is entered: (1) arise out of or are related in any way to any or all of the

acts, omissions, facts, matters, transactions, or occurrences that were directly or indirectly

alleged, asserted, described, set forth, or referred to in the case captioned *Eckhaus v.*

AUG-19-2008  13:30                                                                        P.004

*Nature's Pillows, et al.*, Case No. 06-CV-985, currently pending in the United States
District Court for the Eastern District Court of New York before the Honorable Fredrick
Block ("the UrineGone™ Litigation"); (2) are, were, or could have arisen out of or been
related in any way to the UrineGone™ Litigation.

10.     Nothing contained in the release agreed to by the parties and set forth in
Paragraph 9 herein shall be construed to prevent or impede Settlement Class members,
including the Class Representative, from (1) individually seeking product refunds for
Urine Gone kits purchased from defendant Nature's Pillows, Inc.; or (2) individually
bringing tort claims for property damage or personal injury arising from UrineGone™
products.

11.     Plaintiff and each member of the Settling Class is hereby fully and finally
enjoined from prosecuting all claims released by the release agreed to in the Settlement
Agreement and Amendment thereto, as set forth in Paragraph 9 herein.

12.     As provided for in the Settlement Agreement, Defendants have agreed to change
the original television advertising spots for Urine Gone™, whether broadcast via
television, radio, internet, print, or other means.

13.     The claims of Plaintiff and the class set forth in the Second Amended Complaint
are dismissed with prejudice pursuant to the parties' settlement.

DATE June 23, 2008                Entered:
                                           The Honorable Frederic Block
                                           United State's District Judge

                                                                                TOTAL P.004

# EXHIBIT 13



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**FILED**

AUG 2 0 2008
Aug 20, 2008
JUDGE AMY ST. EVE
United States District Court

| | | |
|---|---|---|
| Pamela Eckhaus, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 08-CV-4720 |
| vs. | ) | |
| | ) | Honorable Amy St. Eve |
| | ) | |
| Nature's Pillows, et al. | ) | Magistrate Judge Keys |
| | ) | |
| Defendants. | ) | |
| | ) | |

## EMERGENCY MOTION TO ENFORCE JUDGMENT AND FOR OTHER RELIEF

Brian C. Witter ("Witter"), for his Emergency Motion to Enforce Judgment and for Other

Relief, states as follows:

### 1. NATURE OF THE ACTION

1.      This is an action to enforce a final Federal Court Judgment entered in the United

States District Court for the Eastern District of New York on June 24, 2008 by the Honorable

Frederic Block in the matter of *Eckhaus v. Nature's Pillows, et al., 06-CV-985.*

2.      The Eckhaus final judgment, for $298,000 in attorneys' fees, awards Witter, a co-

judgment creditor, $149,000; the other co-judgment creditor, the Oakbrook Terrace law firm of

DiTommaso Lubin, PC ("D & L"), is entitled equally to $149,000.

3.      A certified copy of the New York judgment was registered with the Clerk of the

United States District Court for the Northern District of Illinois on August 19, 2008 pursuant to

28 U.S.C. § 1963 and may now be given the same force and effect by this Court as the original

judgment and enforced accordingly. (A copy of the certified judgment is attached hereto as

Exhibit A.)

## 2. JURISDICTION AND VENUE

4.    This court has jurisdiction over this action pursuant to 28 U.S.C. § 1367, as the matter falls within the Court's supplemental jurisdiction. *Kokkonen v. Guardian Life Insurance Co.*, 511 US 375, 379 (1994) (ancillary jurisdiction permits district court, *inter alia,* "to vindicate its authority and effectuate its decrees"); *Yang v. City of Chicago*, 137 F3d 522, 525 (7th Cir 1998) (citing to extensive authority).

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and § 1391(b)(2), as the judgment in question is registered in this district, and the property in dispute is located in this district.

6.    Movant and judgment creditor Brian C. Witter, a citizen and resident of Chicago, Illinois, has been a member in good standing of this Court's General Bar since 1988 and its Trial Bar since 1991.

