IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| PAMELA ECKHAUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 08 CV 4720 |
| -vs- | ) | |
| | ) | Honorable Amy St. Eve |
| | ) | |
| NATURE'S PILLOWS, ET AL. | ) | Magistrate Judge Keys |
| | ) | |
| Defendants. | ) | |

## DITOMMASO-LUBIN'S MEMORANDUM OF LAW IN OPPOSITION TO BRIAN WITTER'S EMERGENCY MOTION TO ENFORCE JUDGMENT AND FOR OTHER RELIEF

NOW COMES the Respondent, DiTommaso & Lubin, P.C., counsel for the Plaintiff, Pamela Eckhaus,  and the Class Plaintiffs ("DiTommaso"), by and through its attorneys, Laraia & Hubbard, P.C., and as its Memorandum of Law in Opposition to the Movants, Brian C. Witter and the Law Office of Brian C. Witter, PC's (herein collectively "Witter"), Emergency Motion, states as follows:

### I. FACTUAL BACKGROUND

1.      The entitled action is a class action to recover damages for the alleged deception of consumers, and other actionable conduct, of the Defendants, Nature's Pillows, et al., in the sale of a product known as "Urine Gone".

2.      The entitled class action was filed in the United States District Court for the Eastern Division of New York and was assigned to the Honorable Frederick Block (the "Eckhaus Class Action").

3.      The Class Plaintiff, Pamela Eckhaus, was the client of DiTommaso, not Witter. Vincent DiTommaso and Peter Lubin, along with Brian Witter, filed their appearances in said proceeding.

4.      During the time the Eckhaus Class Action was pending, the Movant, Witter, worked for DiTommaso as an attorney under two (2) independent contractor's agreements. Witter never entered into any agreement with DiTommaso's class representative client, Pamela Eckhaus, or any of the other Class Plaintiffs but filed his appearance in the Eckhaus case so he could appear before the Court as one of the Class' attorneys.

5.      On or about April 6, 2007, the Eckhaus Class Action was settled pursuant to the Settlement Agreement attached hereto as Exhibit A.  The Agreement provided for the payment of $298,000 to the Plaintiff Class' attorneys' for fees and costs.

6.      On or about April 7, 2008, DiTommaso terminated Witter's employment with said law firm, for cause.  DiTommaso had paid Witter all sums due Witter under the employment agreements.

7.      After Witter's termination, Witter filed Notices of Attorney's Lien in various class action cases that he had worked on while employed by DiTommaso, including the Eckhaus Class Action.

8.      Prior to the June 23, 2008 final approval hearing (which resulted in the Court's June 24, 2008 final approval order) (see Exhibit D), DiTommaso served appropriate notice upon the necessary parties that it would be presenting the Plaintiff Class' final order approving the settlement arrived at between the Plaintiff Class and the Defendants.  The settlement included a provision that $298,000 be paid to the Plaintiff Class as attorneys' fees and costs and that said

sum be paid to the Class' representative attorneys, DiTommaso-Lubin, P.C., for distribution to the Class' attorneys.

9.      On or about June 18, 2008, Witter sent a letter to Judge Block in which he submitted his proposed Amended Final Approval Order and an Affidavit in which he set forth his alleged qualifications and listed the time he claimed that he had expended on the Eckhaus Class Action.   Witter's proposed order provided that he receive $105,000 of the $298,000 in attorney's fees that were awarded to the Class and that the balance of $193,000 be made payable to DiTommaso-Lubin, P.C. for distribution among the remaining Class' attorneys.

10.     On June 20, 2008, DiTommaso filed a Complaint for Declaratory Judgment and Injunctive Relief in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois against Witter (the "State Court Proceeding").   Said action seeks an adjudication of the rights between DiTommaso and Witter under two successive independent contractor's agreements pursuant to which Witter was employed by DiTommaso as an attorney to provide services to DiTommaso clients.   The State Court Proceeding also sought an injunction to require Witter to release the Notices of Attorney's Lien he had filed in several of the cases that he had worked on while employed by DiTommaso.

11.     On June 20, 2008, DiTommaso provided Judge Block with a brief response to Witter's claim for a portion of the attorneys' fees awarded to the Class and informed the Court that all counsel in the Eckhaus Class Action, except Witter, had approved DiTommaso's Final Approval Order.   DiTommaso also provided Judge Block with a copy of the Complaint which DiTommaso had filed in the State Court Proceeding.   (DiTommaso's letter to Judge Block and the state court complaint are attached as Exhibit B (which letter included the state court complaint and its exhibits)).

12.     On June 23, 2008, Judge Block considered the Final Approval Orders submitted by DiTommaso and Witter and refused to assume jurisdiction over the allocation of attorneys' fees among the Plaintiff Class' attorneys, including the dispute between DiTommaso and Witter. (A copy of the transcript of said hearing is attached hereto as Exhibit C)

a.     During said hearing, Judge Block acknowledged that he was aware of the State Court Proceeding between DiTommaso and Witter and expressly abstained from assuming jurisdiction over said dispute. (See, Transcript Exhibit C, p. 7, lines 2-5).

b.     Judge Block also specifically declined to allocate the attorneys' fees and costs among the Plaintiff Class' attorneys.  (See, Transcript Exhibit C, p. 8, lines 20-23)

c.     Judge Block merely ordered that the names of Peter Lubin, Vincent DiTommaso and Brian Witter appear on the check, which the Defendants would be issuing for the payment of the Class' attorneys' fees, and that any fee dispute between DiTommaso and Witter be resolved in the State Court Proceeding.  (See, Transcript Exhibit C, p. 9, lines 13-17 and p. 10, lines 16-19.)

The pertinent portions of Judge Block's ruling, which are referred to above, are as follows:

> **It's not for me to decide how the money should be attributed.  That is a separate fight the two of you are fighting and be my guest the money goes to Eckhaus Counsel.  (Transcript page 7, lines 2-5)  Whoever has been designated as lead counsel, that seems to be the right way to do it.  I will not get involved in deciding whether you, Mr. Witter, is to get $105,000 or $100,000.  It does not seem appropriate to me.  (Transcript page 8, lines 20-23)     Lead counsel apparently, my clerk tells me, as of March 12[th], is DiTommaso, Lubin and Witter.  We'll have the check made out collectively.  It might be a problem to do special account, pending the ultimate determination in Illinois. (Transcript page 9, lines 13-17)  It's unfortunate.  I will sign neither of these [proposed final approval orders].  I will put in DiTommaso, Lubin and Witter.  It won't be negotiable until you decide to sign your names to it into a special account.  What else can I do?  (Transcript page 10, lines 16-19)**

4

13.     After refusing to get involved with the allocation of attorneys' fees, or the disputes between DiTommaso and Witter, Judge Block approved the Final Approval Order submitted by DiTommaso with one, slight addition, that being that Witter's name be placed on the draft of $298,000.   A copy of the June 24, 2008 Final Approval Order is attached as Exhibit D[1].

14.     On August 19, 2008, Witter registered Judge Block's Order with this Court as a final judgment for the purpose of collecting a money judgment under Rule 69 and filed the Emergency Motion to Enforce to which DiTommaso submits this Response.  Witter claims that the June 24, 2008 Order allocated the award of attorneys' fees among the Plaintiff Class' attorneys and awarded him one-half thereof or $149,000.  That is contrary to his claim before Judge Block in which he claimed that he was entitled to $105,000.  Witter's claim for one-half of all of the fees awarded to the Plaintiff Class is based solely upon the fact that Judge Block directed that Witter's name be placed on the draft.  Witter's claim that Judge Block awarded him $149,000 in fees, or any portion of the $298,000, is without basis and is contrary to Judge Block's expressed ruling that he was not ordering an allocation of attorneys' fees and was not awarding Witter any portion thereof.

15.     On August 21, 2008, this Court considered Witter's Emergency Motion and found that it did not require emergency relief.  This Court set a briefing schedule and a status date of September 30, 2008 and also refused to enjoin the State Court Proceeding

16.     Subsequent to this Court's Order of August 21, 2008, Witter filed a Notice of Removal of the State Court Proceeding but did not attach the Complaint to the Notice of

---

[1]     Although the Final Approval Order states the check should include three names on it, Witter now claims that the placement of the three names on the draft is equivalent of a money judgment in his favor for 50% of the entire sum of the settlement award of $298,000. Witter does not provide this Court with a legal or factual basis for this argument and is contrary to Judge Block's ruling.

Removal; did not attach the transcript of proceedings before Judge Block (Exhibit C) and did not sign the Notice of Removal attesting that he believed that the pleading conformed to the requirements of Rule 11.

17.    On August 28, 2008, DiTommaso moved this Court to reassign the Notice of Removal case to this Court and attached a Motion to Remand the Removal Case to the state court.

## II.    THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION, DOES NOT HAVE ORIGINAL OR SUPPLEMENTAL JURISDICTION OVER THE ORDER WHICH WITTER IS ATTEMPTING TO ENFORCE IN THIS DISTRICT.

### A.    SUBJECT MATTER JURISDICTION.

DiTommaso respectfully submits that this District does not have subject matter jurisdiction over the entitled class action suit.  The suit was filed in the Federal District Court for the Eastern District of New York and was resolved pursuant to a Settlement Agreement of that Court.  The Settlement Agreement and the June 24, 2008 Order of Approval did not involve any disputes between the representative Class' attorneys concerning the allocation of the attorneys' fees awarded to the Class.  Judge Block refused to address that issue.  His Order that placed Witter's name on the check was not a pronouncement that Witter was entitled to any portion of the $298,000 let alone a ruling that Witter was entitled to one-half thereof.  Respectfully, this Court does not have original jurisdiction over class action litigation, including the allocation of attorneys' fees.  The New York District Court has the original jurisdiction over said issues but chose not to exercise said jurisdiction, as it pertained to any allocation of the Plaintiff Class counsels' attorneys' fees.

B.    SUPPLEMENTAL JURISDICTION.

It is also respectfully submitted that, due to Judge Block's abstaining from exercising jurisdiction, or deciding the allocation of attorney's fees, this Court does not have supplemental jurisdiction over said issue pursuant to 28 U.S.C. § 1367.  In the case of *Shapo v. Engle*, 463 F.3d 641 (7th Cir. 2006), the issue of the payment of attorneys' fees to the defendant's attorney was provided for in the settlement agreement.  The appellate court found that this Court lost jurisdiction to enforce the settlement agreement when it dismissed the case with prejudice.

It is respectfully submitted that this Court does not have supplemental jurisdiction over Witter's claim for an allocable share of the attorneys' fees awarded to the Class.  Also, Witter's dispute is with DiTommaso over what, if any, funds are due Witter under their separate employment agreements, and is not with the party litigants in the entitled case.  Witter's claim has nothing to do with the Eckhaus Class Action.

Witter incorrectly claims that this Court has federal subject matter jurisdiction pursuant to the holdings in *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379 (1994) and *Yang v. City of Chicago*, 137 F.3d 522, 526 (7th Cir. 1998).  In *Kokkonen*, the Supreme Court found that the district court erred in finding ancillary federal subject matter jurisdiction because the facts regarding the alleged breach of the settlement agreement were separate from the facts to be determined in the underlying suit.  *Id.*  It held that there was no federal subject matter jurisdiction because the requested relief was not needed "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."  511 U.S. at 379

As argued herein, Judge Block did not render a money judgment in Witter's favor in the *Eckhaus* final approval order.  Judge Block declined Witter's request to allocate the fee award between Witter and the other class counsel and to award Witter $105,000 or any sum

whatsoever.  As such, the relief Witter is requesting here in his emergency motion -- an order directing payment to him of $149,000 of the fee award -- is not necessary to "vindicate" or "effectuate" Judge Block's final approval order.  Accordingly, under *Kokkonen*, there is no ancillary or supplemental federal jurisdiction to hear Witter's motion.

Likewise, Witter's reliance on *Yang v. City of Chicago*, 137 F.3d 522, 526 (7th Cir. 1998), for vesting this Court with federal subject matter jurisdiction, is also misplaced.  That case is distinguishable on its facts in that said case involved a garnishment proceeding to enforce a judgment rendered against a Chicago police officer and the City of Chicago for a violation of § 1983[2].  As argued hereinabove, the Order of Judge Block is not a judgment in favor of Witter for any sum of money and is not the subject of enforcement.  Unlike in *Yang*, Witter does not have a money judgment that is enforceable against DiTommaso or any other party and is not within the supplemental jurisdiction of the New York District Court or this Court.

C.    **JUDGE BLOCK'S ORDER OF JUNE 24, 2008 IS NOT A FINAL JUDGMENT FOR A SUM OF MONEY UNDER RULE 67 FOR CERTIFICATION TO THIS COURT AND ENFORCEMENT BY THIS COURT.**

As stated hereinabove, Witter alleges that Judge Block's Order of June 24, 2008 is a final judgment order pursuant to Rule 67 and is subject to collection through this Court.  Rule 67 provides for the enforcement of actions in which part of the relief sought is a judgment for a sum of money.  In such actions, the court can direct the parties to deposit the disputed monies with the court.  Judge Block's Order is not a judgment for a sum of money payable to Witter nor is it a judgment that allocates the attorneys' fees among the Plaintiff Class' attorneys.  Therefore, Rule 67 is inapplicable and Witter's claim thereunder is unfounded.

---

[2]    In Yang, the garnishment was allowed due to Illinois law providing that the judgment could be collected from the City in situations where the officer had been acting within the scope of his employment when the action occurred which gave rise to the judgment.

It should also be noted that Rule 82 precludes the enforcement procedures of Rules 67 and 69 from vesting this Court with subject matter jurisdiction when no such jurisdiction otherwise exists. *National Westminster Bank U.S.A. v. Cheng*, 751 F.Supp. 1158, 1161 (S.D.N.Y. 1990); *Georgia Central Credit Union v. Martin G.M.C. Trucks, Inc.*, 622 F.2d 137, 139 (C.A.La. 1980). Rule 82 states: "These rules do not extend … the jurisdiction of the district courts or the venue of actions in those courts." Therefore, Witter's registration of Judge Block's Order did not vest this Court with jurisdiction.

### D.   JUDGE BLOCK'S ORDER DOES NOT ALLOCATE ATTORNEYS' FEES AMONG THE PLAINTIFF CLASS' ATTORNEYS NOR DOES IT AWARD WITTER A JUDGMENT FOR A PORTION THEREOF.

As stated hereinabove, Judge Block's Order does not constitute a judgment in Witter's favor in the amount of $149,000 or any sum whatsoever. The Order is silent on the issue of the allocation of the $298,000 in attorneys' fees. It also does not award any portion to Witter. It is specifically silent on the issue of allocation because Judge Block would not address that issue and recognized that the dispute between DiTommaso and Witter, over Witter's entitlement to any portion thereof or to any further compensation, was not part of the Eckhaus Class Action and was to be resolved in the State Court Proceeding. Therefore, the Order is not a final judgment which Witter can enforce through this Court.

### III.   JUDGE BLOCK'S ORDER DOES NOT PRECLUDE THE STATE COURT ACTION BETWEEN DITOMMASO AND WITTER.

Judge Block's Order does not preclude DiTommaso from resolving the dispute between Witter and DiTommaso in the State Court Proceeding. Witter attempts to invoke the doctrine of *res judicata;* however, said doctrine is inapplicable. The doctrine provides that final judgment on the merits of an action precludes the parties, or their privies, from relitigating claims that were, or could have been, raised in that action. Three requirements must be met for the doctrine

of *res judicata* to apply: (1) an identity of the parties or their privies in both the prior and subsequent suits; (2) an identity of the cause of action in the two suits; and (3) a final judgment on the merits in the prior suit. *In re S.N.A. Nut Company, v. Haagen-Dazs Co. Inc.* 215 B.R.1004 (N.D. Ill.1997).

*Res judicata* is not applicable where the first court declined to rule on the specific matter which the parties are litigating in the second proceeding. That was the holding in *Equal Employment Opportunity Commission v. Sears, Roebuck & Co.*, 504 F.Supp. 241, 274 (N.D. Ill. 1980) where the court stated that "The comments of Judge Hanson further reveal that he did not intend his Brennan and Usery decisions to absolutely bar any future monetary and injunctive equal pay claims against Sears anywhere in the country …". The transcript, submitted herewith, clearly shows that Judge Block did not rule on the issue of the allocation of attorneys' fees or Witter's right to a portion thereof. Therefore, the issue of his entitlement was not addressed and *res judicata* is not applicable.