7.    Judgment creditor DiTommaso Lubin, PC, is an Illinois professional corporation engaged in the practice of law, with its principal place of business in Oakbrook Terrace, Illinois.

## 3. ENFORCING THE FINAL JUDGMENT AND EQUALLY DISTRIBUTING THE SETTLEMENT PROCEEDS.

8.    The June 24, 2008 Final Approval Order entered in the Eckhaus case awarded equal discretion over the distribution of $298,000 in attorneys' fees to Witter and D & L.

9.    On July 7, 2008, defendants' counsel in the Eckhaus matter, Richard P. McElroy, sent a check drawn by his client for $298,000 made out jointly to Witter and D & L in satisfaction of the June 24, 2008 judgment. (A copy of the check made jointly payable to Witter and D & L is attached hereto as Exhibit B; and Mr. McElroy's letter transmitting the check is attached hereto as Exhibit C.) The check payable in satisfaction of the judgment, on information and belief, is in the possession of counsel for D & L, Joseph M. Larala, Esq., a practitioner

2

located in Wheaton, Illinois. D & L, through Mr. Laraia, has consistently refused to allow the check to be negotiated since it imagines that it should be entitled to a greater share of the judgment proceeds, irrespective of what the New York final and appealable order plainly states *and despite its failure to seek either to amend, alter, reconsider or appeal the judgment in the proper federal forum.*

10.    An Article III Court entered a final and appealable order in the New York case. D & L, however—although distressed by Judge Block's ruling—and despite myriad available remedies, failed to seek post-judgment relief in either the trial court or in the Second Circuit Court of Appeals, allowing the judgment to become final. ("[A] federal judgment becomes final for appellate review and claim preclusion purposes when the district court disassociates itself from the case, leaving nothing to be done at the court of first instance save the execution of the judgment." *Clay v. United States, 537 U.S. 522, 526 (2003).* [1]

11.    Instead, thirty-five days after the New York Judgment became final on the merits for appellate and claim preclusion purposes, and five days after any opportunity for appellate review had elapsed, D & L filed an injunction petition in an Illinois Court seeking to collaterally attack the final judgment.

12.    D & L, due to its eschewal of the rules and plain mandates of post-judgment federal practice, now finds itself with no remedy whatsoever. Certainly its proposal to an Illinois State Court to sit as an Appellate Court to review a final federal court judgment is a nonstarter

---

[1]    The finality rule under 28 U.S.C. § 1291 has been stated by the United States Supreme Court as follows: "the general rule is that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated." *Digital Equipment Corp. v. Desktop Direct Corp., 511 US 563, 568 (1994).* Accordingly, a decision is considered final and appealable under § 1291 only if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States, 324 US 229, 233 (1945).*

and should not be countenanced by any federal court with jurisdiction over the identical subject matter.

13.    The settlement check is currently non-negotiable. D & L's state court Petition for a Preliminary Injunction is currently pending in the Eighteenth Judicial Circuit, DuPage County, Wheaton, Illinois, Case Number, 08-CH-2378. Witter has moved to dismiss the Petition pursuant to 735 ILCS § 5/2-619(a)(4 ) on jurisdictional and *res judicata* grounds as barred by a prior federal court judgment since D & L argued for a greater share of the judgment proceeds on the basis of a purported contractual relationship between it and Witter at the Eckhaus Final Approval Hearing.[2]

14    The state court injunction petition simply rehashes the same arguments made at the Eckhaus Final Approval hearing that Judge Block found unpersuasive and which are now barred jurisdictionally and by the doctrine of *res judicata*. [3]

---

[2]    D & L's failure to seek post-judgment relief in the New York Court bars relitigation of the claims in Illinois because it raised and vigorously argued these precise contract claims before Judge Block at the June 23, 2008 fairness hearing in Brooklyn, New York. Indeed, D & L not only argued these claims in the New York case, it attached the DuPage County complaint to a Federal Court pleading setting forth the identical contract claims that it now asks an Illinois State Court Judge to review *See* Eckhaus case, *06-CV-985*, EDNY Docket # 76, filed June 23, 2008: Docket Text: *Letter to Judge Block in Response to Brian Witter's Motion re: Final Approval and Entry of Amended Final Approval Order* (Attachments: # (1) Exhibit [DuPage County] Complaint.)