The courts have also refused to apply the doctrine to situations where the Court expressly reserved the litigant's right to assert a claim at a later time. In *Central States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc.,* 296 F.3d 624, 629 (7th Cir. 2002); accord: *Carroccia*, 352 IllApp3d at 1124, the Court stated that:

> *Res judicata* does not bar a subsequent action where the court in the earlier action expressly reserved the litigant's right to assert its claim at a later time. … [E]ven though the trial court entered its order with prejudice, it appears from the judge's comments that he may have intended to allow defendant a chance to re-file or re-litigate his petition. Under these circumstances, *res judicata* would not apply even though the trial court's judgment was on the merits and the dismissal was therefore with prejudice.

The same rule was pronounced in *Cabrera v. First Nat. Bank of Wheaton*, 324 Ill.App.3d 85, 92 (2nd Dist. 2001), citing *D & K Properties Crystal Lake v. Mutual Life Insurance Co.,* 112

F.3d 257, 259 (7th Cir. 1997) in which the court stated "one exception is that *res judicata* will not bar a subsequent action where the court in the earlier action expressly reserved the litigant's right to assert its claim at a later time."

As expressed hereinabove, and as seen in the transcript of the proceedings (Exhibit C), Judge Block abstained from deciding Witter's claim for a portion of the class action attorneys' fees and specifically stated that that issue should be determined in the State Court Proceeding. Witter fails to inform this Court of Judge Block's express refusal to address his claim and directly misrepresents Judge Block's ruling. Witter's assertions, that Judge Block's direction to place his name on the check was a determination, by Judge Block, that Witter was entitled to one-half of the $298,000 in attorneys' fees, is totally untrue. In fact, nothing could be further from the truth. Witter's statement that the placement of his name on the check was an award of $149,000 in attorneys' fees is a direct and knowing misrepresentation of the facts to this Court.

It is respectfully submitted that the elements of *res judicata* are not present in this matter; namely, (1) that the parties and issues be the same or in privies with each other; (2) that the subject matter and issues be the same and (3) that the first court addressed and resolved the issue which one of the parties is trying to resolve in the second case. Therefore, *res judicata* is inapplicable and Witter's misstatement of Judge Block's ruling does make it applicable.

## IV.    CONCLUSION

It is respectfully submitted that the Order of Judge Frederick Block of the United States District Court of the Eastern Division of New York is not an enforceable Judgment Order for Collection through this Court. It is not a ruling on the allocation of attorneys' fees or an award of attorneys' fees to Witter. The Eastern District of New York expressly refused to consider said issues. The Order is not a judgment, or enforceable Order, through which this Court can enforce

the payment of funds to Witter.  For all of the reasons set forth hereinabove, this Court does not have jurisdiction over this case.

WHEREFORE, the Respondent, DiTommaso-Lubin, P.C., counsel for the Plaintiff, Pamela Eckhaus, and counsel for the Plaintiff Class members, respectfully requests this Court to enter an order denying the Movants, Brian C. Witter and the Law Office of Brian C. Witter PC's, Emergency Motion to Enforce Judgment and for Other Relief, with prejudice, and with costs to Movants; to dismiss the Notice of Removal of the State Court Proceeding to this Court and to remand this matter to the Circuit Court of the Eighteenth Judicial Circuit for further proceedings.

Respectfully submitted,

By:    /s/  Joseph M. Laraia
Counsel for DiTOMMASO-LUBIN PC

Joseph M. Laraia
LARAIA & HUBBARD PC
1761 S. Naperville Road, Suite 203
Wheaton, Illinois 60187
(630) 690-6800

Vincent L. DiTommaso
DiTOMMASO ♦ LUBIN, PC
17W 220 22nd Street, Suite 200
Oakbrook Terrace, Illinois 60181
(630) 333-0000

## CERTIFICATE OF SERVICE

I, Vincent L. DiTommaso, the undersigned attorney, hereby certify that on the 4th day of September, 2008, on behalf of Joseph M. Laraia and DiTommaso-Lubin, I served a copy of this Memorandum of Law in Opposition to Brian Witter's Emergency Motion to Enforce Judgment and For Other Relief, via ECF, on all counsel of record.

Notice has been delivered by U.S. Mail from 17 W 220 22nd Street, Oakbrook Terrace, Illinois to:

Matthew H. Adler
Pepper Hamilton, LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799

Richard McElroy
McElroy & Associates, LLP
202A North Monroe Street
Media, PA 19063

/s/ Vincent L. DiTommaso _____
Vince L. DiTommaso

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Pamela Eckhaus,<br>individually and on behalf of<br>all others similarly situated, | ) ) ) | |
| | ) | Case No. 06-CV-00985 |
| Plaintiff, | ) ) | Judge Block |
| vs. | ) ) | Magistrate Matsumoto |
| Nature's Pillows, Inc., Bill McAllister,<br>Brad Specter, and Steve Silbiger, | ) ) | |
| Defendants. | ) | |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter "Agreement") is made on~~6 April~~

2007, by and between Plaintiff Pamela Eckhaus (hereinafter "Class Representative" or

"Plaintiff"), both individually and as Representative of the Class defined herein, and Nature's

Pillows, Inc., William McAllister, Bradley Specter, and Steve Silbiger (collectively the

"Defendants"), subject to preliminary and final approval of the Court. Plaintiff and Defendants

are sometimes collectively referred to herein as the "Parties."

## DEFINED TERMS

A.    The "Litigation" means the case captioned *Eckhaus v. Nature's Pillows, et al.*

Case No. 06-CV-985, currently pending in the United States District Court for the Eastern

District Court of New York, before the Honorable Frederick Block.

B.    The "Complaint" means the Amended Complaint filed by Plaintiff in the

Litigation on or about April 11, 2006.

C.    "Class Counsel" means Vincent L. DiTommaso, Peter S. Lubin, and Brian C.

Witter, P.C., of DiTommaso ♦ Lubin, P.C., 17W 220 22nd Street, Suite 200, Oakbrook Terrace,

IL 60181;  Paul M. Sod of the Law Offices of Paul M. Sod, 337R Central Avenue, Lawrence, NY 11559; Brian L. Bromberg, P.C, 40 Exchange Place, Suite 2010, New York, NY 10005; and Lance A. Raphael, The Consumer Advocacy Center, P.C., 180 West Washington St., Suite 700, Chicago, IL 60602.  Class Counsel is sometimes referred to herein as "Plaintiff's Counsel."

D.     "Counsel for Nature's Pillows, William McAllister, and Bradley Specter" means Matthew H. Adler of Pepper Hamilton, LLP, 3000 Two Logan Square, Eighteenth and Arch Streets, Philadelphia PA 19103-2799; "Counsel for Steve Silbiger" means Richard P. McElroy, McElroy & Associates, LLP, 202A North Monroe Street, Media, PA 19063;

E.     "The Court" means the United States District Court for the Eastern District of New York.

F.     "The Released Parties" means and shall be defined to include Nature's Pillows, Inc., Media Enterprises, Inc., Direct Response, Inc., H.C.T.V., Inc., Plymouth Direct, Inc., Harriet Carter Gifts, Inc., International Chemicals Corp. d/b/a Innovative Chemicals Corp. and its affiliated companies Woodridge Specialty Products Corp. and Northland Automotive Products, LLC,  Bill McAlister, Brad Specter, Steve Silbiger, William Garbose, James Timlin, Kevin Lappin and Randy Patterson, including all past and present principals, partners, employees, associates, owners, stockholders, affiliates, parents, subsidiaries, divisions, branches, departments, agencies, predecessors, successors, assigns, agents, directors, officers, representatives, insurers, successors-in-interest and predecessors-in-interest of these Released Parties.

G.     "Settlement," "Settlement Agreement," or "Settlement Agreement and Release" means the terms and conditions set forth in this Agreement, providing for and establishing the terms of the settlement of the Litigation.

2

H.    "The Settlement Class" means all purchasers nationwide of the Urine Gone™ ("Urine Gone") formula produced by the Innovative Chemical Corporation ("ICHEM").

I.    "Preliminary Judicial Approval" means the entry of an Order as described in Paragraph 8 below.

J.    "Final Approval Hearing" means the hearing held by the Court to consider final approval of the Settlement and all related matters as described in paragraph 10 below.

K.    "Final Approval Date" means the date the Judgment Order described in paragraph 11 below becomes final according to paragraph 13.

L.    "Effective Date" means the date five days after the Judgment has become final as provided in Paragraph 13.

### RECITALS

WHEREAS, Plaintiff is seeking class-wide relief against Defendants for alleged consumer fraud and unjust enrichment arising out of defendants' alleged deception of consumers with respect to the advertising, promotion, formulation, manufacture, distribution, and sale of Urine Gone for all putative class members, as set forth in the Complaint; and

WHEREAS, the issues in the Litigation are complex and would, if fully litigated, likely result in expensive and protracted litigation, appeals, and continued uncertainty as to outcome; and

WHEREAS, the Parties to the Litigation desire to avoid the additional cost, time, effort, and uncertainty that would result from the continuation of the Litigation, regardless of the outcome, and desire to enter into a settlement; and

3

WHEREAS, Defendants deny the claims asserted in the Litigation and deny all allegations of wrongdoing and liability, and contend that they did not violate any and all applicable rules, laws, and statutes; and

WHEREAS, no class has yet been certified in this action; and

WHEREAS, Defendants have incurred substantial legal fees and expenses in defending against Plaintiff's claims, and if litigation continues, Defendants would likely incur substantial additional legal fees and expenses; and

WHEREAS, Defendants enter into this Settlement solely to avoid the likelihood of incurring continued expenses, inconvenience, and the inherent risk of litigation; and

WHEREAS, Class Counsel conducted an extensive investigation of the facts, circumstances, and law underlying the issues raised in the Litigation, and, based on the facts and applicable law, and upon consideration of the benefits this Settlement affords both the Class Representative and the Settlement Class, Class Counsel considers the Settlement to be in the best interests of the Plaintiff and the Settlement Class and believes they should enter into this Settlement Agreement; and

WHEREAS, this Settlement Agreement was reached through lengthy and extensive arm's length negotiations between counsel for the Parties, and with the assistance of one settlement conference with Magistrate Judge Matsumoto and further negotiations amongst the parties; and

WHEREAS, Plaintiff and Class Counsel believe that this Settlement is fair, adequate, reasonable, and proper;

NOW, THEREFORE, for good and valuable consideration, the sufficiency of which is hereby acknowledged, Plaintiff and Defendants agree as follows:

4

## PROVISIONS

1.   **RECITALS.** The recitals set forth above are incorporated herein by reference and are explicitly made a part of this Settlement Agreement.

2.   **SETTLEMENT PURPOSES ONLY.** Defendants do not agree to certification of the Settlement Class for any purpose other than to effectuate the Settlement Agreement.

3.   **VACATING SETTLEMENT CERTIFICATION.** The certification of the Settlement Class shall be binding only with respect to the settlement of the Litigation. In the event that the Settlement Agreement is terminated pursuant to its terms or is not approved in all material respects by this Court, or is reversed, vacated, or modified in any material respect by this or any other court, the certification of the Settlement Class shall be deemed vacated, the Litigation shall proceed as though the Settlement Class had never been certified, and no reference to the prior Settlement Class or any documents related thereto, shall be made by the Parties hereto for any purpose.

4.   **CLASS RELIEF.** Defendants agree to cease and desist from broadcasting, or otherwise disseminating, the original television advertising spots for Urine Gone, whether via television, radio, internet, print, or other means, and to make the advertising changes as described more fully both in Paragraph 5 of this Agreement and in Addendum A to this Agreement. Separate and apart from the above relief to the class, Defendants further agree to pay, subject to Court approval, the Class Representative and Class Counsel the sum of $300,000.00, as set forth in Paragraph 6 below.

5.   **ADVERTISING CHANGES.** No later than thirty days after the Effective Date, Defendants shall cause the changes set forth in Addendum A to this Settlement Agreement to be

5

made to the original television advertising spots for Urine Gone. Defendants shall not thereafter use, show, or cause to be shown the original television advertising spots. It is expressly agreed that Defendants' changes to and agreements to change the advertising are not and shall not be construed to be an admission or concession by Defendants that the original advertising spots, or any other advertising, for Urine Gone were inaccurate, incorrect, misleading or false in any respect. It is understood that Defendants have agreed to make the specified changes solely to settle and compromise the claims of Plaintiff in the Litigation.

6.    **ATTORNEYS' FEES, COSTS, AND INVENTIVE AWARD.**

A.    The Parties agree that Class Counsel may petition the Court in their Motion for Preliminary Approval of the Class Settlement for their reasonable attorneys' fees and costs for their work on behalf of the Settlement Class; and the parties further agree that Class Counsel's attorneys' fees and costs shall be, if approved by the Court, $298,000.00. Defendants shall not contest in any way Class Counsel's attorney's fees so long as the amount sought does not exceed $298,000.00. Defendants shall not be required to pay interest on any award of attorneys' fees, costs, or expenses. Except as otherwise specifically provided in this Settlement Agreement, the Parties agree that no additional attorneys' fees, costs, or expenses shall be paid by Defendants on account of the allegations contained in the Complaint or with respect to any and all claims, that have been or could be brought under any other statute, contract, or doctrine relating to attorneys' fees, costs, or expenses.

B.    The Parties agree that Settlement Class Counsel may petition the Court for an incentive award to the Class Representative, Pamela Eckhaus, in the amount of $2,000.00. The Parties agree that any amount up to $2,000.00 awarded as an incentive award to the Class Representative shall be paid by Defendants, in exchange for the full release of her claims, via

6

check payable to the Plaintiff, and sent to her Class Counsel, within 14 days of the Effective Date.

  C.  The Parties agree that any attorneys' fees, costs, and expenses, including any incentive award to the Class Representative, that are awarded by the Court to Class Counsel shall be paid to Class Counsel by Defendants within 14 days of the Effective Date.

  D.  Plaintiff and Class Counsel shall provide completed signed W-9 forms to Defendants as a pre-condition to the payment of any incentive award, attorneys' fees, costs and expenses approved by the Court.

  **7.**  **CLASS MEMBERS TO RETAIN REFUND RIGHTS.** Nothing in this Agreement and any Addendums thereto shall prevent members of the Settlement Class, excluding the Class Representative, from individually seeking product refunds for Urine Gone kits purchased from defendant Nature's Pillows, Inc. ("Nature's Pillows"), in accordance with Nature's Pillows policies governing said refunds and product returns in effect as of January 1, 2007.

  **8.**  **NOTICE, ADMINISTRATION, AND PRELIMINARY APPROVAL.**

  (a)  Except for the costs of publication of the Notice and implementation of the advertising changes required under paragraph 5, Plaintiff and Class Counsel shall bear the costs of administering the Settlement.

  (b)  As a condition of settlement, the Parties agree that Plaintiff will petition the Court for a Preliminary Approval Order:

    (i)  Finding preliminarily that this Settlement has been negotiated in an arm's-length manner and that the Settlement is fair, reasonable, and adequate;

(ii)    Finding that the Class will be certified for the purposes of settlement only;

(iii)    Finding that the Notice described in paragraph 8 is the only notice required, and that such notice satisfies the requirements of due process, New York law, Fed. R. Civ. Proc. 23 and the Class Action Fairness Act;

(iv)    Scheduling a hearing for the Final Approval of this Agreement.

9.    **NOTICE TO CLASS MEMBERS**. If the Court enters the Preliminary Approval Order described in paragraph 8, then within thirty (30) days after entry of such Order, Defendants shall cause to be published, at their expense, a copy of the Notice in the U.S.A. Today Weekend Edition, on two successive weeks. The Parties agree, subject to the Court's approval, that the method of notice described above is reasonably calculated to reach Settlement Class Members, constitutes the best practical notice under the circumstances, and satisfies due process and Fed. R. Civ. Proc. 23.

10.    **FINAL APPROVAL HEARING/JUDGMENT**. The Parties shall petition the Court to hold a Final Approval Hearing and enter a Judgment on a date not less than sixty (60) days after publication of the Notice described in paragraph 9. The Judgment shall:

(a)    Find that the Class Notice previously given to Class members in this action satisfies the requirements of due process and Fed. R. Civ. Proc. 23;

(b)    Find that the Settlement Agreement is fair, reasonable, and adequate to the Settlement Class, find that each member of the Settlement Class (except those who have excluded themselves from the Settlement Class pursuant to Fed. R. Civ. Proc. 23) shall be bound by this Settlement Agreement, including the release and conclude that this Settlement Agreement should be and is approved;

8

(c)     Dismiss on the merits and with prejudice all claims in the Litigation against Defendants, excluding the refund and return rights that are expressly reserved, as provided in Paragraph 7 above; and

(d)     Retain jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of this Settlement.