[3]    Indeed, it is difficult to accord good faith to D & L's contract claim, which relies on an abrogated and moribund instrument that: (a) was terminated three months before the judgment at issue here was entered, (b) has the wrong party as signatory—Witter's PC and not Witter individually; and (c) contained no "survival of terms clause." Essentially an "at will" collaboration agreement, the contract moreover had mutual termination provisions so the "at will" nature of the agreement could not be clearer and the need for an explicit survival of terms clause any more obvious or essential. Given the jurisdictional and *res judicata* bars to D & L's contract claims, the Court needn't concern itself with the substance of the claims: the issue is merely academic. (Academic, that is, if one is willing to leave aside the questions of the claims' good faith assertion and the requirements of thorough prefiling investigation mandated by Federal Rule 11 and its Illinois counterpart, Supreme Court Rule 137.)

### 4. ENJOINING THE STATE COURT CASE.

15.     Once an Article III Court has entered a final and appealable order—a Rule 54(a) judgment—while there are a variety of ways to seek post-judgment relief in the District Court or on appeal, the federal judgment automatically precludes subsequent state court litigation due to the Supremacy Clause of Article VI of the United States Constitution. This is basic federalism.

16.     Indeed, according to one of the leading scholars of federal jurisdiction, "the suggestion that state courts should be free to disregard the judgments of federal courts is so unthinkable that the rule rejecting any such suggestion has been stated in an unbroken line of cases..." *Wright, Law of Federal Courts, 4ᵗʰ Ed., (1983), p. 694.* D & L's Petition invites a state court judge to do just that: disregard and overrule a final federal court judgment.[4]

17.     D & L let pass every federal post-judgment procedural deadline under both the Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure. Instead, it filed a state court proceeding to overturn a final federal judgment.

---

[4]     It is not as if D & L was lacking for resources had it wanted post-judgment relief on its purported contract claim. The Federal Rules provide ample instance to alter, amend or reconsider a final and appealable judgment. For example, D & L could have availed itself of a Rule 59(e) motion to alter or amend the June 24, 2008 judgment within ten days of its entry. D & L failed to so move. D & L might also have filed a motion to reconsider Judge Block's ruling specifying that the fee award check should be issued jointly to Witter and D & L. Such a motion could have been made up to thirty days after the entry of judgment. Yet it filed no such motion. Further, D & L could have taken advantage of the local rules of the Eastern District of New York which afford litigants a relatively rare opportunity to have the fee matter sent to its Mandatory ADR program. (It is one of only ten United States District Courts in the country to have such a program.) Or, using again the local rules of Court, D & L might have asked for a special master to adjudicate its contract claims and attack the judgment in the federal court where the judgment was entered. Finally, of course, D & L could have appealed the judgment to the United States Court of Appeals for the Second Circuit, either opting for a conventional appeal or moving in the reviewing court for some species of arbitration or court-annexed mediation. None of these many opportunities were taken up by D & L. So now it turns to an Illinois state court to overturn a federal judgment.

18    D & L's attempt to have a state tribunal overturn a final federal court judgment may be reduced metaphorically as follows: A car, already critically low on fuel, sets out from Brooklyn on a journey. There are five service stations nearby along the car's route; and one in lower Manhattan across the Brooklyn Bridge. The driver, however, cruises blithely by these convenient fueling points and instead tries to speed the 800 miles to Wheaton, Illinois, to refuel, only to stall out in Hoboken, NJ. The car, like the case, should never have left New York.

19.    This Court should now enforce the judgment and, accordingly, enjoin D & L's Petition for a Preliminary Injunction in the Illinois state court. 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, *or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments*") (emphasis supplied).