11.     **OPT-OUTS.** Settlement Class members who wish to opt out of the Settlement must provide written notice of their intent to do so to both Plaintiff and Defendants' counsel. Said notice must be postmarked on or before forty-nine (49) days of the date the Notice was last published. Opt-out requests postmarked after that date will not be valid and such Class members will be bound by all of the terms of this Settlement. At least fifteen (15) business days prior to the Final Approval Hearing described in paragraph 13, Plaintiff shall prepare a list of the persons who have excluded themselves from the Settlement Class (the "Settlement Opt-Outs"), and shall provide the list to the Parties' Counsel. If the number of Settlement Opt-Outs exceeds 2,500, Defendants shall have the option of withdrawing from the Settlement, terminating the Settlement Agreement and continuing the Litigation. Defendants shall provide written notice of the exercise of the option to withdraw no later than five (5) days before the Final Approval Hearing.

12.     **OBJECTIONS.** Class members who wish to object to the Settlement must provide written notice of their intent to do so to both Plaintiff and Defendants' counsel and the Court. Said notice must be postmarked on or before forty-nine (49) days of the date that Notice was last published. Objections postmarked after that date will not be valid and such Class Members will be bound by all of the terms of this Settlement.

13.    **FINAL JUDGMENT**. The Judgment entered at the Final Approval Hearing shall be deemed effective:

(a)    Five days after entry of the Final Judgment if there are no objections;

(b)    Thirty-five (35) days after entry of the Final Judgment approving the Settlement if no document is filed within that time seeking appeal, review or rehearing of the Judgment; or

(c)    If any such document is filed, then fourteen (14) days after the date upon which all appellate and/or other proceedings resulting from such document have been finally terminated in such a manner as to permit the Judgment to take effect in substantially the form described in paragraph 10.

14.    **PARTIES' RIGHT TO WITHDRAW FROM SETTLEMENT**. In the event any court disapproves or sets aside this Settlement Agreement or any material part hereof for any reason, including a refusal to approve the Settlement on the basis that notice is insufficient, or holds that it will not enter or give effect to the Judgment in substantially the form described in paragraph 10, or holds that the entry of the Judgment or any material part thereof should be overturned or modified in any material way, then:

(a)    If all Parties hereto do not agree jointly to appeal such ruling, this Settlement Agreement shall become null and void; any and all orders entered pursuant to this Settlement Agreement shall be vacated and the Litigation shall return to its status prior to entry of the Preliminary Approval Order; or

(b)    If all Parties hereto agree to jointly appeal such ruling and if the Judgment or its equivalent in all material respects is not in effect after the termination of all proceedings arising out of such appeal, this Settlement Agreement shall become null and void; the Litigation may continue; and any and all orders entered pursuant to this Settlement Agreement shall be

vacated and the Litigation shall return to its status prior to entry of the Preliminary Approval Order.

15.   **RELEASE ON THE FINAL APPROVAL DATE:**

(a)   **Plaintiff's and Settlement Class' Release of Defendants**.   Plaintiff and each member of the Settlement Class, except Settlement Opt-Outs, their spouses and former spouses, as well as the present, former, and future respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns of Plaintiff and each Settlement Class member, except Settlement Opt-Outs ("Releasors"), shall, upon the Final Judicial Approval Date, unconditionally, fully and finally release and discharge forever the Released Parties and their past and present principals, partners, employees, associates, owners, stockholders, affiliates, parents, subsidiaries, divisions, branches, departments, agencies, predecessors, successors, assigns, agents, directors, officers, representatives, insurers, successors-in-interest and predecessors-in-interest from all asserted or potential claims, causes of action (at law or equity), liabilities or losses of any kind, anticipated or unanticipated, known or unknown, which any Releasor now has or could have asserted against any of the Released Parties under federal, state or other law, arising out of or related to Urine Gone™, including but not limited to the claims brought in the Litigation. The Court shall enter an order fully and finally enjoining further prosecution of all claims released herein, and ordering the dismissal of all state and federal court actions with prejudice, except that nothing in this release of Released Parties shall be construed to prevent or impede Settlement Class members, excluding the Class Representative, from individually seeking product refunds for Urine Gone kits purchased from defendant Nature's Pillows, Inc. ("Nature's Pillows"), in

11

accordance with Nature's Pillows policies governing refunds and product returns in effect as of January 1, 2007, as set forth above in Paragraph 7 of this Agreement.

(b) The Parties further hereby agree to request that the Court enter an order barring and enjoining, to the fullest extent permitted by applicable law, the commencement and prosecution of any contribution and/or indemnification claim or any other action by or on behalf of any Settlement Class member or entity against any Released Party for any and all claims, damages and or losses, including, without limitation, claims for reimbursement for payments made or to be made to or on behalf of any such Settlement Class member of Urine Gone™-related claims, actions or injuries, or for expenses incurred in defending against any such claims, actions or proceedings. The Parties agree that the Released Parties shall be entitled to dismissal with prejudice of any and all claims against them by or on behalf of any Settlement Class member that violate or are inconsistent with this bar.

16.    **EXTENT OF PARTIES' OBLIGATIONS.** The Parties' obligations under this Settlement are limited solely to the terms of this Settlement Agreement. If the Court imposes other or different requirements, the Parties may void the Settlement Agreement at their sole discretion. In that event, the Litigation may continue; and any and all orders entered pursuant to this Settlement shall be vacated, including, without limitation, any order certifying or approving certification of the Settlement Class.

17.    **INTERPRETATION.** This Settlement Agreement contains the entire agreement among the Parties hereto and supersedes any prior agreements or understandings among them, except as to any agreements between and among the Defendants hereto. All terms are contractual and not mere recitals.

12

18.   **BINDING EFFECT.** The terms are and shall be binding upon each of the Parties hereto, their heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest and assigns, and upon all other persons claiming any interest in the subject matter hereto through any of the Parties hereto including any Settlement Class.

19.   **HEADINGS.** The headings contained in this Settlement Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Settlement Agreement.

20.   **NO RESCISSION ON GROUNDS OF MISTAKE.** The Parties acknowledge that they have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so. Therefore, the Parties agree that they will not seek to set aside any part of the Settlement Agreement on the grounds of mistake. Moreover, the Parties understand, agree, and expressly assume the risk that any fact not recited, contained, or embodied in the Settlement Agreement may turn out hereinafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true, and further agree that the Settlement Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

21.   **AMENDMENT.** This Settlement Agreement may be amended or modified only by a written instrument signed by the Parties or their counsel. Amendments and modifications may be made without notice to the Settlement Class unless notice is required by law or the Court.

13

22.    **CONSTRUCTION**. For the purpose of construing or interpreting this Settlement Agreement, the Parties agree that it is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any party.

23.    **EFFECTIVE DATE**. The effective date of this Settlement Agreement (the "Effective Date") shall occur five business days after the Final Judgment and Order has become final in accordance with paragraph 13.

24.    **INTEGRATION OF EXHIBITS**. The exhibits to this Settlement Agreement are an integral and material part of the settlement and are hereby incorporated and made a part of the Settlement Agreement.

25.    **JURISDICTION**. This Court has jurisdiction over the Parties to this Settlement Agreement, the Settlement Class, the claims asserted in the Litigation, and the claims being released and compromised pursuant to the Settlement Agreement.

26.    **NO ADMISSION**. Neither this Settlement Agreement, nor any of its provisions, nor any of the documents (including but not limited to drafts of the Settlement Agreement, the Preliminary Approval Order or the Final Judgment), negotiations, or proceedings relating in any way to the Settlement, shall be construed as or deemed to be evidence of an admission or concession by any person, including the Released Parties, and shall not be offered or received in evidence, or subject to discovery, in this or any other action or proceeding except in an action brought to enforce its terms or except as may be required by law or court order. The provisions of this Paragraph 26 shall become effective when this Settlement Agreement has been signed by the Parties and shall be binding on the Parties and their counsel regardless of whether the Settlement Agreement is approved by this Court or any other court and regardless of whether the Agreement is otherwise rendered null and void pursuant to paragraphs 11 and 14.

14

27.    **CONFIDENTIALITY**.  The Parties agree that neither Plaintiff nor Class

Counsel, nor defendants shall make any press releases, respond to any press inquiries, or

otherwise communicate information concerning this Settlement Agreement to any media entities

or to any officer, director, executive, manager, employee, attorney, agent or other representative

of Medallion Products, Inc., Envera, LLC, and Performance Chemicals.  If any of the foregoing

persons contact any of the Parties about the Settlement Agreement, the Parties agree to refer the

inquiring press entity to counsel for Nature's Pillows, Inc.

28.    **GOVERNING LAW**.  This Settlement Agreement shall be governed by and

construed in accordance with the internal laws (as opposed to the conflicts of law provisions)

of the State of New York.

29.    **COUNTERPARTS; FACSIMILE**.  This Settlement Agreement may be

executed in counterparts, and may be executed by facsimile, and so executed shall constitute one

agreement.

**IN WITNESS WHEREOF**, the undersigned have executed this Settlement Agreement
as of the date first written above.

Dated: _____        _____
                                        Paul M. Sod, on behalf of the Class
                                        Representative and the Settlement Class


Dated: _____        _____
                                        Pamela Eckhaus

15

Dated: _____        _____
                                       Vincent L. DiTommaso
                                       Peter S. Lubin
                                       Brian C. Witter, P.C.
                                       DiTommaso & Lubin, P.C., on behalf of the Class
                                       Representative and the Settlement Class

Dated: _____        _____
                                       Lance A. Raphael
                                       The Consumer Advocacy Center, P.C.
                                       On behalf of the Class Representative and the
                                       Settlement Class
Dated: _____

                                       _____
                                       Brian L Bromberg
                                       Brian L Bromberg, P.C.
                                       On behalf of the Class Representative and the
                                       Settlement Class

Dated: _3/30/07_____                 _____
                                       Matthew H. Adler
                                       Pepper Hamilton LLP
                                       On behalf of Nature's Pillows, Inc., William
                                       McAllister and Bradley Specter

Dated: _____        _____
                                       Richard P. McElroy
                                       McElroy & Associates, LLP
                                       On behalf of Steve Silbiger

Dated: _____        _____
                                      Vincent L. DiTommaso
                                      Peter S. Lubin
                                      Brian C. Witter, P.C.
                                      DiTommaso & Lubin, P.C., on behalf of the Class
                                      Representative and the Settlement Class


Dated: _____        _____
                                      Lance A. Raphael
                                      The Consumer Advocacy Center, P.C.
                                      On behalf of the Class Representative and the
                                      Settlement Class
Dated: _____

                                      _____
                                      Brian L Bromberg
                                      Brian L Bromberg, P.C.
                                      On behalf of the Class Representative and the
                                      Settlement Class


Dated: _____        _____
                                      Matthew H. Adler
                                      Pepper Hamilton LLP
                                      On behalf of Nature's Pillows, Inc., William
                                      McAllister and Bradley Specter

Dated: March 30, 2007                 _____
                                      Richard P. McElroy
                                      McElroy & Associates, LLP
                                      On behalf of Steve Silbiger


16

27.    **CONFIDENTIALITY.**  The Parties agree that neither Plaintiff nor Class Counsel, nor

defendants shall make any press releases, respond to any press inquiries, or otherwise

communicate information concerning this Settlement Agreement to any media entities or to any

officer, director, executive, manager, employee, attorney, agent or other representative of

Medallion Products, Inc., Envera, LLC, and Performance Chemicals. If any of the foregoing

persons contact any of the Parties about the Settlement Agreement, the Parties agree to refer the

inquiring press entity to counsel for Nature's Pillows, Inc.

28.    **GOVERNING LAW.**  This Settlement Agreement shall be governed by and

construe in accordance with the internal laws (as opposed to the conflicts of law provisions)

of the State of New York.

29.    **COUNTERPARTS; FACSIMILE.**  This Settlement Agreement may be

executed in counterparts, and may be executed by facsimile, and so executed shall constitute one

agreement.

**IN WITNESS WHEREOF**, the undersigned have executed this Settlement Agreement
as of the date first written above.

Dated: _____4/5/07_____

_____
Paul M. Sod, on behalf of the Class
Representative and the Settlement Class

Dated: _____4/5/07_____

_____
Pamela Eckhaus

Dated: 30 July 2007

Vincent L. DiTommaso
Peter S. Lubin
Brian C. Witter, P.C.
DiTommaso & Lubin, P.C., on behalf of the Class
Representative and the Settlement Class

Dated: _____

Lance A. Raphael
The Consumer Advocacy Center, P.C.
On behalf of the Class Representative and the
Settlement Class

Dated: _____

Brian L Bromberg
Brian L Bromberg, P.C.
On behalf of the Class Representative and the
Settlement Class

Dated: _____

Matthew H. Adler
Pepper Hamilton LLP
On behalf of Nature's Pillows, Inc., William
McAllister and Bradley Specter

Dated: _____

Richard P. McElroy
McElroy & Associates, LLP
On behalf of Steve Silbiger

16

Dated: _____


Dated: ___4/5/07_____

 

 

Lance A. Raphael
The Consumer Advocacy Center, P.C.
On behalf of the Class Representative and the
Settlement Class


Brian L Bromberg
~~Brian L Bromberg, P.C.~~ *Bromberg Law Office, P.C.*
On behalf of the Class Representative and the
Settlement Class


Dated: _____


Matthew H. Adler
Pepper Hamilton LLP
On behalf of Nature's Pillows, Inc., William
McAllister and Bradley Specter


Dated: _____


Richard P. McElroy
McElroy & Associates, LLP
On behalf of Steve Silbiger

Dated: 4/5/07

_____
Lance A. Raphael
The Consumer Advocacy Center, P.C.
On behalf of the Class Representative and the
Settlement Class

Dated: _____

_____
Brian L Bromberg
Brian L Bromberg, P.C.
On behalf of the Class Representative and the
Settlement Class

Dated: _____

_____
Matthew H. Adler
Pepper Hamilton LLP
On behalf of Nature's Pillows, Inc., William
McAllister and Bradley Specter

Dated: _____

_____
Richard P. McElroy
McElroy & Associates, LLP
On behalf of Steve Silbiger

16

## ADDENDUM A TO
## SETTLEMENT AGREEMENT AND RELEASE

The following are the changes Defendants will make to the original television advertising spots for Urine Gone<sup>TM</sup> (the "Ad"):

1.    The Original 120-second Ad:

     a.    Original Claim: "Is your pet a peeing machine . . . spraying on the carpet, couch and all over the house

         Change:    None

     b.    Original Claim: "And what about that awful urine smell that never goes away. When you want it gone there's Urine Gone."

         Change:    None

     c.    Original Claim:  The new odor and stain eliminator with powerful enzyme action.

         **Change:**    **The odor and stain eliminator with active enzyme action.**

     d.    Original Claim: "Watch as we expose this hidden urine stain to a scientific black light. Urine Gone goes to work to instantly eliminate it . . . Just spray it on and it's gone. Amazing."

         **Change:**    **"Watch as we expose this hidden urine spot to a stain revealing black light. Urine Gone goes to work to effectively eliminate it. . . Just spray it on and it's gone. Amazing."**

     e.    Original Claim: "This litter box may look clean . . . But because of invisible cat urine it still smells. A few sprays of Urine gone cleans and deodorizes at the same time."

         Change:    None

     f.    Original Claim: "Look, ordinary cleaners only mask the stain. But urine gets absorbed deep into the pad and down into the floorboard where the odor grows."

         **Change:**    **"Look, this ordinary cleaner can clean the stain. But urine gets absorbed deep into the pad and down into the floorboard where the odor grows."**

g.    Original Claim: "But Urine Gone's powerful enzymes have an appetite for urine.  They find it, break it down and digest it completely away.  There's nothing left to harm you, your household or your pets."

**Change:**    **But Urine Gone with its active enzymes finds the urine and works to eliminate even these deep down stains and odors. There's nothing left to harm you, your household or your pets."**

h.    Original Claim: Urine Gone works on virtually any surface indoors and out.