## 5. PAYMENT OF THE JUDGMENT PROCEEDS INTO THE REGISTRY OF THE COURT PURSUANT TO FEDERAL RULE 67 AND THE EQUAL DISTRIBUTION THEREOF.

20.    Federal Rule 67(a) allows the Court to accept deposits of money where such assets are in dispute in a case.

21.    Witter, as a joint payee on the $298,000 check, is a holder of the asset for purposes of the Rule.

22.    The check should be paid into the registry of the court and then distributed equally to Witter and D & L as the judgment provides.

**WHEREFORE,** Witter requests the following relief: (a) that this Court enforce the final June 24, 2008 judgment; (b) that it enjoin the state court proceedings attempting to collaterally attack and overturn the final federal court judgment; (c) that an order be entered paying the settlement funds into the registry of court pursuant to Federal Rule 67(a); (d) that the judgment

proceeds then be immediately equally distributed to the judgment creditors, The Law Offices of

Brian C. Witter, PC, and The Law Offices of DiTommaso Lubin, PC, pursuant to the court's

inherent powers to effectuate its own judgments; and (e) for such other and further relief as the

Court may deem necessary and just.

**BRIAN C. WITTER**

**By:**     **/s/ Brian C. Witter**

**Dated: August 20, 2008**

Brian C. Witter, *PC*
**Law Offices of Brian C. Witter,** *PC*
111 West Jackson Boulevard
Suite 1100
Chicago, IL 60604
(312) 961-4942 (T)
(312) 386-9759 (F)
*brianewitterpc@gmail.com*
Attorney No. 6198156

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PAMELA ECKHAUS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | 06 CV 00985 |
| -vs- | ) ) | Judge Block |
| NATURE's PILLOWS, INC., BILL McALLISTER BRAD SPECTER and STEVE SILBIGER, | ) ) ) | Magistrate Matsumoto |
| Defendants. | ) | |

## FINAL APPROVAL ORDER

### IT IS HEREBY ORDERED:

1. On March 14, 2008 this Court preliminarily approved the Class Settlement Agreement ("Agreement") reached between Pamela Eckhaus ("Plaintiff") and the class of persons as defined in the Agreement ("Class"); and Defendants Nature's Pillows, Inc., Bill McAllister, Brad Specter, and Steve Silbiger ("Defendants").

2. The notice given to the members of the class—publication in the USA Today Weekend Edition on April 11 and 18, 2008—was reasonably calculated under the circumstances to apprise them of the pendency of this action, all material elements of the proposed settlement, their opportunity to exclude themselves from, to object to, or to comment on the settlement and to appear at the settlement hearing. The notice was reasonable and the best notice practicable under the circumstances; was due, adequate and sufficient notice to all class members; and complied fully with the laws of the United States and the Federal Rules of Civil Procedure, due process and any other applicable rules of court. A full opportunity has been afforded to the members of the class to participate in the hearing, and all members of the class and other persons wishing to be

of the attorney time and out-of-pocket costs incurred by Class Counsel. Defendants shall transmit to DiTommaso & Lubin within fourteen (14) days of the Effective Date as defined in the Settlement Agreement: (1) a check in the amount of $298,000 made out to *jointly to Vincent L. DiTommaso, Peter S. Lubin & Brian C. Witter;* ~~DiTommaso & Lubin, which DiTommaso & Lubin will distribute among Class Counsel;~~ and (2) a check in the amount of $2000 made out to Pamela Eckhaus, which DiTommaso & Lubin will transmit to Mrs. Eckhaus.