**Change:**    **Urine Gone works on most surfaces indoors and out.**

i.    Original Claim:  "Laboratory tests prove even set in stains are no problem for Urine Gone's powerful enzyme action."

**Change:**    **Delete.**

j.    Original Claim: "No matter how well I cleaned my house, it still smelled like one big litter box . . . But with Urine Gone I just spray and the odor goes away and stays away."

Change:    None

k.    Original Claim: And it's not just for pet accidents.  Urine Gone helps knock out odors and stains in the bathroom and helps eliminate embarrassing tough stains and smells all around the house.

Change:    None

l.    Original Claim: "Compared to a leading urine cleaner . . . Urine Gone is faster and more effective at eliminating odors and stains."

**Change:**    **Delete**

m.    Original Claim:  "Call now and get enough Urine Gone to clean your entire house for just $19.99.

Change:    None

n.    Original Claim:  "Plus we'll include this black light stain detective.  Easily find old stains, invisible smells and stop pet marking. Free."

        o.      Change:      "Plus we'll include this black light stain detective.    Helps find old stains and invisible smells.    Yours absolutely free."

        p.      Original Claim:  "Urine Gone is guaranteed to work or your money back."

        Change:      None

Remainder of ad remains the same.  (deals with pet hair remover and super size bottle.

2.      Original 60-second Ad.

      **Make the same changes as in the 120-second ad.**

# EXHIBIT B

LAW OFFICES

# DiTommaso ♦ Lubin
A PROFESSIONAL CORPORATION

THE OAKBROOK TERRACE ATRIUM
17W 220 22ᴺᴰ STREET
SUITE 200
OAKBROOK TERRACE, ILLINOIS 60181
TELEPHONE 630.333.0000
FACSIMILE 630.333.0333

OAKBROOK TERRACE
CHICAGO
PHOENIX

VINCENT L. DITOMMASO
DIRECT LINE 630.333.0003
vdt@ditommasolaw.com

June 20, 2008

## VIA ELECTRONIC CASE FILING

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn NY 11201

Re:  *Eckhaus v. Nature's Pillows, Inc., et al. (EDNY) 06-CV-985(FB/KM)*
*Response letter to Brian Witter's Motion re: Final Approval and Entry of Amended Final*
*Approval Order*

Dear Judge Block:

In brief response to Brian Witter's Motion for Final Approval and Entry of Amended Final
Approval Order, attached is a copy of the Complaint against Mr. Witter, which was filed in
Illinois state court on June 20, 2008.

Mr. Witter was not retained by and has no contractual relationship with the Plaintiff in this case.
His "lien" is the subject, in part, of the Illinois litigation.  Mr. Witter's relationship is solely with
DiTommaso ♦ Lubin, P.C.  All of Mr. Witter's professional services were billed through
DiTommaso ♦ Lubin, P.C.

LAW OFFICES
DiTOMMASO ♦ LUBIN
A PROFESSIONAL CORPORATION

The Honorable Judge Frederic Block
June 20, 2008
Page Two

The Final Approval Order that we previously submitted has been approved by all counsel of record except Mr. Witter.  However, Mr. Witter has not objected to same.

Very truly yours,

DiTOMMASO ♦ LUBIN, P.C.


/s/ Vincent L. DiTommaso


cc:    Richard P. McElroy, Esq. (via email)
       Matthew H. Adler, Esq. (via email)

       Attachments

       All Counsel of Record (via ECF)

*Eckhaus*

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
DU PAGE COUNTY, ILLINOIS

|  |  |  |
|---|---|---|
| DiTOMMASO-LUBIN, P.C. | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LAW OFFICE OF | ) | |
| BRIAN C. WITTER, P.C. AND | ) | |
| BRIAN C. WITTER individually | ) | |
| Defendant. | ) | |

*Chris Kachiroubas*
****Electronically Filed****
Transaction Id: 1223059
2008CH2378
06/20/2008
KIM FRANCO
status 10/17/08 2007 9:05
***********************

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

NOW COMES the Plaintiff, DiTOMMASO-LUBIN, P.C. ("DiTOMMASO") by its attorneys, LARAIA AND HUBBARD, P.C., and for its Complaint for Declaratory Judgment and Injunctive Relief, pursuant to 735 ILCS §§ 5/2-701 and 5/11-101, et seq. of the Illinois Code of Civil Procedure, against Defendants, LAW OFFICE OF BRIAN C. WITTER, P.C. AND BRIAN C. WITTER individually, (hereinafter collectively referred to as "WITTER") and alleges as follows:

### INTRODUCTION

1.    This is an action seeking a declaratory judgment and injunctive relief with respect to numerous purported Notices of Attorney's Lien served by Witter upon defendants in lawsuits brought on behalf of certain of DiTommaso's hourly and contingency fee clients following Witter's termination and disengagement from DiTommaso for cause. Witter never had any agreement with any of DiTommaso's client's against whom Witter purports to assert attorney's liens for the payment of attorney's fees. Witter's sole agreement for compensation was with

DiTommaso, which DiTommaso has honored.   Notwithstanding having no right to turn to DiTommaso's clients for payment of attorney's fees, or to file fee petitions with courts in class action cases, having already been compensated for his work by DiTommaso according to two independent contractor agreements, and having been discharged from DiTommaso for cause after causing it harm due to his poor performance and inefficiency, Witter has engaged in an wrongful acts, and in derogation of client rights of asserting fraudulent and bogus liens against the recoveries of DiTommaso's clients and from class-action fee awards.

## PARTIES

2.     DiTommaso is a law firm with its principle place of business at 17W 220 22nd Street, Oak Brook Terrace, Illinois.

3.     Law Office of Brian C. Witter is an Illinois professional corporation ostensibly engaged in the practice of law with its principle place of business at 111 West Jackson Boulevard, Chicago, Illinois. Law Office of Brian C. Witter does business in both Cook and Du Page Counties, Illinois.

4.     Defendant, Brian C. Witter is an individual attorney who resides at 1449 N. North Park Chicago Illinois, 60610, and who, on information and belief, is the sole officer and shareholder, and principle attorney of the Law Office of Brian C. Witter.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 735 ILCS § 5/2-701, and there exists a justiciable controversy capable of resolution by this Court.

6.     Venue is proper in Du Page County because the transaction out of which this cause   of     action     arose     occurred     in     Du     Page     County.

2

<u>DECLARATORY JUDGMENT</u>

7.    DiTommaso and Defendant Brian C. Witter entered into an Agreement for Professional Services (the "Agreement") on or about December 19, 2005, a copy of which is attached as Exhibit "A".

8.    The Agreement provides that Brian C. Witter was engaged by DiTommaso as an independent contractor to provide legal services to DiTommaso for a specified period of time.

9.    The Agreement further provides that Brian C. Witter, would be compensated at the rate of $1,000.00 a week for work he performed for DiTommaso.

10.    Pursuant to the Agreement, Witter worked on various hourly paying, and contingency fee matters for DiTommaso, and received his guaranteed weekly compensation in return for working on all these cases.

11.    In or about the Spring of 2007, the parties orally modified the Agreement to increase the amount of Witter's set non-discretionary compensation for working on all hourly paying and contingency cases of DiTommaso on which Witter, as an independent contractor, chose to work.

12.    In addition to his set agreed upon compensation for services rendered to DiTommaso between December 2005 and April 2006, DiTommaso paid Witter a discretionary bonus in April 2007 for that same work.

13.    Witter was fully paid for the services he rendered to DiTommaso on all contingency and hourly paying cases for the period December 2005 until February 1, 2008 under the terms of the parties' Agreement.

14.    In early 2008, Witter requested payment of a discretionary bonus stating that he needed the money to help rectify serious new financial problems he was facing, and long standing past financial problems. He said he needed more money to pay his 2007 income tax liability for which he failed to set aside sufficient funds, and to pay other obligations including his student loan and prior IRS tax lien obligations totaling on information and belief well in excess of $300,000. DiTommaso declined to provide the requested discretionary bonus.

15.    Also in early 2008, DiTommaso informed Witter that he had failed to address and rectify numerous performance and judgment issues which had repeatedly come up, and which DiTommaso and certain co-counsel in contingency cases had asked him to correct and which he had failed to correct. DiTommaso stated to Witter that due to his poor performance and lack of efficiency and profitability, DiTommaso was no longer willing to provide Witter guaranteed weekly compensation as an independent contractor working on hourly paying and contingency cases. DiTommaso stated that if Witter wished to continue working as an independent contractor the parties would need to agree upon a new independent contractor arrangement which would encourage Witter to work in a more efficient and profitable manner, and that Witter would also have to rectify the many performance and judgment issues.

16.    The Agreement was superseded by a subsequent Independent Contractor Agreement For Professional Services ('Independent Contractor Agreement') which is dated February 1, 2008. A copy of the Independent Contractor Agreement is attached as Exhibit "B"

17.    The Independent Contractor Agreement sets forth a specific compensation arrangement for work performed by Brian C. Witter, P.C. for DiTommaso that does not include any set base compensation.

4

18.   The Independent Contractor Agreement refers to Brian C. Witter, P.C. as an independent contractor.

19.   The Independent Contractor Agreement sets forth the term of the Independent Contractor Agreement between DiTommaso and Brian C. Witter, P.C., as beginning February 1, 2008 and ending July 31, 2008.

20.   Pursuant to the Independent Contractor Agreement, Brian C. Witter, P.C. was to provide legal services to DiTommaso on a variety of matters, as agreed to between the parties.

21.   As to past services rendered by Witter to DiTommaso before February 1, 2008, the Independent Contractor Agreement states in the recitals: "The Firm at its sole discretion, in April 2007, paid Witter a discretionary bonus and has paid, from time to time additional monies to Witter on time Witter has previously expended on a variety of matters for the Firm between December 19, 2005 and January 31, 2008."

22.   The Independent Contractor Agreement at paragraph 3(b)(x) states that "on contingency cases where Witter has performed work prior to the date of this Agreement, Witter shall be paid at the sole discretion of the firm." This provision mirrored the parties' preexisting agreement that for work Witter performed prior to January 31, 2008, in addition to his base compensation, he could also receive bonuses subject to the sole discretion of the Firm.

23.   Pursuant to the Independent Contractor Agreement, either party could terminate the Independent Contractor Agreement at any time, for any reason, prior to the expiration of the six month term.

24.   Witter's already poor work performance and poor judgment increased at an accelerated pace after the execution of the Independent Contractor Agreement. In addition, DiTommaso learned of a serious past act of malpractice by Witter in a New York class action

case, which through significant time, and effort DiTommaso was able to completely rectify in an amendment to the class action settlement.

25.    DiTommaso terminated Brian C. Witter, P.C. pursuant to the Independent Contractor Agreement on April 7, 2008.  See termination notice which is attached as Exhibit "C."

26.    Although no cause was required for termination, DiTommaso terminated the Independent Contractor Agreement for cause.  DiTommaso told Witter before his termination of many of the reasons for the termination.

27.    After Brian C. Witter, P.C's termination, Brian C. Witter, P.C. sent Notices of Attorney's Lien ("Lien Notices") to various parties purportedly pursuant to 770 ILCS § 5/1, and for one New York class-action case purportedly pursuant to 770 ILCS § 5/1 and New York Judiciary Law § 475.

28.    The Lien Notices purport to assert attorney's liens against the recoveries of potential funds from various contingency, unpaid hourly, and class action lawsuits filed by DiTommaso on behalf of its clients. See Lien Notices attached as Exhibit "D."

29.    Witter's compensation for his work on these contingency and unpaid hourly cases is governed by the terms of the Independent Contractor Agreement which only allows him to receive an entirely discretionary bonus payment on the contingency cases, in addition to the weekly compensation and bonus he already received for that work.

30.    Witter is not entitled to seek payment from DiTommaso's clients, or the courts at his reasonable hourly rate because he had no agreement for payment of fees with any of DiTommaso's clients, and he was already compensated for his work through his set agreed upon contractual compensation, and a April 2007 discretionary bonus payment, and had agreed in

writing that any future compensation for such work was at the sole discretion of DiTommaso.

31.    However, in Witter's Lien Notices, Witter claims the right to be paid directly from the proceeds of DiTommaso's clients or through fee awards from class action settlements at his hourly market rate, as opposed to the under the terms of his Independent Contractor Agreement.

32.    Although the various Lien Notices are dated April 15, 2008, their Certificates of Service are all dated June 9, 2008.

33.    Neither Brian C. Witter, P.C. nor Brian C. Witter entered into any agreement for payment of attorney's fees directly with any of DiTommaso's clients to whom Witter sent Lien Notices.

34.    Witter has also filed a fee petition in one class action case pending in New York seeking fees for himself in direct violation of the Independent Contract Agreement's requirement that he look solely to DiTommaso for any compensation in that case.  DiTommaso has a right to award any additional compensation to Witter at its sole discretion because was already paid for this work.

35.    All of the clients against whom Witter asserts purported attorney's liens are clients of DiTommaso, not Witter.

36.    Witter misrepresents under penalty of perjury in each of the Lien Notices that DiTommaso's client retained him and that he had a reasonable expectation of being paid his hourly rate, as opposed to pursuant to the compensation terms he agreed upon in his independent contractor agreements with DiTommaso.

37.    Contrary to Witter's misstatements, Witter worked on DiTommaso client matters solely as an independent contractor and neither Brian C. Witter nor the Law Office of Brian C.

Witter, PC was ever directly engaged by any of DiTommaso's clients against whom Witter asserted these attorney's liens.

38.    Witter was not hired by any of the clients referenced in its Lien Notices and agreed to be compensated by DiTommaso and not DiTommaso's clients; therefore, Witter has no lien rights and its purported Lien Notices are invalid.

39.    Even assuming that Witter did have an agreement with DiTommaso's clients regarding payment of attorney's fees, which he did not, Witter's Lien Notices are defective because Witter did not serve its Lien Notices during the existence of any attorney/client relationship, as Witter was terminated for cause on April 7, 2008 and its Lien Notices were served via certified mail on June 9, 2008.

40.    DiTommaso has performed all of its obligations to Witter under the terms of the parties' independent contractor agreements.

41.    Witter has materially breached the parties' contract by seeking compensation in violation of the terms of the Independent Contractor Agreement from DiTommaso's clients and not from DiTommaso itself, to the extent Witter has any such claim.

42.    Witter's breach of contract is interfering with DiTommaso's attorney/client and co-counsel relationships, harming its reputation, and causing DiTommaso ongoing actual and irreparable injury and damages for which there is no adequate remedy at law. This ongoing irreparable injury can only be cured through declaratory and injunctive relief. Specifically, without adjudication in favor of DiTommaso and its clients, Witter's Lien Notices would require block defendants in cases in which DiTommaso represents its clients from paying DiTommaso, DiTommaso's clients, and DiTommaso's co-counsel in certain matters. These notices interfere

with timely payment of monies to DiTommaso clients and to co-counsel and constitute a
wrongful and willful interference by Witter with DiTommaso business and client relations.

43.    An actual controversy exists between the Plaintiff and Defendants as to: (1)
Defendants alleged right to assert Attorney's Liens against DiTommaso's clients' settlement
funds or Judgments; (2) Defendants' right to claim compensation contrary to and in materially
breach of the express terms of the parties' written contract.

WHEREFORE, the Plaintiff, DiTOMMASO-LUBIN, P.C., prays that this Court declare
that: (1) the Defendants have no statutory Attorney Lien rights; that Defendants did not enter into
contracts with any of DiTommaso's clients referenced in Defendants' Lien Notices; and that
Defendants' Lien Notices are invalid because Defendants were terminated before the date of
service of Defendants' Lien Notices, and the Notices are contrary to the terms of Defendants'
contract with DiTommaso; (2) under the terms the parties' independent contractor agreement
neither DiTommaso nor its clients owe Defendants the monies sought by Defendants' Lien
Notices and Witter is not entitled to petition for fees in any class action in violation of the terms
of the parties' written agreement; (3) Defendants' are in material breach of contract for seeking
compensation contrary to the terms of the parties' contract.

DiTOMMASO-LUBIN, P.C. further prays that this Court temporarily, preliminarily and
permanently enjoin Defendants from: (1) seeking to enforce the invalid Attorney Liens, (2)
interfering with, and irreparably damaging DiTommaso' client and co-counsel relationships
through the fraudulent assertion of the invalid Attorney Liens; (3) seeking compensation contrary

to the terms of the parties' contract, whether by asserting purported Attorney's Liens or

otherwise.