9.    **Release of UrineGone™ Claims**: Plaintiff and each member of the Settlement Class, their spouses and former spouses, as well as the present, former, and future respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns of Plaintiff and each Settlement Class member, pursuant to the Settlement Agreement and Amendment thereto approved by this final order, have discharged Defendants, as well as all of their present, former, and future direct and indirect parent companies, affiliates, subsidiaries, divisions, agents, franchisees, successors, predecessors-in-interest; and all of the aforementioneds' respective present, former, and future officers, directors, employees, shareholders, attorneys, agents, vendors, couriers, independent contractors, and assigns, from any and all rights, duties, obligations, claims, actions, causes of action, or liabilities, whether arising under local, state, or federal law, whether by statute, contract, common law, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated that, as of the date that this Order is entered: (1) arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, or occurrences that were directly or indirectly alleged, asserted, described, set forth, or referred to in the case captioned *Eckhaus v.*

*Nature's Pillows, et al.*, Case No. 06-CV-985, currently pending in the United States District Court for the Eastern District Court of New York before the Honorable Fredrick Block ("the UrineGone™ Litigation"); (2) are, were, or could have arisen out of or been related in any way to the UrineGone™ Litigation.

10.    Nothing contained in the release agreed to by the parties and set forth in Paragraph 9 herein shall be construed to prevent or impede Settlement Class members, including the Class Representative, from (1) individually seeking product refunds for Urine Gone kits purchased from defendant Nature's Pillows, Inc.; or (2) individually bringing tort claims for property damage or personal injury arising from UrineGone™ products.

11.    Plaintiff and each member of the Settling Class is hereby fully and finally enjoined from prosecuting all claims released by the release agreed to in the Settlement Agreement and Amendment thereto, as set forth in Paragraph 9 herein.

12.    As provided for in the Settlement Agreement, Defendants have agreed to change the original television advertising spots for Urine Gone™, whether broadcast via television, radio, internet, print, or other means.

13.    The claims of Plaintiff and the class set forth in the Second Amended Complaint are dismissed with prejudice pursuant to the parties' settlement.

DATE June 23, 2008         Entered: _____
                                     The Honorable Frederic Block
                                     United States District Judge

303:

Natures Pillows
2607 Interplex Drive
Trevose, PA 19053-6946
215 ... .0801
Urine Gone

SUN NATIONAL BANK
55-842/312

6/24/2008

PAY TO THE
ORDER OF     DiTommaso & Lubin P.C. and Brian Witter                                     $ **298,000.00

Two Hundred Ninety-Eight Thousand and 00/100******************************************************** DOLLARS

DiTommaso & Lubin P.C. and Brian Witter
17 W. 220 2nd Street
Suit 200
Oakbrook Terrace, IL  60181

⑆003033⑆ ⑆031206420⑆ ⑆4750718457⑆

303

Natures Pillows, Inc.
2607 Interplex Drive
Trevose, PA 19053-6946
215-8... ....
Urine Gone

SUN NATIONAL BANK
55-842/312

6/24/2008

PAY TO THE
ORDER OF     Pamela Eckhaus                                                              $ **2,000.00

Two Thousand and 00/100********************************************************************* DOLLARS

Pamela Eckhaus
1204 Caffrey Ave.
Far Rockaway, NY  11691

⑆003031⑆ ⑆031206420⑆ ⑆4750718457⑆

# McElroy & Associates LLP

ATTORNEYS AT LAW

202A NORTH MONROE STREET
MEDIA, PA 19063
610.566.9501 • Fax 610.566.0105

RICHARD P. McElroy
JEFFREY C. McElroy

Direct Dial: 610.566.8302

July 7, 2008

*Via Federal Express*

Vincent DiTommaso, Esquire
DiTommaso, Lubin P.C.
17 W. 220 2nd Street
Suite 200
Oakbrook Terrace, IL 60181

Re:    Pamela Eckhaus v. Nature's Pillows, et al.

Dear Vince:

Enclosed are two checks: the first in the amount of $298,000.00 payable to your firm and Brian Witter; the second in the amount of $2,000.00 payable to Ms. Eckhaus. This concludes the matter from defendants' viewpoint.

Very truly yours,

Richard P. McElroy

RPM:mes
Enclosures

Cc:    Matthew H. Adler, Esquire (no enclosure)
Bradley Specter (no enclosure)
Steven Silbiger (no enclosure)