LARAIA & HUBBARD, P.C.

By _____

## CERTIFICATE OF ATTORNEY

I certify as attorney of record in this cause, that I have read the above pleading and that to the best of my knowledge, information and belief, formed after reasonable inquiry of my client, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the statements contained herein concerning the lack of knowledge, if any, are true and are not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

_____
As Attorney and Not Personally

LARAIA & HUBBARD, P.C.
Attorney No. 007
1761 S. Naperville Road, Suite 203
Wheaton, Illinois  60187
(630) 690-6800

## Agreement for Professional Services

This Agreement for Professional Services ("Agreement"), made this 19th day of December, 2005, is by and between Brian C. Witter ("Witter"), a lawyer and independent contractor, of 1449 North North Park, Chicago, Illinois, 60610, and the law firm of DiTommaso Lubin, PC. ("the Firm"), whose principal place of business is at 17 West 220 22nd Street, Suite 200, Oakbrook Terrace, Illinois, 60181.

WHEREAS, Witter is a lawyer who was admitted to practice in the State of Illinois in 1988, and has broad experience as a litigation and trial attorney; and

WHEREAS, the Firm wishes to engage Witter's professional services as a lawyer for a six-month term as more fully described below;

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, Witter and the Firm agree as follows:

### 1. Term.

This Agreement shall be for a term of six months, between December 19, 2005 and June 19, 2006; and the parties may, if they so agree, extend the Agreement for an additional six month term.

### 2. Services.

Witter will provide legal services to the Firm, relying on his experience and professional expertise, on a variety of matters as the parties may mutually agree, and will be designated as "Of Counsel" to the Firm.

### 3. Compensation and Hours.

Witter will be compensated for his time by the firm at the rate of $1000.00 per week, although the Firm will bill Witter's time to clients, at market rates, on a case by case basis, as it sees fit. Witter will set his own working hours, and will work out of his home office from time to time as he sees fit, although for at least four days each week he will work out of his office in the Firm's office suite between the hours of 7:00 a.m. and 4:00 p.m.

### 4. Office Space.

Witter will pay $166.66 per month in rent to the Firm for office space.



1

**5. Benefits.**

Witter will not receive health insurance, either medical or dental, from the Firm; nor will Witter be eligible to participate in the Firm's pension plan. Neither will Witter receive vacation or sick pay from the Firm.

**6. Other Non-reimbursable Expenses.**

Witter will be solely responsible for any fees and expenses related to the renewal of his law license, as well as all bar dues and other professional expenses, including travel and the insurance and other costs associated with the maintenance of Witter's automobile.

**7. Witter's Legal Business.**

Witter may, at his sole discretion, choose to undertake any and all legal matters as he sees fit, including working for other law firms; however, Witter will allow the Firm a right of first refusal on all legal business that he might generate during the term of the Agreement, and he further agrees to split all fees with the Firm as follows: 66.67.% of all legal fees will go to the Firm; while Witter will receive 33.33% of said fees.

**8. Termination.**

Both Witter and the Firm, individually or in concert, may choose to terminate the Agreement at any time, for any reason, prior to the expiration of the six month term, and said termination will also extinguish any renewal of the Agreement that the parties may have agreed upon.

**9. Governing Law.**

This Agreement is governed by the laws of the State of Illinois.

_____                    By: _____

Brian C. Witter                                          DiTommaso Lubin, PC.

2

## INDEPENDENT CONTRACTOR AGREEMENT FOR PROFESSIONAL SERVICES

This Agreement for Professional Services ("Agreement"), made this 1st day of February, 2008, is by and between Brian C. Witter, P.C. ("Witter"), a professional corporation and independent contractor, whose principal place of business is located at 1449 North North Park, Chicago, Illinois, 60610, and the law firm of DiTommaso ♦ Lubin, PC. ("the Firm"), whose principal place of business is located at 17 West 220 22nd Street, Suite 200, Oakbrook Terrace, Illinois 60181.

WHEREAS, Brian C. Witter is the principal lawyer and the sole shareholder of Witter, and was admitted to practice in the State of Illinois in 1988; and

WHEREAS, the Firm wishes to engage Witter's professional services as Of Counsel for a six-month term on now and different terms as more fully described below; and

WHEREAS, the Firm, at its sole discretion, in April 2007, paid Witter a discretionary bonus and has paid, from time to time, additional monies to Witter on time Witter has previously expended on a variety of matters for the Firm between December 19, 2005 and January 31, 2008. This Agreement is intended to apply to all matters and work hereinafter performed as more fully described below.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, Witter and the Firm agree as follows:

**1. Definition and Term.**

The term "hereinafter" as used in this Agreement shall mean the period of time commencing February 1, 2008 and continuing during the term and renewal term of this Agreement. This Agreement shall be for a term of six months, between February 1, 2008 and July 31, 2008; and the parties may, if they so agree in writing, extend this Agreement for an additional six month term.

**2. Services.**

Witter shall provide legal services to the Firm on a variety of matters as the parties may mutually agree and will be designated as "Of Counsel" to the Firm.

**3. Compensation and Hours.**

(a)    Billable Hourly Matters:

Commencing March 15, 2008 and continuing on the 15th day of each month thereafter during the term of this Agreement, Witter shall be compensated for its time and paid for business it generates/originates by the Firm as follows: Witter will share the risk of non-collection or slow-paying clients. For the Firm's billable hourly work hereinafter billed by Witter and collected by the Firm, Witter shall be paid thirty three percent (33%) of



EXHIBIT
B

Witter's hereinafter respective hourly fee billings, except that for the first payment due under the Agreement, on February 25, 2008, Witter shall be paid thirty three percent (33%) of hours billed by Witter in December, 2007 and that were collected by the Firm in January, 2008 and Witter shall be paid on February 25, 2008 a $2,000.00 "draw" against future earnings due Witter under the terms of this Agreement. The $2,000.00 draw paid to Witter shall be considered advance payment of monies due Witter hereunder and shall be deducted from any monies due Witter on March 15, 2008 and thereafter, if appropriate. Should Witter terminate the Agreement for any reason prior to its expiration on July 31, 2008, Witter shall, within thirty (30) days, repay the Firm the full amount of the February 25, 2008 payments made to it by the Firm.

In addition, Witter shall receive ten percent (10%) of hours hereinafter billed by Witter and collected by the Firm on Witter originated/generated files, except that for the first payment due under the Agreement, on February 25, 2008, Witter shall be paid ten percent (10%) of hours billed by Witter in December 2007 and collected by the Firm in January 2008 on Witter originated/generated files.

On Witter generated/originated matters where other Firm attorneys have hereinafter billed their respective time, Witter shall receive twenty percent (20%) of those hours billed and collected by the Firm.

The Firm currently has the following Witter generated files:

(1) *In Re Marriage of Perovich, 89 D 507*; and

(2) *Johnson v. O'Donnell, et al. 07-1-01-003.*

(b)    Contingency Matters:

(The Firm shall be responsible for advancing all costs and expenses in contingency cases.)

(i)    On matters where Witter's hereinafter respective time billed (Witter's Lodestar) is at least ninety percent (90%) or more of the total time billed (total Lodestar which includes all time billed by all Firm attorneys and Witter), Witter shall be paid forty-five percent (45%) of the "net total fee" paid to or received by the Firm. One hundred fifty percent (150%) unrecovered costs that are billed on the respective file, referral fees and fee sharing monies paid shall reduce the total fees received by the amount paid thereof resulting in "total net fee". Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement

(ii)    On matters where Witter's hereinafter respective time billed (Witter's Lodestar) is at least eighty percent (80%) but less than ninety percent (90%) of the

2



total time billed (total Lodestar which includes all time billed by all Firm attorneys and Witter), Witter shall be paid forty percent (40%) of the "net total fee" paid to or received by the Firm. One hundred fifty percent (150%) unrecovered costs that are billed on the respective file. referral fees and fee sharing monies paid shall reduce the total fees received by the amount paid thereof resulting in "total net fee". Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement.

(iii)    On matters where Witter's hereinafter respective time billed (Witter's Lodestar) is at least seventy percent (70%) but less than eighty percent (80%) of the total time billed (total Lodestar which includes all time billed by all Firm attorneys and Witter), Witter shall be paid thirty-five percent (35%) of the "net total fee" paid to or received by the Firm. One hundred fifty percent (150%) unrecovered costs that are billed on the respective file, referral fees and fee sharing monies paid shall reduce the total fees received by the amount paid thereof resulting in "total net fee". Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement.

(iv)    On matters where Witter's respective time hereinafter billed (Witter's Lodestar) is at least sixty percent (60%) but less than seventy percent (70%) of the total time billed (total Lodestar which includes all time billed by all Firm attorneys and Witter), Witter shall be paid thirty percent (30%) of the "net total fee" paid to or received by the Firm. One hundred fifty percent (150%) unrecovered costs that are billed on the respective file, referral fees and fee sharing monies paid shall reduce the total fees received by the amount paid thereof resulting in "total net fee". Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement.

(v)    On matters where Witter's respective time hereinafter billed (Witter's Lodestar) is at least fifty percent (50%) but less than sixty percent (60%) of the total time billed (total Lodestar which includes all time billed by all Firm attorneys and Witter), Witter shall be paid twenty-five percent (25%) of the "net total fee" paid to or received by the Firm. One hundred fifty percent (150%) unrecovered costs that are billed on the respective file, referral fees and fee

3



sharing monies paid shall reduce the total fees received by the amount paid thereof resulting in "total net-fee". Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement.

(vi)    On matters where Witter's respective time hereinafter billed (Witter's Lodestar) is at least forty percent (40%) but less than fifty percent (50%) of the total time billed (total Lodestar which includes all time billed by all Firm attorneys and Witter), Witter shall be paid twenty percent (20%) of the "net total fee" paid to or received by the Firm. One hundred fifty percent (150%) unrecovered costs that are billed on the respective file, referral fees and fee sharing monies paid shall reduce the total fees received by the amount paid thereof resulting in "total net fee". Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement.

(vii)   On matters where Witter's respective time hereinafter billed (Witter's Lodestar) is at least thirty percent (30%) but less than forty percent (40%) of the total time billed (total Lodestar which includes all time billed by all Firm attorneys and Witter), Witter shall be paid fifteen percent (15%) of the "net total fee" paid to or received by the Firm. One hundred fifty percent (150%) unrecovered costs that are billed on the respective file, referral fees and fee sharing monies paid shall reduce the total fees received by the amount paid thereof resulting in "total net fee". Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement.

(viii)  On matters where Witter's respective time hereinafter billed (Witter's Lodestar) is at least twenty percent (20%) but less than thirty percent (30%) of the total time billed (total Lodestar which includes all time billed by all Firm attorneys and Witter), Witter shall be paid ten percent (10%) of the "net total fee" paid to or received by the Firm. One hundred fifty percent (150%) unrecovered costs that are billed on the respective file, referral fees and fee sharing monies paid shall reduce the total fees received by the amount paid thereof resulting in "total net fee". Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional

4



ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement.

(ix)    On matters where Witter's respective time hereinafter billed (Witter's Lodestar) is at least ten percent (10%) but less than twenty percent (20%) of the total time billed (total Lodestar which includes all time billed by all Firm attorneys and Witter), Witter shall be paid five percent (5%) of the "net total fee" paid to or received by the Firm. One hundred fifty percent (150%) unrecovered costs that are billed on the respective file, referral fees and fee sharing monies paid shall reduce the total fees received by the amount paid thereof resulting in "total net fee". Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement.

(x)    On matters where Witter's respective time hereinafter billed (Witter's Lodestar) is less than ten percent (10%) of the total time billed (total Lodestar which includes all time billed by all Firm attorneys and Witter), or where Witter has terminated this Agreement prior to the Firm being paid or receiving money on the respective case(s) and/or on contingency cases where Witter has performed work prior to the date of this Agreement, Witter shall be paid at the sole discretion of the Firm. Also, on those contingency cases where Witter generated or located the Plaintiff and there is no referral fee owed to another attorney, Witter shall receive an additional ten percent (10%) of the "net total fee". The additional ten percent (10%) of the "net total fee" due Witter shall be confirmed in writing by the undersigned at the time the Plaintiff has signed a Firm Retainer Agreement.

(c)    On collected (and billed) matters as described in 3(a) and 3(b) herein where payments were received by the Firm in the previous month, the Firm shall pay Witter on the 15th of each respective month.

Witter will set its own working hours, and will work out of its home office from time to time as it sees fit, although Witter will be provided the office at the Firm's Chicago location at 332 North Michigan Avenue, Chicago, Illinois between the hours of 7:00 a.m. and 4:00 p.m. at least four (4) days each week.

4. Benefits.

Witter will not receive health insurance, either medical or dental, from the Firm. Witter will not be eligible to participate in the Firm's pension, profit sharing or 401(k) plan(s). Witter will not receive vacation or sick pay from the Firm. However, the Firm will add Witter as additional counsel to its malpractice insurance.

5



**5. Other Non-reimbursable Expenses.**

Witter will be solely responsible for any fees and expenses related to the renewal of his law license, as well as all bar dues and other professional expenses, including travel and the insurance and other costs associated with the maintenance of Witter's automobile.

**6. Witter's Legal Business.**

Witter shall not undertake any and all legal matters without the express approval of the Firm. Witter is not authorized to sign any client retainer agreements and settlement statements on behalf of Witter or the Firm. Vincent L. DiTommaso and Peter S. Lubin are solely authorized to execute client retainer agreements and settlement statements on behalf of Witter or the Firm. All work performed by Witter shall be under the direct supervision of the principals of the Firm and Witter shall copy and obtain approval from either of the Firm's principals on all work that Witter has prepared in final draft form. The Firm shall have the sole discretion in determining what Witter will disseminate as work product of the Firm.

**7. Termination.**

Both Witter and the Firm, individually or in concert, may choose to terminate the Agreement at any time, for any reason, prior to the expiration of the six month term, and said termination shall also extinguish any renewal of the Agreement that the parties may have agreed upon. Should Witter terminate this Agreement prior to July 31, 2008, Paragraph 3(a) shall apply.

**8. Governing Law.**

This Agreement is governed by the laws of the State of Illinois.

Brian C. Witter, P.C.

By:

DiTommaso + Lubin, P.C.

By:

6

**Vincent DiTommaso**

From:     Vincent DiTommaso
Sent:     Monday, April 07, 2008 5:05 PM
To:       Brian Witter
Subject:  Termination of our business realtionship

This will confirm our meeting today wherein we terminated our business relationship and our Independent Contractor Agreement "Agreement") with you,

I understand that you will be taking the O'Donnell, Varnau and 2-Swift Cases with you. You agreed to file motions to substitute in those cases.

We will pay what is owed to you under the Agreement. Any and all of your future billings (as of today's date) will not be subject to the Agreement and will not be billed through DiTommaso-Lubin, P.C. You will **not** have access to the DiTommaso-Lubin, P.C. Chicago and Oakbrook Terrace offices except that you are permitted to remove your personal items from the Chicago office tomorrow. We will gather whatever personal belongings you have at the Oakbrook office. As I requested, please leave in the desk at the Chicago office the keys, key-fob and security pass for each of the offices.

Should you have any questions or comments, please do not hesitate to contact me.

Vincent L. DiTommaso
Tel: 630.333.0000
Fax: 630.333.0333
vdt@ditommasolaw.com

☒

Notice: This e-mail and any attached document(s) are intended only for the use of the individual or entity to whom or to which it is addressed and may contain information that is privileged, confidential, proprietary, and/or trade secret. If the reader of this message is not the intended recipient or an employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or reproduction of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately and discard the original message and any attachment(s).



4/7/2008

' 06/13/2008  18:51   3122016481          TRIBLERORPETT&MEYER          PAGE  02/04

22/04
689.22957
⑤

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINIOIS,
## EASTERN DIVISION

JANINCE KOINEWKO, on behalf
of herself and all others similarly situated,      )
                                                   )
              Plaintiff,                           )
                                                   )          Case No. 07-CV-#5338
                                                   )
       v.                                          )          Honorable Robert Dow
                                                   )
DICKLER, KAHN, SLOWIKOWSKI                         )
& ZAVELL, LTD..,                                   )
                                                   )
              Defendant.                           )

## NOTICE OF ATTORNEY'S LIEN

### VIA CERTIFIED MAIL

Dickler, Kahn, Slowikowski & Zavell, Ltd.
85 W. Algonquin Rd. #420
Arlington Heights, IL 60005

YOU ARE HEREBY NOTIFIED that pursuant to ILCS 770 § 5/1, as the undersigned attorney for plaintiff Janice Konewko and the class in the above-referenced action, I claim a lien in the amount of $5950.00 on the cause of action of Konewko and the class for services rendered as their attorney in this cause, which lien shall attach to any verdict, report, determination, decision, judgment, settlement or final order in favor of Konewko and the class, and the proceeds thereof in whatsoever hands they may come. The recovery to which the undersigned's lien attaches may be described as follows: the claim of Brian C. Witter ("Witter") is $5950.00 is for reasonable compensation based on hours billed at his regular and customary rate for professional services rendered on behalf of Janice Konewko and the class in the above action.

Dated: April 15, 2008

Brian C. Witter

Law Offices of Brian C. Witter, *PC*
Brian C. Witter, *PC*
111 West Jackson Blvd.
Suite 1100
Chicago, IL, 60604
Phone: 312.961.4942
Facsimile 312.386.9759
brianwitterpc@gmail.com
Attorney No. 6198156


EXHIBIT
1

06/13/2008  10:51    3122815401              TRIBLERORPETT&MEYER                    PAGE   03/04

CERTIFICATE OF SERVICE

The undersigned attorney, Brian C. Witter, certifies that on Tuesday June 9, 2008, he served the foregoing *NOTICE OF ATTORNEY'S LIEN* upon the following parties, via Certified Mail:

Dickler, Kahn, Slowikowski & Zavell, Ltd.
85 W. Algonquin Rd. #420
Arlington Heights, IL 60005

Counsel:      Panos T. Topalis
              Tribler Orpett and Meyer, P.C.
              225 West Washington Street
              Suite 1300
              Chicago, IL 60606

Brian C. Witter

06/13/2008  10:51    3122016401          TRIBLERORPETT&MEYER              PAGE  04/04

## DECLARATION OF BRIAN C. WITTER

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows, under penalties of perjury:

1.    I am the attorney named above. I have read the attached *NOTICE OF ATTORNEY'S LIEN* and am familiar with its contents. At all times relevant to the notice, I was and have been licensed to practice law in the State of Illinois and have been admitted to the United States District Court for the Northern District of Illinois. To the best of my knowledge, the contents of the notice are true and correct.

Brian C. Witter

Dated: April 15, 2008

Law Offices of Brian C. Witter, *PC*
Brian C. Witter, *PC*
111 West Jackson Blvd.
Suite 1100
Chicago, IL, 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
brianc.witter.x@gmail.com

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| Sara Chirinos, | ) | |
| Plaintiff, | ) | Case No. 07-CV- 05804 |
| | ) | |
| v. | ) | Honorable John A. Nordberg |
| | ) | |
| World Savings Bank, FSB | ) | Magistrate Judge Nolan |
| | ) | |
| Defendant.., | ) | |
| | ) | |

### NOTICE OF ATTORNEY'S LIEN

#### VIA CERTIFIED MAIL

World Savings Bank, FSB
4101 Wiseman Blvd.
San Antonio, TX 78251

YOU ARE HEREBY NOTIFIED that pursuant to ILCS 770 § 5/1, as the undersigned attorney for plaintiff Sara Chirinos in the above-referenced action, I claim a lien in the amount of $5250.00 on the cause of action of Chirinos for services rendered as her attorney in this cause, which lien shall attach to any verdict, report, determination, decision, judgment, settlement or final order in favor of Wuttke, and the proceeds thereof in whatever hands they may come. The recovery to which the undersigned's lien attaches may be described as follows: the claim and lien of Brian C. Witter in the amount of $5250.00 is for reasonable compensation based on hours billed at his regular and customary rate for professional services rendered on behalf of Sara Chirinos in the above action.

Dated: April 15, 2008

Brian C. Witter

Law Offices of Brian C. Witter, *PC*

Brian C. Witter, *PC*
111 West Jackson Blvd.
Suite 1100
Chicago, IL, 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
*brianewitterpc@gmail.com*
Attorney No. 6198156

## DECLARATION OF BRIAN C. WITTER

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows, under penalties of perjury:

I am the attorney named above. I have read the attached *NOTICE OF ATTORNEY'S LIEN* and am familiar with its contents. At all times relevant to the notice, I was and have been licensed to practice law in the State of Illinois and have been admitted to the United States District Court for the Northern District of Illinois. To the best of my knowledge, the contents of the notice are true and correct.

Brian C. Witter

Dated: April 15, 2008

Law Offices of Brian C. Witter, *PC*
Brian C. Witter, *PC*
111 West Jackson Blvd.
Suite 1100
Chicago, IL, 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
*brianewitterpc@gmail.com*

## CERTIFICATE OF SERVICE

The undersigned attorney, Brian C. Witter, certifies that on Tuesday June 9, 2008, he served the foregoing *NOTICE OF ATTORNEY'S LIEN* upon the following parties, via Certified Mail:

World Savings Bank, FSB
4101 Wiseman Blvd.
San Antonio, TX 78251

Counsel:    Gary S, Caplan
Reed Smith LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606

Brian C. Witter

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
### EASTERN DIVISION

| | |
|---|---|
| JANET AGRANOFF, on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) ) ) ) ) | Case No. 07-CV-4933 |
| v. ) ) | Honorable Suzanne B. Conlon |
| LENSCRAFTERS, INC., ) ) ) | |
| Defendant. ) | |

## NOTICE OF ATTORNEY'S LIEN

### VIA CERTIFIED MAIL

LensCrafters, Inc.
4000 Luxottica Place
Mason, OH 45040

YOU ARE HEREBY NOTIFIED that pursuant to ILCS 770 § 5/1, as the undersigned attorney for plaintiff Janet Agranoff and the class in the above-referenced action, I claim a lien in the amount of $73,500.00 on the cause of action of Agranoff and the class for services rendered as their attorney in this cause, which lien shall attach to any verdict, report, determination, decision, judgment, settlement or final order in favor of Agranoff and the class, and the proceeds thereof in whatever hands they may come. The recovery to which the undersigned's lien attaches may be described as follows: the claim of Brian C. Witter ("Witter") is for reasonable compensation based on actual hours billed to the above action. The lien and claim in the amount of $73,500 represents Witter's lodestar at rates comparable to those of his co-counsel in this action.

Dated: April 15, 2008

Brian C. Witter

Law Offices of Brian C. Witter, *PC*
Brian C. Witter, *PC*
111 West Jackson Blvd.
Suite 1100
Chicago, IL, 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
*brianewitterpc@gmail.com*

## DECLARATION OF BRIAN C. WITTER

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows, under penalties of perjury:

1.    I am the attorney named above. I have read the attached *NOTICE OF ATTORNEY'S LIEN* and am familiar with its contents. At all times relevant to the notice, I was and have been licensed to practice law in the State of Illinois and have been admitted to the United States District Court for the Northern District of Illinois, and the United States Court of Appeals, Seventh Circuit. To the best of my knowledge, the contents of the notice are true and correct.

Brian C. Witter

Dated: April 15, 2008

Law Offices of Brian C. Witter, *PC*
Brian C. Witter, *PC*
111 West Jackson Blvd.
Suite 1100
Chicago, IL, 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
*brianwitterpc@gmail.com*

2

## CERTIFICATE OF SERVICE

The undersigned attorney, Brian C. Witter, certifies that on Tuesday June 9, 2008, he served the foregoing *NOTICE OF ATTORNEY'S LIEN* upon the following parties, via Certified Mail:

LensCrafters, Inc.
4000 Luxottica Place
Mason, OH 45040

Counsel:    Joseph A. DiBenedetto, Esq.
Winston & Strawn LLP 200 Park Avenue
New York, New York
10166-4193

Brian C. Witter

3

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

JANET AGRANOFF, on behalf )
of herself and all others similarly situated, )
)
Plaintiff-Appellant, )   Court of Appeals Docket #: 08-1173
)
)   Appeal from: United States District Court
)   for the Northern District of Illinois,
)   Eastern Division
)   Case No. 07-CV-4933
v. )   Honorable Suzanne B. Conlon, Presiding
)
LENSCRAFTERS, INC., )
)
Defendant-Appellee. )

NOTICE OF ATTORNEY'S LIEN

VIA CERTIFIED MAIL

LensCrafters, Inc.
4000 Luxottica Place
Mason, OH 45040

YOU ARE HEREBY NOTIFIED that pursuant to ILCS 770 § 5/1, as the undersigned attorney for plaintiff Janet Agranoff and the class in the above-referenced action, I claim a lien in the amount of $73,500.00 on the cause of action of Agranoff and the class for services rendered as their attorney in this cause, which lien shall attach to any verdict, report, determination, decision, judgment, settlement or final order in favor of Agranoff and the class, and the proceeds thereof in whatever hands they may come. The recovery to which the undersigned's lien attaches may be described as follows: the claim of Brian C. Witter ("Witter") is for reasonable compensation based on actual hours billed to the above action. The lien and claim in the amount of $73,500 represents Witter's lodestar at rates comparable to those of his co-counsel in this action.

Dated: April 15, 2008

Brian C. Witter

Law Offices of Brian C. Witter, PC
Brian C. Witter, PC
111 West Jackson Blvd.
Suite 1100
Chicago, IL 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
brianewitterpc@gmail.com

## DECLARATION OF BRIAN C. WITTER

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows, under penalties of perjury:

1.    I am the attorney named above. I have read the attached *NOTICE OF ATTORNEY'S LIEN* and am familiar with its contents. At all times relevant to the notice, I was and have been licensed to practice law in the State of Illinois and have been admitted to the United States District Court for the Northern District of Illinois, and the United States Court of Appeals, Seventh Circuit. To the best of my knowledge, the contents of the notice are true and correct.

*Brian C. Witter*

Dated: April 15, 2008

Law Offices of Brian C. Witter, *PC*
Brian C. Witter, *PC*
111 West Jackson Blvd.
Suite 1100
Chicago, IL, 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
*briancwitterpc@gmail.com*

2

## CERTIFICATE OF SERVICE

The undersigned attorney, Brian C. Witter, certifies that on Tuesday June 9, 2008, he served the foregoing *NOTICE OF ATTORNEY'S LIEN* upon the following parties, via Certified Mail:

LensCrafters, Inc.
4000 Luxottica Place
Mason, OH 45040

Counsel:      Joseph A. DiBenedetto, Esq.
              Winston & Strawn LLP 200 Park Avenue
              New York, New York
              10166-4193

Brian C. Witter

### IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICAL CIRCUIT
### DUPAGE COUNTY, WHEATON, ILLINOIS

| | | |
|---|---|---|
| JANINCE KOINEWKO, on behalf of herself and all others similarly situated, | ) ) ) | JUN 1 0 200 |
| Plaintiff, | ) ) | Case No. 06-CH- 0617 |
| v. | ) ) ) | |
| SPINNAKER COVE HOMEOWNER'S ASSOLCIATION, et al, | ) ) ) | |
| Defendants. | ) | |

### NOTICE OF ATTORNEY'S LIEN

**VIA CERTIFIED MAIL**

**Board of Directors**
**Spinnaker Cove Homeowner's Association**
**Carol Stream, Il 60188**

YOU ARE HEREBY NOTIFIED that pursuant to ILCS 770 § 5/1, as the undersigned attorney for plaintiff Janice Konewko and the class in the above-referenced action, I claim a lien in the amount of $26,250.00 on the cause of action of Konewko and the class for services rendered as their attorney in this cause, which lien shall attach to any verdict, report, determination, decision, judgment, settlement or final order in favor of Konewko and the class, and the proceeds thereof in whatever hands they may come. The recovery to which the undersigned's lien attaches may be described as follows: the claim of Brian C. Witter is $26,250.00 is for reasonable compensation based on hours billed at his regular and customary rate for professional services rendered on behalf of Janice Konewko and the class in the above action.

Dated: April 15, 2008

Brian C. Witter

Law Offices of Brian C. Witter, *PC*
Brian C. Witter, *PC*
111 West Jackson Blvd.
Suite 1100
Chicago, IL, 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
*briancwitterpc@gmail.com*

## CERTIFICATION OF BRIAN C. WITTER

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Brian C. Witter

Dated: April 15, 2008

Law Offices of Brian C. Witter, *PC*
Brian C. Witter, *PC*
111 West Jackson Blvd.
Suite 1100
Chicago, IL, 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
*brianwitterpc@gmail.com*

## CERTIFICATE OF SERVICE

The undersigned attorney, Brian C. Witter, certifies that on Tuesday June 9, 2008, he served the foregoing *NOTICE OF ATTORNEY'S LIEN* upon the following parties, via Certified Mail:

Board of Directors
Spinnaker Cove Homeowner's Association
Carol Stream, Il 60188

Counsel:    Thomas P. Scherschel
            Smith Amundsen, LLC
            3815 E. Main St. Ste. A-1
            Saint Charles, IL 60174-2488

Brian C. Witter

*Eckhaus*

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Pamela Eckhaus,<br>individually and on behalf of<br>all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Nature's Pillows, Inc., Bill McAllister,<br>Brad Specter, and Steve Silbiger,<br><br>Defendants. | Case No. 06-CV-00985<br><br>Judge Block<br><br>Magistrate Matsumoto |

## NOTICE OF ATTORNEY'S LIEN

### VIA CERTIFIED MAIL

STEVE SILBIGER
H.C.T.V. Inc.
STUMP RD
MONTGOMERYVILLE PA 18936

YOU ARE HEREBY NOTIFIED that pursuant to New York Judiciary Law § 475 and ILCS 770 § 5/1, as the undersigned attorney for plaintiff Pamela Eckhaus ("Eckhaus") and the class in the above-referenced action, I claim a lien in the amount of $105, 000.00 on the cause of action of Eckhaus and the class for services rendered as their attorney in this cause, which lien shall attach to any verdict, report, determination, decision, judgment, settlement or final order in favor of Eckhaus and the class, and the proceeds thereof in whatever hands they may come. The recovery to which the undersigned's lien attaches may be described as follows: the claim of Brian C. Witter ("Witter") is for reasonable compensation based on actual hours billed to the above action relative to all attorney hours billed to the action by attorneys on behalf of Eckhaus and the class. The lien and claim in the amount of $105,000 represents Witter's pro rata share of the $300,000 in plaintiffs' attorneys' fees preliminary approved by the Honorable Frederic Block on March 15, 2008. The lien and claim in the amount of $105,000 represents 32 percent of all hours billed by plaintiffs' counsel to the action.

Dated: April 15, 2008

Brian C. Witter

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICAL CIRCUIT
DUPAGE COUNTY, WHEATON, ILLINOIS

| | |
|---|---|
| In re the Estate of Scott Hudson, | ) |
| | ) |
| Deceased, | ) |
| | ) Case No. 05-P-150 |
| | ) |
| | ) |
| | ) |

NOTICE OF ATTORNEY'S LIEN

VIA CERTIFIED MAIL
Matthew T. Caruso, Esq.
Roberts & Caruso
411 W. Wesley
Wheaton, IL 60187-4925

Special Administrator
Estate of Scott Hudson

YOU ARE HEREBY NOTIFIED that pursuant to ILCS 770 § 5/1, as the undersigned attorney for Joanne Hudson, as the court-appointed guardian of Kyle Hudson ("Guardian"), the minor child of the deceased and the deceased's beneficiary, I claim a lien in the amount of $14,000.00 on the cause of action of the Guardian for services rendered as her attorney in this cause, which lien shall attach to any verdict, report, determination, decision, judgment, settlement or final order in favor of the Guardian, and the proceeds thereof in whatever hands they may come. The recovery to which the undersigned's lien attaches may be described as follows: the claim of Brian C. Witter for $14,000.00 is for reasonable compensation based on hours billed at his regular and customary rate for professional services rendered on behalf of the Guardian in the above action.

Dated: April 15, 2008

Brian C. Witter

Law Offices of Brian C. Witter, PC

Brian C. Witter, PC
111 West Jackson Blvd.
Suite 1100
Chicago, IL 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
brianewitterpc@gmail.com

## CERTIFICATION OF BRIAN C. WITTER

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

*Brian C. Witter*

Dated: April 15, 2008

Law Offices of Brian C. Witter, PC
Brian C. Witter, PC
111 West Jackson Blvd.
Suite 1100
Chicago, IL 60604
Phone: 312.961.4942
Facsimile: 312.386.9759
brianewitterpc@gmail.com

# EXHIBIT C

1

1                        UNITED STATES DISTRICT COURT
                          EASTERN DISTRICT OF NEW YORK
2
    - - - - - - - - - - - - - - X
3                                     :
    ECKHAUS,
4                                              06 CV 985
        Plaintiff,
5
            -against-                 :
6                                              United States Courthouse
                                               Brooklyn, New York
7   NATURES PILLOWS,

8       Defendant.                    :
                                               June 23, 2008
9   - - - - - - - - - - - - - X       10:00 o'clock a.m.

10                          TRANSCRIPT OF FAIRNESS HEARING
                          BEFORE THE HONORABLE FREDERIC BLOCK
11                            UNITED STATES DISTRICT JUDGE

12  APPEARANCES:

13  For the Plaintiff:        BRIAN WITTER, ESQ

14                            DiTOMMASO & LUBIN.
                              17W 220 22nd Street.
15                            Oakbrook Terrace, Illinois 60181
                              BY:  VINCENT L. DiTOMMASO, ESQ., and
16                                 BRIAN BROMBERG, ESQ.

17  For the Defendant:        McELROY & ASSOCIATES, LLP.
                              202A North Monroe Street
18                            Media, PA 19063
                              BY:  RICHARD P. McELROY,, ESQ.

19

20
    Court Reporter:          Henry R. Shapiro
21                           225 Cadman Plaza East
                             Brooklyn, New York
22                           718-613-2509

23

24

25  Proceedings recorded by mechanical stenography, transcript
    produced by computer.

2

1          THE COURT:  Eckhaus versus Natures Pillows.

2          We're here for a hearing to see whether or not

3   anybody has any objection to the proposed settlement.  I have

4   an amended approval order. Anyone here who wishes to speak.

5          MR. DiTOMMASO:  Vincent DiTommaso. If I could

6   briefly.

7          THE COURT:  Apparently, there is nobody here to

8   question the settlement.

9          MR. DiTOMMASO:  That's right, Judge.

10          THE COURT:  What do you wish to say?

11          MR. DiTOMMASO:  Just briefly, your Honor, we gave

12   notice to the class.  There was no objection whatsoever to the

13   settlement. No opt outs to the settlement.  We've itemized the

14   amount of time that we had in this case to support the

15   agreement on the fee issue and the amount of cost that we

16   paid.

17          As a result there being no opt outs or objectors,

18   we're asking the Court to enter the final approval order that

19   we submitted with our motion.

20          This order has been approved by all counsel except

21   Mr. Witter who has not objected to it. We'd ask that the Court

22   enter the final approval order.

23          THE COURT:  How is it amended, by the way?

24          MR. DiTOMMASO:  Mr. Witter, submitted an amendment to

25   the final approval order, which we object to.  We do not agree

3

1   with Mr. Witter's amended final order.

2          THE COURT:  I have an amended final approval order

3   here that was submitted by Mr. Witter. I'm a little unclear

4   what it is I should sign.

5          MR. DiTOMMASO:  We're asking the Court to sign the

6   final approval order.

7          THE COURT:  What is the difference between them?

8          MR. DiTOMMASO:  The difference is, Judge, Mr. Witter

9   wants this Court to act as some type of body as to

10  distribution of fees to him and solely to him related to the

11  amount of the fee distribution.

12         THE COURT:  Where specifically are you speaking of?

13         MR. WITTER:  Brian Witter. In paragraph eight, there

14  is a tiny amount that just allocates fees slightly differently

15  than the order that I never saw by the way.

16         THE COURT:  Tell me what the difference is.  This is

17  all about legal fees. Nobody is getting any money except the

18  lawyers, right?

19         MR. WITTER:  Correct.

20         THE COURT:  My favorite type of class action.

21         MR. DiTOMMASO:  We sent your Honor a copy of the

22  complaint against Mr. Witter, which is pending in Illinois. We

23  submitted it this morning. This is not the appropriate forum

24  for a dispute as to the fees.

25         THE COURT:  You are not here to challenge Mr.

HENRY SHAPIRO          OFFICIAL COURT REPORTER

4

1   Witter's proposal, other then the method by which he's going

2   to get paid, is that what you are trying to tell me?

3           MR. DiTOMMASO:  We're here to challenge his proposed

4   amended order based upon the way he wishes to have to Court

5   distribute fees to him.

6           The settlement agreement and the proposed -- the

7   proposed order specifically says that the plaintiffs' counsel

8   will be paid a lump sum of money, and it's between plaintiffs'

9   counsel, based upon their agreement how that should be

10  distributed.

11          Mr. Witter submitted an amended order --

12          THE COURT:  He proposes that the Court prove payment

13  by defendants of $298,000 to counsel for attorney's fees and

14  costs.  Do you object to that, yes or no?

15          MR. DiTOMMASO:  We do.

16          THE COURT:  You don't think he's entitled to

17  $298,000?

18          MR. DiTOMMASO:  He's not entitled to anything. That

19  is what is pending in Illinois, in an action that we filed

20  against Mr. Witter.

21          THE COURT:  What is it that you think he is entitled

22  to get as counsel fees?

23          MR. DiTOMMASO:  Mr. Witter entered into two written

24  agreements with our firm.  He did not act -- he has no

25  relationship with the plaintiff in this case.  He's not party

5

1  to any agreement with the plaintiff.

2          THE COURT:  Just one second.  Your proposed agreement

3  says that the Court approves payment by defendants of $298,000

4  to class counsel for attorney fees and cost.  That is what his

5  says.  What is the difference?

6          MR. DiTOMMASO:  The judge--

7          THE COURT:  Let us take it one at a time.  Is that

8  correct.

9          MR. DiTOMMASO:  Yes, your Honor.

10          THE COURT:  That is correct?

11          MR. DiTOMMASO:  That is correct.

12          THE COURT:  $298,000.

13          MR. DiTOMMASO:  Yes, your Honor.

14          THE COURT:  You are not challenging that?

15          MR. DiTOMMASO:  No.

16          THE COURT:  Then the next sentence:  The Court finds

17  the attorney's fees reasonable and in light of the attorneys'

18  conduct out of pocket cost incurred by class counsel. You

19  agree with that sentence?

20          MR. DiTOMMASO:  Yes, your Honor.

21          THE COURT:  So how we're focusing on what the problem

22  is.

23          The next sentence: Defendants shall transmit to

24  Witter and DiTommaso & Lubin, within 14 days of the effective

25  date, a check in the amount of $105,000.  From thereon you

HENRY SHAPIRO          OFFICIAL COURT REPORTER

6

1    don't agree with any of that?

2           MR. DiTOMMASO:  Yes, your Honor.

3           THE COURT:  You don't think you send a check of

4    $105,000 paid out to Brian C. Witter?

5           MR. DiTOMMASO:  Correct.

6           THE COURT:  Is there any problem with that?

7           MR. DiTOMMASO:  There is a huge problem with that,

8    your Honor. First of all, none of the plaintiffs agreed to

9    that and there are numerous other plaintiffs' attorneys.

10          The amount -- the allegation of fees of $298,000 is

11   in my opinion, Judge, is based upon the agreement that exists

12   between plaintiffs' counsel.  This Court should not --

13          THE COURT:  You have something there that sounds

14   correct to me. You propose that the simple check be made out

15   to DiTommaso & Lubin, they are the class counsel, right?

16          MR. WITTER:  That is incorrect, your Honor.

17          MR. DiTOMMASO:  If I may point out to Mr. Witter's

18   affidavit, which he filed in this case in support of the

19   motion for preliminary approval, I'm quoting from it, Judge.

20   Herself what Mr. Witters said --

21          THE COURT:  What is wrong with making a check out for

22   $298,000 to DiTommaso & Lubin?

23          What is wrong with that?

24          MR. WITTER:  The problem is, I won't get paid on the

25   case in which I did more work than any of the plaintiffs'

7

1   counsel by far on this $105,000, your Honor.

2        THE COURT:  It's not for me to decide how the money

3   should be attributed. That is a separate fight the two of you

4   are fighting and be my guest.

5        Legally, the money goes to DiTommaso & Lubin.

6        MR. WITTER:  That is not correct.  The preliminarily

7   approval order, Judge, there are co-lead counsel in this case,

8   and I'm one of the co-lead counsel, and DiTommaso & Lubin is

9   the other co-lead counsel. So we should decide equally on the

10  basis of your Honor's order on preliminary approval and what

11  happened was --

12       THE COURT:  How do you divide $105,000 to you and

13  $193,000?  Unfortunately you have a problem. How do you make

14  that division?

15       MR. WITTER:  Judge --

16       THE COURT:  Is that your arbitrary way of saying how

17  much I want?

18       MR. WITTER:  It's not arbitrary at all. I went

19  through everyone's times records, I looked at the percentage

20  of time --

21       THE COURT:  Why should I be involved in the dispute

22  between you two? Why can't I make a check out to the two of

23  you, and fight over it whichever way you want?

24       MR. WITTER:  Here's what happened, your Honor.  We're

25   both co-counsel, DiTommaso & Lubin and me.

HENRY SHAPIRO        OFFICIAL COURT REPORTER

8

1     MR. DiTOMMASO:  That is not quite accurate.

2     THE COURT:  He doesn't agree with that.  What do the
3  papers say who is lead counsel? Lead counsel is designated as
4  whom?

5     MR. DiTOMMASO:  If I may answer the question?

6     THE COURT:  Who?

7     MR. DiTOMMASO:  Vincent DiTommaso, Peter Lubin and
8  Brian Witter.  Mr. Witter has only in this case acted, even
9  his own affidavit says it, through the DiTommaso & Lubin law
10 firm.  This dispute is pending in Illinois, as far as I'm
11 concerned Judge, the papers in Illinois have been filed, it's
12 no different if he acted as one of our associates and now he's
13 trying to get paid separately.

14    THE COURT:  Why don't I have it made out to both of
15 you jointly?

16    MR. DiTOMMASO:  I would even go a step further, if
17 your Honor pleases?  Let's put it in escrow account.  Because
18 there is the court in Illinois that is going to decide these
19 issues.  I have no problem with that.

20    THE COURT:  Whoever has been designated as lead
21 counsel, that seems to be the right way to do it. I will not
22 get involved in deciding whether you, Mr. Witter, is to get
23 $105,000 or $100,000.  It does not seem appropriate to me.

24    MR. WITTER:  I understand it.

25    Could I make one additional point?  I understand your

Case 1:08-cv-04720   Document 20-4   Filed 09/04/2008   Page 10 of 15

9

1    Honor's concern about wading in the middle of any of this.

2    What happened even as one of the co-counsel, I never saw this

3    order that they submitted.  They submitted it, they didn't

4    involve me. They sent it in without having me review it or

5    have any involvement --

6            THE COURT:  This is all about lawyers getting paid.

7            MR. WITTER:  What I did in amending the order was

8    agree with defense counsel, it's not as if I acted

9    unilaterally.  I spoke about this with Mr. McElroy and I

10   explained the situation and Mr. McElroy agreed with me and

11   he's representing the defendants here today and he's prepared,

12   I believe, to support the amended approval.

13           THE COURT:  Lead counsel apparently, my clerk tells

14   me, as of March 12th, is DiTommaso, Lubin and Witter.  We'll

15   have the check made out collectively. It might be a problem to

16   do special, account pending the ultimate determination in

17   Illinois.

18           The case quite candidly leaves me with a bad taste in

19   my mouth. All about greedy lawyers, appears superficially,

20   taking advantage to get money for themselves.

21           What are the plaintiffs getting here?  She is getting

22   2000.

23           MR. DiTOMMASO:  It's a different notice, a different

24   writing as to what the product does, your Honor. What the

25   settlement doesn't do, they still have a right, all plaintiffs

HENRY SHAPIRO        OFFICIAL COURT REPORTER

10

1   who purchased the product, if they have a problem with the

2   particular product, that right --

3         THE COURT:  How does somebody get a case like this?

4   Who would want to take a case like this?

5         MR. DiTOMMASO:  We hired an expert and the expert

6   made these tests and things and --

7         THE COURT:  Who cares.

8         MR. DiTOMMASO:  It turned out there was a dispute as

9   to whether our expert actually did it right or not.  Quit

10  frankly, your Honor --

11        THE COURT:  Don't you people have better things to do

12  as lawyers?

13        MR. DiTOMMASO:  I do.

14        I apologize, your Honor. I truly do. I'm sorry we're

15  here discussing the fee issue.

16        THE COURT:  It's unfortunate. I will sign neither of

17  these.  I will put in DiTommaso, Lubin and Witter.  It won't

18  be negotiable until you decide to sign your names to it into a

19  special account. What else can I do?

20        MR. DiTOMMASO:  I certainly respect that decision and

21  I think it works well.

22        THE COURT:  Anybody else wish to say anything?

23        MR. McELROY:  Richard McElroy.  I have no interest in

24  this dispute whatsoever.

25        THE COURT:  You are representing the defendant?

Case 1:08-cv-04720    Document 20-4    Filed 09/04/2008    Page 12 of 15
7186132677

11

1          MR. McELROY:  Yes, your Honor.

2          THE COURT:  There is nothing else that we have do

3    today.   Have a good day.

4          MR. DiTOMMASO:  Thank you.

5          MR. WITTER:  Thank you.

6          MR. McELROY:  Thank you.

7                          * * * * * * * *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

RE: ECHHAUS V NATURE'S PILLOWS YOu Deal It!™     $100,000 - HONORABL
JUNE 23, 200

**-$-**

$100,000 [1]   8:23
$105,000 [5]   5:25
6:4   7:1   7:12
8:23
$193,000 [1]   7:13
$298,000 [6]   4:13
4:17   5:3   5:12
6:10   6:22

**---**

-against [1]   1:5

**-0-**

06 [1]   1:4

**-1-**

10:00 [1]   1:9
12th [1] 9:14
14 [1]   5:24
17W [1] 1:14
19063 [1]   1:18

**-2-**

2000 [1] 9:22
2008 [1] 1:8
202A [1]   1:17
220 [1]   1:14
225 [1]   1:21
22nd [1] 1:14
23 [1]   1:8

**-6-**

60181 [1]   1:15

**-7-**

718-613-2509 [1]
1:22

**-9-**

985 [1]   1:4

**-A-**

a.m [1]   1:9
account [3]   8:17
9:16   10:19
accurate [1]   8:1
act [2]   3:9   4:24
acted [3]   8:8
8:12   9:8
action [2]   3:20
4:19
additional [1]   8:25
advantage [1]   9:20
affidavit [1]   6:18
8:9

against [2]   3:22
4:20
agree [5]2:25   5:19
6:1   8:2   9:8
agreed [2]   6:8
9:10
agreement [6]   2:15
4:6   4:9   5:1
5:2   6:11
agreements [1] 4:24
allegation [1]   6:10
allocates [1]   3:14
amended [7]   2:4
2:23   3:1   3:2
4:4   4:11   9:12
amending [1]   9:7
amendment [1] 2:24
amount [6]   2:14
2:15   3:11   3:14
5:25   6:10
answer [1]   8:5
apologize [1]   10:14
APPEARANCES [1]
1:12
appropriate [2] 3:23
8:23
approval [10]   2:4
2:18   2:22   2:25
3:2   3:6   6:19
7:7   7:10   9:12
approved [1]   2:20
approves [1]   5:3
arbitrary [2]   7:16
7:18
associates [2]   1:17
8:12
attorney [1]   5:4
attorney's [2]   4:13
5:17
attorneys [1]   6:9
attorneys' [1]   5:17
attributed [1]   7:3

**-B-**

bad [1]   9:18
based [3]   4:4
4:9   6:11
basis [1] 7:10
better [1]   10:11
between [4]   3:7
4:8   6:12   7:22
BLOCK [1]   1:10
body [1] 3:9
Brian [5]   1:13
1:16   3:13   6:4
8:8
briefly [2]   2:6
2:11
BROMBERG [1]
1:16
Brooklyn [2]   1:6
1:21

**-C-**

C [1]   6:4
Cadman [1]   1:21
candidly [1]   9:18
cares [1] 10:7
case [9]   2:14   4:25
6:18   6:25   7:7
8:8   9:18   10:3
10:4
certainly [1]   10:20
challenge [2]   3:25
4:3
challenging [1] 5:14
check [6]   5:25
6:3   6:14   6:21
7:22   9:15
class [5] 2:12   3:20
5:4   5:18   6:15
clerk [1] 9:18
co-counsel [2]   7:25
9:2
co-lead [3]   7:7
7:8   7:9
collectively [1] 9:15
complaint [1]   3:22
concern [1]   9:1
concerned [1]   8:11
conduct [1]   5:18
copy [1] 3:21
correct [7]   3:19
5:8   5:10   5:11
6:5   6:14   7:6
cost [3]   2:15   5:4
5:18
costs [1] 4:14
counsel [18]   2:20
4:7   4:9   4:13
4:22   5:4   5:18
6:12   6:15   7:1
7:7   7:8   7:9
8:3   8:3   8:21
9:8   9:13
court [53]   1:1
1:20   2:1   2:7
2:10   2:18   2:21
2:23   3:2   3:5
3:7   3:9   3:12
3:16   3:20   3:25
4:4   4:12   4:12
4:16   4:21   5:2
5:3   5:7   5:10
5:12   5:14   5:16
5:16   5:21   6:3
6:6   6:12   6:13
6:21   7:2   7:12
7:16   7:21   8:2
8:6   8:14   8:18
8:20   9:6   9:13
10:3   10:7   10:11
10:16   10:22   10:25
11:2
Courthouse [1] 1:6
CV [1]   1:4

**-D-**

date [1]   5:25
days [1] 5:24
decide [4]   7:2
7:9   8:18   10:18
deciding [1]   8:22
decision [1]   10:20
defendant [3]   1:8
1:17   10:25
defendants [4] 4:13
5:3   5:23   9:11
defense [1]   9:8
designated [2]   8:3
8:20
determination [1]
9:16
difference [4]   3:7
3:8   3:16   5:5
different [3]   8:12
9:23   9:23
differently [1]   3:14
discussing [1]   10:15
dispute [5]   3:24
7:21   8:10   10:8
10:24
distribute [1]   4:5
distributed [1]   4:10
distribution [2]3:10
3:11
DISTRICT [3]   1:1
1:1   1:11
DiTommaso [44]
1:14   1:15   2:5
2:5   2:9   2:11
2:24   3:5   3:8
3:21   4:3   4:15
4:18   4:23   5:6
5:9   5:11   5:13
5:15   5:20   5:24
6:2   6:5   6:7
6:15   6:17   6:22
7:5   7:8   7:25
8:1   8:5   8:7
8:7   8:9   8:16
9:14   9:23   10:5
10:8   10:13   10:17
10:20   11:4
divide [1]   7:12
division [1]   7:14
doesn't [2]   8:2
9:25

**-E-**

East [1]   1:21
EASTERN [1]   1:1
Eckhaus [2]   1:3
2:1
effective [1]   5:24
eight [1] 3:13
enter [2] 2:18   2:22
entered [1]   4:23
entitled [3]   4:16

4:18   4:21
equally [1]   7:9
escrow [1]   8:17
ESQ [4] 1:13   1:15
1:16   1:18
everyone's [1] 7:19
except [2]   2:20
3:17
exists [1]   6:11
expert [3]   10:5
10:5   10:9
explained [1]   9:10

**-F-**

FAIRNESS [1] 1:10
far [2]   7:1   8:10
favorite [1]   3:20
fee [2]   2:15   3:11
10:15
fees [10] 3:10   3:14
3:17   3:24   4:5
4:13   4:22   5:4
5:17   6:10
fight [2] 7:3   7:23
fighting [1]   7:4
filed [3] 4:19   6:18
8:11
final [6] 2:18   2:22
2:25   3:1   3:2
3:6
finds [1]5:16
firm [2] 4:24   8:10
First [1] 6:8
focusing [1]   5:21
forum [1]   3:23
frankly [1]   10:10
FREDERIC [1]1:10

**-G-**

goes [1] 7:5
good [1] 11:3
greedy [1]   9:19
guest [1]7:4

**-H-**

hearing [1]   1:10
2:2
Henry [1]   1:20
Herself [1]   10:5
hired [1] 10:5
Honor [15]   2:11
3:21   5:9   5:13
5:20   6:2   6:8
6:16   7:1   7:24
8:17   9:24   10:10
10:14   11:1
Honor's [1]   7:10
9:1
HONORABLE [1]
1:10

**RE: ECHHAUS V NATURE'S PILLOWS YOU donalt!™**

huge - Witte
JUNE 23, 2008

huge [1] 6:7

**-I-**

Illinois [7]    1:15
3:22    4:19    8:10
8:11    8:18    9:17
incorrect [1]    6:16
incurred [1]    5:18
interest [1]    10:23
involve [1]    9:4
involved [2]    7:21
8:22
involvement [1]
9:5
issue [2] 2:15    10:15
issues [1]    8:19
itemized [1]    2:13

**-J-**

jointly [1]    8:15
judge [9]    1:11
2:9    3:8    5:6
6:11    6:19    7:7
7:15    8:11
June [1]    1:8

**-L-**

L [1]    1:15
law [1]    8:9
lawyers [4]    3:18
9:6    9:19    10:12
lead [4]    8:3    8:3
8:20    9:13
leaves [1]    9:18
legal [1]    3:17
Legally [1]    7:5
light [1]    5:17
LLP [1]    1:17
looked [1]    7:19
Lubin [11]    1:14
5:24    6:15    6:22
7:5    7:8    7:25
8:7    8:9    9:14
10:17
lump [1] 4:8

**-M-**

March [1]    9:14
may [2] 6:17    8:5
McElroy [8]    1:17
1:18    9:9    9:10
10:23    10:23    11:1
11:6
mechanical [1] 1:25
Media [1]    1:18
method [1]    4:1
middle [1]    9:1
might [1]    9:15
money [2]    3:17
4:8    7:2    7:5

9:20
Monroe [1]    1:17
morning [1]    3:23
motion [2]    2:19
6:19
mouth [1]    9:19

**-N-**

names [1]    10:18
Natures [2]    1:7
2:1
negotiable [1]    10:18
neither [1]    10:16
never [2]    3:15
9:2
New [3] J:1    1:6
1:21
next [2] 5:16    5:23
nobody [2]    2:7
3:17
none [1] 6:8
North [1]    1:17
nothing [1]    11:2
notice [2]    2:12
9:23
now [1] 8:12
numerous [1]    6:9

**-O-**

o'clock [1]    1:9
Oakbrook [1]    1:15
object [2]    2:25
4:14
objected [1]    2:21
objection [2]    2:3
2:12
objectors [1]    2:17
one [6]    5:2    5:7
7:8    8:12    8:25
9:2
opinion [1]    6:11
opt [2]    2:13    2:17
order [16]    2:4
2:18    2:20    2:22
2:25    3:1    3:2
3:6    3:15    4:4
4:7    4:11    7:7
7:10    9:3    9:7
outs [2] 2:13    2:17
own [1] 8:9

**-P-**

P [1]    1:18
paid [7] 2:16    4:2
4:8    6:4    6:24
8:13    9:6
papers [2]    8:3
8:11
paragraph [1]    3:13
particular [1]    10:2

party [1] 4:25
payment [2]    4:12
5:3
pending [4]    3:22
4:19    8:10    9:16
people [1]    10:11
percentage [1]    7:19
Peter [1] 8:7
Pillows [2]    1:7
2:1
plaintiff [4]    1:4
1:13    4:25    5:1
plaintiffs [3]    6:8
9:21    9:25
plaintiffs' [5]    4:7
4:8    6:9    6:12
6:25
Plaza [1]    1:21
pleases [1]    8:17
pocket [1]    5:18
point [2] 6:17    8:25
preliminarily [1]
7:6
preliminary [2] 6:19
7:10
prepared [1]    9:11
problem [8]    5:21
6:6    6:7    6:24
7:13    8:19    9:15
10:1
Proceedings [1]
1:25
product [3]    9:24
10:1    10:2
proposal [1]    4:1
propose [1]    6:14
proposed [5]    2:3
4:3    4:6    4:7
5:2
proposes [1]    4:12
prove [1]    4:12
purchased [1]    10:1
put [2]    8:17    10:17

**-Q-**

Quit [1] 10:9
quite [2] 8:1    9:18
quoting [1]    6:19

**-R-**

R [1]    1:20
reasonable [1]    5:17
recorded [1]    1:25
records [1]    7:19
related [1]    4:25
relationship [1] 4:25
Reporter [1]    1:20
representing [2]
9:11    10:25
respect [1]    10:20

result [1]    2:17
review [1]    9:4
Richard [2]    1:18
10:23
right [7] 2:9    3:18
6:15    8:21    9:25
10:2    10:9

**-S-**

saw [2]    3:15    9:2
says [4] 4:7    5:3
5:5    8:9
second [1]    5:2
see [1]    2:2
seem [1] 8:23
send [1] 6:3
sent [2] 3:21    9:4
sentence [3]    5:16
5:19    5:23
separate [1]    7:3
separately [1]    8:13
settlement [6]    2:3
2:8    2:13    2:13
4:6    9:25
shall [1] 5:23
Shapiro [1]    1:20
sign [4] 3:4    3:5
10:16    10:18
simple [1]    6:14
situation [1]    9:10
slightly [1]    3:14
solely [1]    3:10
sorry [1] 10:14
sounds [1]    6:13
speak [1]    2:4
speaking [1]    3:12
special [2]    9:16
10:19
specifically [2] 3:12
4:7
spoke [1]    9:9
States [3]    1:1
1:6    1:11
stenography [1]
1:25
step [1] 8:16
still [1] 9:25
Street [2]    1:14
1:17
submitted [7]    2:19
2:24    3:3    3:23
4:11    9:3    9:3
sum [1] 4:8
superficially [1]
9:19
support [3]    2:14
6:18    9:12

**-T-**

taking [1]    9:20

taste [1] 9:18
tells [1] 9:13
Terrace [1]    1:15
tests [1] 10:6
Thank [3]    11:4
11:5    11:6
themselves [1] 9:20
thereon [1]    5:25
through [2]    7:19
8:9
times [1]    7:19
tiny [1] 3:14
today [1]    9:11
11:3
transcript [2]    1:10
1:25
transmit [1]    5:23
truly [1] 10:14
trying [2]    4:2
8:13
turned [1]    10:8
two [4]    4:23    7:3
7:22    7:22
type [2] 3:9    3:20

**-U-**

ultimate [1]    9:16
unclear [1]    3:3
understand [2] 8:24
8:25
unfortunate [1] 10:16
Unfortunately [1]
7:13
unilaterally [1] 9:9
United [3]    1:1
1:6    1:11

**-V-**

versus [1]    2:1
Vincent [3]    1:15
2:5    8:7

**-W-**

wading [1]    9:1
wants [1]    3:9
whatsoever [2] 2:12
10:24
whichever [1]    7:23
wish [2] 2:10    10:22
wishes [2]    2:4
4:4
within [1]    5:24
without [1]    9:4
Witter [28]    1:13
2:21    2:24    3:3
3:8    3:13    3:13
3:19    3:22    4:11
4:20    4:23    5:24
6:4    6:16    6:24
7:6    7:15    7:18
7:24    8:8    8:8

RE: ECHHAUS V NATURE'S PILLOWS YORK Condenselt!™

Witter's – Yor
JUNE 23, 200

| | | |
|---|---|---|
| 8:22 | 8:24 | 9:7 |
| 9:14 | 10:17 | 11:5 |
| **Witter's** [3] | | 3:1 |
| 4:1 | 6:17 | |
| **Witters** [1] | | 6:20 |
| **works** [1] | | 10:21 |
| **writing** [1] | | 9:24 |
| **written** [1] | | 4:23 |
| **wrong** [2] | | 6:21 |
| 6:23 | | |

**-X-**

| | | |
|---|---|---|
| **X** [2] | 1:2 | 1:9 |

**-Y-**

| | | |
|---|---|---|
| **York** [3] 1:1 | | 1:6 |
| 1:21 | | |

# EXHIBIT D

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 24 2008 ★
C I M
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAMELA ECKHAUS, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| -vs- | ) ) |
| NATURE's PILLOWS, INC., BILL McALLISTER BRAD SPECTER and STEVE SILBIGER, | ) ) ) |
| Defendants. | ) ) |

06 CV 00985

Judge Block

Magistrate Matsumoto

### FINAL APPROVAL ORDER

**IT IS HEREBY ORDERED:**

1.      On March 14, 2008 this Court preliminarily approved the Class Settlement
Agreement ("Agreement") reached between Pamela Eckhaus ("Plaintiff") and the class of
persons as defined in the Agreement ("Class"); and Defendants Nature's Pillows, Inc.,
Bill McAllister, Brad Specter, and Steve Silbiger ("Defendants").

2.      The notice given to the members of the class—publication in the USA Today
Weekend Edition on April 11 and 18, 2008—was reasonably calculated under the
circumstances to apprise them of the pendency of this action, all material elements of the
proposed settlement, their opportunity to exclude themselves from, to object to, or to
comment on the settlement and to appear at the settlement hearing. The notice was
reasonable and the best notice practicable under the circumstances; was due, adequate
and sufficient notice to all class members; and complied fully with the laws of the United
States and the Federal Rules of Civil Procedure, due process and any other applicable
rules of court. A full opportunity has been afforded to the members of the class to
participate in the hearing, and all members of the class and other persons wishing to be

of the attorney time and out-of-pocket costs incurred by Class Counsel. Defendants shall

transmit to DiTommaso & Lubin within fourteen (14) days of the Effective Date as

defined in the Settlement Agreement: (1) a check in the amount of $298,000 made out ~~to~~ *jointly to Vincent L. DiTommaso; Peter S. Lubin e Brian C. Witter;* ~~DiTommaso & Lubin, which DiTommaso & Lubin will distribute among Class Counsel;~~

and (2) a check in the amount of $2000 made out to Pamela Eckhaus, which DiTommaso

& Lubin will transmit to Mrs. Eckhaus.

9.     **Release of UrineGone™ Claims**: Plaintiff and each member of the Settlement

Class, their spouses and former spouses, as well as the present, former, and future

respective heirs, executors, administrators, representatives, agents, attorneys, partners,

successors, predecessors-in-interest, and assigns of Plaintiff and each Settlement Class

member, pursuant to the Settlement Agreement and Amendment thereto approved by this

final order, have discharged Defendants, as well as all of their present, former, and future

direct and indirect parent companies, affiliates, subsidiaries, divisions, agents,

franchisees, successors, predecessors-in-interest; and all of the aforementioned'

respective present, former, and future officers, directors, employees, shareholders,

attorneys, agents, vendors, couriers, independent contractors, and assigns, from any and

all rights, duties, obligations, claims, actions, causes of action, or liabilities, whether

arising under local, state, or federal law, whether by statute, contract, common law, or

equity, whether known or unknown, suspected or unsuspected, asserted or unasserted,

foreseen or unforeseen, actual or contingent, liquidated or unliquidated that, as of the date

that this Order is entered: (1) arise out of or are related in any way to any or all of the

acts, omissions, facts, matters, transactions, or occurrences that were directly or indirectly

alleged, asserted, described, set forth, or referred to in the case captioned *Eckhaus v.*

*Nature's Pillows, et al.*, Case No. 06-CV-985, currently pending in the United States District Court for the Eastern District Court of New York before the Honorable Fredrick Block ("the UrineGone™ Litigation"); (2) are, were, or could have arisen out of or been related in any way to the UrineGone™ Litigation.

10.      Nothing contained in the release agreed to by the parties and set forth in Paragraph 9 herein shall be construed to prevent or impede Settlement Class members, including the Class Representative, from (1) individually seeking product refunds for Urine Gone kits purchased from defendant Nature's Pillows, Inc.; or (2) individually bringing tort claims for property damage or personal injury arising from UrineGone™ products.

11.      Plaintiff and each member of the Settling Class is hereby fully and finally enjoined from prosecuting all claims released by the release agreed to in the Settlement Agreement and Amendment thereto, as set forth in Paragraph 9 herein.

12.      As provided for in the Settlement Agreement, Defendants have agreed to change the original television advertising spots for Urine Gone™, whether broadcast via television, radio, internet, print, or other means.

13.      The claims of Plaintiff and the class set forth in the Second Amended Complaint are dismissed with prejudice pursuant to the parties' settlement.

DATE: *June 23, 2008*

Entered:     s/FB
           The Honorable Frederic Block
           United States District Judge